Mark D. Selwyn (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
      HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Joseph J. Mueller (*pro hac vice*)
Cynthia D. Vreeland (*pro hac vice*)
Richard W. O'Neill (*pro hac vice*)
joseph.mueller@wilmerhale.com
cynthia.vreeland@wilmerhale.com
richard.oneill@wilmerhale.com
WILMER CUTLER PICKERING
      HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

*Attorneys for Defendant and
Counterclaim-Plaintiff Apple Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| CORE WIRELESS LICENSING S.A.R.L., <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Case No. 5:15-cv-5008-PSG <br><br> **APPLE INC.'S PARTIAL MOTION TO DISMISS CORE WIRELESS LICENSING S.A.R.L.'S DECLARATORY JUDGMENT CLAIMS [COUNTS III AND IV]** <br><br> Date:       February 23, 2016 <br> Time:       10:00 a.m. <br> Location: Courtroom 5, 4th Floor <br> Judge:      Paul S. Grewal |

1

**TABLE OF CONTENTS**

2

TABLE OF AUTHORITIES ...................................................................................... ii

3

NOTICE OF MOTION AND MOTION ............................................................... - 1 -

4

RELIEF REQUESTED ........................................................................................ - 1 -

5

ISSUES TO BE DECIDED .................................................................................. - 1 -

6

I.       INTRODUCTION ..................................................................................... - 1 -

7

II.      BACKGROUND ....................................................................................... - 2 -

8

        A.     Core Wireless's Breach of Contract Claims Against Apple Were
               Dismissed In A Prior Litigation ..................................................... - 2 -

9

10

        B.     Core Wireless Asserted The Same Theories In This Case ................ - 4 -

11

        C.     Apple Moved To Dismiss Core Wireless's Contract-Related Claims
               Before Transfer ............................................................................... - 6 -

12

        D.     Core Wireless Agreed To Dismiss Its Breach Of Contract Claims, But Not
               Its Related Declaratory Judgment Claims ......................................... - 6 -

13

III.     ARGUMENT ............................................................................................ - 7 -

14

        A.     Core Wireless's Declaratory Judgment Claims Are Barred By Res
               Judicata .......................................................................................... - 7 -

15

16

        B.     The Relief That Core Wireless Seeks Is Premised On A Contractual
               Obligation That Does Not Exist .................................................... - 10 -

17

18

        C.     Core Wireless's Declaratory Judgment Claims Should Be Dismissed For
               Lack Of Standing Under The Declaratory Judgment Act ................. - 13 -

19

IV.      CONCLUSION ....................................................................................... - 16 -

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*ACP, Inc. v. Skypatrol, LLC*,
   13-cv-1572, 2013 WL 3967927 (N.D. Cal. July 31, 2013) ................................12, 13

*AIU Ins. Co. v. Acceptance Ins. Co.*,
   07-cv-5491, 2010 WL 5396021 (N.D. Cal. Dec. 23, 2010) ....................................14

*Apple Inc. v. Samsung Elecs. Co.*,
   11-cv-01846, 2012 WL 1672493 (N.D. Cal. May 14, 2012)...........................12, 13

*Apple Inc. v. Telefonaktiebolaget LM Ericsson, Inc.*,
   15-cv-00154, 2015 WL 1802467 (N.D. Cal. Apr. 20, 2015)...................................11

*Be In, Inc. v. Google Inc.*,
   12-cv-03373, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) ....................................13

*Costantini v. Trans World Airlines*,
   681 F.2d 1199 (9th Cir. 1982) .................................................................................7

*Custom LED, LLC v. eBay, Inc.*,
   12-cv-00350, 2012 WL 1909333 (N.D. Cal. May 24, 2012)..................................14

*Ericsson Inc. v. D-Link Sys., Inc.*,
   10-cv-473, 2013 WL 4046225 (E.D. Tex. Aug. 6, 2013), *aff'd in part, vacated in*
   *part, rev'd in part*, 773 F.3d 1201 (Fed. Cir. 2014)...............................................15

*Erler v. Erler*,
   12-cv-2793, 2013 WL 6139721 (N.D. Cal. Nov. 21, 2013) ...................................14

*Fazio v. Bank of N.Y. Mellon*,
   13-cv-554, 2013 WL 3855552 (N.D. Cal. July 24, 2013) ...................................9, 10

*Federated Dep't Stores, Inc. v. Moitie*,
   452 U.S. 394 (1981)..................................................................................................9

*Gullette v. Donahoe*,
   12-cv-0490, 2013 WL 1283391 (N.D. Cal. Mar. 27, 2013) ..................................10

*Int'l Union of Operating Eng'rs-Emp'rs Constr. Indus. Pension, Welfare & Training*
   *Trust Funds v. Karr*,
   994 F.2d 1426 (9th Cir. 1993) .................................................................................7

*InterDigital Commc'ns, Inc. v. ZTE Corp.*,
   13-cv-00009, 2014 WL 2206218 (D. Del. May 28, 2014) ....................................15

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) .................................................................................10

*Madrid v. Concho Elementary Sch. Dist. No. 6 of Apache Cnty.*,
   439 F. App'x 566 (9th Cir. 2011) ..........................................................................13

*Marin v. HEW, Health Care Fin. Agency*,
    769 F.2d 590 (9th Cir. 1985) ....................................................................................................7

*McRae v. Barnhardt*,
    07-cv-01538, 2007 WL 3036003 (N.D. Cal. Oct. 16, 2007) .................................................10

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007)...............................................................................................................13

*Microsoft Corp. v. Motorola, Inc.*,
    10-cv-1823, 2011 WL 11480223 (W.D. Wash. June 1, 2011) ..............................................14

*Preiser v. Newkirk*,
    422 U.S. 395 (1975)...............................................................................................................15

*Rasooly v. Self*,
    14-cv-04521, 2015 WL 3430092 (N.D. Cal. May 27, 2015).................................................2

*Reyes v. Nationstar Mortgage LLC*,
    15-cv-01109, 2015 WL 4554377 (N.D. Cal. July 28, 2015) .................................................10

*Robi v. Five Platters, Inc.*,
    838 F.2d 318 (9th Cir. 1988) ..................................................................................................9

*Simmons v. Am. Airlines*,
    01-cv-1074, 2002 WL 102604 (N.D. Cal. Jan. 23, 2002).......................................................9

*Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
    322 F.3d 1064 (9th Cir. 2003) ................................................................................................7

*Tech. & Intellectual Prop. Strategies Grp. PC v. Fthenakis*,
    11-cv-2373, 2011 WL 3501690 (N.D. Cal. Aug. 10, 2011) .................................................14

*Transcience Corp. v. Big Time Toys, LLC*,
    50 F. Supp. 3d. 441, 450 n.6 (S.D.N.Y. 2014) .....................................................................15

*Tripati v. Henman*,
    857 F.2d 1366 (9th Cir. 1988) ................................................................................................9

*United Pub. Workers v. Mitchell*,
    330 U.S. 75 (1947).................................................................................................................14

*Western Radio Servs. Co., Inc. v. Glickman*,
    123 F.3d 1189 (9th Cir. 1997) ................................................................................................7

**RULES**

Federal Rule of Civil Procedure 12 ..............................................................................................1, 2

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on February 23, 2016 at 10:00 a.m., Defendant Apple Inc. shall and hereby does move for an order dismissing Counts III and IV of Plaintiff Core Wireless Licensing S.A.R.L.'s Amended Complaint (Dkt. 109), which assert claims for declaratory relief. This motion is based on this notice of motion, the accompanying memorandum and declaration in support thereof, and such other written and other oral argument as may be presented at or before the time this motion is taken under submission by the Court.

## RELIEF REQUESTED

Pursuant to Federal Rule of Civil Procedure 12, Apple seeks an order dismissing Counts III and IV of the Amended Complaint, which request declaratory relief, for failure to state a claim and for lack of jurisdiction.

## ISSUES TO BE DECIDED

1.      Whether the declaratory judgment claims in Counts III and IV of the Amended Complaint are barred by the doctrine of res judicata;

2.      Whether the declaratory judgment claims in Counts III and IV of the Amended Complaint fail to allege the existence of a valid and enforceable contract; and

3.      Whether the Court has jurisdiction over the declaratory judgment claims in Counts III-IV of the Amended Complaint.

## I.      INTRODUCTION

In Counts I-IV of its Amended Complaint, Core Wireless asserted breach of contract and declaratory judgment claims resting on allegations that Apple was contractually obligated to negotiate or pay royalties for approximately 1,200 patents that Nokia unilaterally declared essential to cellular standards and that Core Wireless now claims to own.  Core Wireless has now agreed to dismiss the breach of contract claims in Counts I and II, but not the related declaratory judgment claims in Counts III and IV. Count III seeks a declaratory judgment to establish that Apple is an unwilling licensee contrary to its obligation in the purported contract described in Counts I-II, and Count IV seeks a determination of the FRAND royalty rate under that same contract. These claims fail for three independent reasons.

*First*, Core Wireless brought claims based on the same theory in *Core Wireless Licensing S.A.R.L. v. Apple Inc*., 6:12-cv-100-JRG-JDL (E.D. Tex.) ("*Core Wireless I*").  Res judicata bars Core Wireless from re-litigating the same theory here.  *Rasooly v. Self*, 14-cv-04521, 2015 WL 3430092, at *2 (N.D. Cal. May 27, 2015) ("A claim may be dismissed under the doctrine of res judicata on a motion to dismiss under Rule 12(b)(6) when the Court is able to discern the relevant facts by way of judicial notice of the earlier court proceedings." (citing *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984)).

*Second*, the declaratory judgment claims should be dismissed because they are premised on a purported contractual obligation that does not exist.

*Third*, Core Wireless lacks standing to assert its declaratory judgment claims because those claims are entirely duplicative of its breach of contract claims that Core Wireless has agreed to dismiss; alternatively, if these claims are not based on the contract claims, they would constitute an improper request for an advisory opinion.

Accordingly, Counts III and IV should be dismissed in their entirety as a matter of law.

## II.   BACKGROUND

### A.   Core Wireless's Breach of Contract Claims Against Apple Were Dismissed In A Prior Litigation

Core Wireless already had a full and fair opportunity to litigate its contract theories, in the first litigation between Core Wireless and Apple.  Core Wireless first sued Apple in the Eastern District of Texas in February 2012, alleging that Apple infringed eight patents that Core Wireless had purchased from Nokia a few months earlier.  (6:12-cv-100 (E.D. Tex.), Dkt. 1 [Compl.].)[1]  In that case, Core Wireless brought several "counterclaims-in-reply" that included allegations that Apple had breached contractual obligations supposedly owed to the European Telecommunications Standards Institute ("ETSI") and Core Wireless by refusing to license Core Wireless's entire portfolio of approximately 1,200 patents that Nokia declared essential to ETSI standards.  (6:12-cv-100 (E.D. Tex.), Dkt. 115 [Counterclaims-In-Reply], at Counts I, II.)

---

[1] Through a series of amendments, Core Wireless ultimately asserted a total of 14 patents against Apple.  (6:12-cv-100 (E.D. Tex.), Dkt. 10 [Amend. Compl.], Dkt. 18 [2nd Amend. Compl.], Dkt. 61 [3rd Amend. Compl.].)  Core Wireless voluntarily dismissed 10 of those patents.

1   In one count, Core Wireless asserted that Apple breached an alleged contract between

2   Apple and Core Wireless.  (*Id.* ¶ 19.)  The basis for that alleged contract consisted entirely of

3   statements that Apple had made in an April 30, 2012 letter to Samsung in connection with other

4   litigation.  According to Core Wireless, that letter recognized a binding agreement between

5   Apple and all "Standard Essential Patent owners to negotiate a FRAND royalty in good faith."

6   (*Id.* ¶¶ 15 n.3, 18.)  Core Wireless asserted that Apple breached that alleged agreement by "(1)

7   [refusing] to negotiate a FRAND royalty with Core Wireless, (2) [refusing] to timely respond to

8   Core Wireless' FRAND royalty offer, and consequently (3) [refusing] to pay a FRAND royalty

9   for Core Wireless' Standard Essential Patents."  (*Id.* ¶ 19.)

10   In a second count, Core Wireless alleged that Apple breached Section 3.2 of the ETSI

11   Intellectual Property Rights ("IPR") Policy, which states under the heading "Policy Objectives":

12   > IPR holders whether members of ETSI and their AFFILIATES or
   > third parties, should be adequately and fairly rewarded for the use
13   > of their IPRs in the implementation of STANDARDS and
   > TECHNICAL SPECIFICATIONS.

14   (*Id.* ¶¶ 36, 38.)  Core Wireless claimed that Apple breached Section 3.2 by its alleged "(1) refusal

15   to negotiate a FRAND royalty with Core Wireless, (2) refusal to timely respond to Core Wireless

16   [sic] FRAND royalty offer, and (3) refusal to pay a FRAND royalty for Core Wireless' Standard

17   Essential Patents."  (*Id.* ¶ 39.)

18   In May 2014, Magistrate Judge John Love divided Core Wireless's contract claims into

19   two categories: (1) breach of contract claims related to the patents-in-suit, and (2) claims related

20   to Core Wireless's entire patent portfolio.  The court then stayed Core Wireless's portfolio-wide

21   clams, but allowed the claims related to the patents-in-suit to proceed to trial. (6:12-cv-100 (E.D.

22   Tex.), Dkt. 207 [May 2, 2014, Order] at 1; 6:12-cv-100 (E.D. Tex.), Dkt. 216 [May 1, 2014,

23   Hearing Tr.] at 18:14–18.)  The *Core Wireless I* case went to trial in March 2015 before Judge

24   Rodney Gilstrap.  At the close of evidence, Judge Gilstrap found that Core Wireless had not

25   proved the existence of a contract, and declined to send the contract claims to the jury.  (6:12-cv-

26   100 (E.D. Tex.), Dkt. 428 [Mar. 16, 2015, A.M. Trial Tr.] at 26:9–23.)[2]

27
28   _____
[2] Core Wireless did not challenge this ruling in its post-trial briefing.  (*See* 6:12-cv-100 (E.D.
   Tex.), Dkt. 466 [Memorandum and Order] at 5 ("Core has not re-raised the issue post-trial,

After trial, Apple moved to lift the stay on the portfolio-wide claims and to dismiss those claims, which Judge Gilstrap granted on August 11, 2015. (6:12-cv-100 (E.D. Tex.), Dkt. 466 [Memorandum and Order].)  Judge Gilstrap found that Core Wireless's failure at trial to establish the existence of any contractual obligations on Apple equally required dismissal of the portfolio-wide claims:

> At trial, Core was given a full and fair opportunity to present its case regarding its breach of contract claims as to the Patents-in-Suit. During its case-in-chief, Core presented evidence, including presumably the evidence Core believed was most relevant to the breach of contract claims. After the close of all the evidence in the case, the Court concluded that Core had not presented a *prima facie* case of the existence of a contract. . . .  Because Core had not overcome this ***threshold*** issue, the Court did not allow Core's proposed verdict question regarding the alleged breach of contract as to the Patents-in-Suits to be submitted to the jury.
>
> ***
>
> Because the Court has already dismissed a claim based on the same alleged contract for lack of evidence of the existence of said contract, the Court finds that the contract claims as to the entire portfolio must also be dismissed.

(*Id.* at 7-8 (emphasis added).)[3]

## B.    Core Wireless Asserted The Same Theories In This Case

In its Amended Complaint, Core Wireless has alleged the same breach of contract claims that it asserted, and the court rejected, in *Core Wireless I*—i.e., that the "Policy Objectives" section of the ETSI IPR Policy supposedly obligated Apple to license Core Wireless's entire portfolio of patents that were unilaterally declared by Nokia as essential to ETSI standards, and that Apple breached supposed contractual obligations owed under that policy to both ETSI and to Core Wireless (as successor to Nokia) by refusing to take a license to those patents in 2009:

---

whether through a Motion for Judgment as a Matter of Law, Motion for New Trial, or another appropriate vehicle.").)

[3] Core Wireless also asserted a claim for unjust enrichment, which Judge Gilstrap dismissed, finding that to the extent Core Wireless seeks payment from Apple for its alleged use of Core Wireless's patents, the proper avenue is to bring an infringement claim under the Patent Act.  (*Id.* at 9-10 ("The Court fails to see how the relief requested, as pled here, would not result in a 'patent-like royalty for the making, using, or selling of a product in the public domain.' . . . Therefore, Core's claim of unjust enrichment based on the benefit Apple received for the alleged use of the patented technology, as pleaded, is preempted by the Patent Act and must be dismissed.").)

> Core Wireless is informed and believes that Nokia offered Apple a license to the patents-in-suit, and its other Standard-Essential Patents, on FRAND terms at least as early as 2009.  While Apple and Nokia agreed to a license for a subset of Nokia's patents, Apple did not license the rest of Nokia's patents that are now owned by Core Wireless, including the patents-in-suit.

(Dkt. 109 [Amend. Compl.] ¶ 24; *id.* ¶ 19 ("Nokia also declared before ETSI that the over 1,200 Standard-Essential Patents owned by Core Wireless are essential to one or more of the mobile communications standards developed or completed by ETSI. . . .").)

Specifically, in Count I, Core Wireless alleges that "Apple's refusal to negotiate in good faith a FRAND rate for Core Wireless's patents-in-suit ***and its other Standard-Essential Patents*** is a violation of [Section 3.2 of] ETSI's IPR Policy." (*Id.* ¶ 42 (emphasis added).)  In Count II, Core Wireless alleges that Apple "breached its contractual obligations to Core Wireless by unreasonably stalling negotiations and refusing to reasonably respond to Core Wireless's FRAND offer." (*Id.* ¶ 49.)  Moreover, just as in *Core Wireless I*, Core Wireless relies on statements that Apple made in its April 2012 letter to Samsung. (*Id.* ¶ 45 (alleging that "Apple has taken the position that it is . . . licensed to those patents that have been declared essential to an ETSI standard" based on the April 2012 letter to Samsung).)[4]

In Counts III and IV, Core Wireless requests declaratory relief related to its two breach of contract claims.  In Count III, Core Wireless requests a declaratory judgment that "Apple is an unwilling licensee" based on Apple's alleged breach of contract. (*Id.* ¶¶ 51-57.)  And in Count IV, Core Wireless requests a declaratory judgment of a FRAND royalty rate for Core Wireless's portfolio of 1,200 patents. (*Id.* ¶¶ 58-62.)  Core Wireless sought the same relief in *Core Wireless I* in connection with its breach of contract claims.  (6:12-cv-100 (E.D. Tex.), Dkt. 115 [Counterclaims-In-Reply] ¶ J (seeking judgment that "Apple is not a willing licensee"); *id.* ¶ K (seeking "a determination of the FRAND royalty rate owed by Apple to Core Wireless").)

In its original Complaint in this case, Core Wireless alleges an overlap between its portfolio breach of contract claims and the contract claims asserted in *Core Wireless I*:

---

[4]   A copy of the April 30, 2012 letter referenced in paragraph 45 of the Amended Complaint is attached to this motion as Exhibit A to the Declaration of Joseph J. Mueller.

> Proceedings, including court rulings in [*Core Wireless I*] could have significant influence on this case. The Court's knowledge of the technology and patents in [*Core Wireless I*] will assist the Court substantially in deciding issues in this case.

(Dkt. 1 [Compl.] ¶ 3.)  The original Complaint even referred to the parties' unsuccessful (and privileged) mediations in *Core Wireless I* as supposed evidence of Apple's alleged breaches.  (*Id.* ¶¶ 28, 32.)

### C.    Apple Moved To Dismiss Core Wireless's Contract-Related Claims Before Transfer

Apple moved to dismiss Core Wireless's original Complaint on November 17, 2014, while the case was still pending in Texas.  (Dkt. 14.)  In its opposition briefing, Core Wireless did not assert that its breach of contract claims in this case are different from the claims in *Core Wireless I*.  Core Wireless instead "request[ed] [that] the Court [ ] defer decision on the contract claims at least until their fate in *Core Wireless I* is resolved."  (Dkt. 24 [Opp'n. Br.] at 20.)  On July 15, 2015, Magistrate Judge Love denied Apple's motion on the contract claims "WITHOUT PREJUDICE TO REURGING, pending Judge Gilstrap's ruling on the related contract claims" in the *Core Wireless I* litigation.  (Dkt. 81 [Report and Recommendation] at 1 (emphasis omitted); *see also* Dkt. 100 [Order Adopting Report and Recommendation].)[5]

On August 11, 2015, Judge Gilstrap dismissed Core Wireless's contract claims in *Core Wireless I* (6:12-cv-100 (E.D. Tex.), Dkt. 466 [Memorandum and Order]), and Apple re-urged its motion to dismiss (Dkt. 110 [Notice of Reurging]).  Apple's re-urged motion was pending when the case was transferred to this Court.  Pursuant to the Court's December 21, 2015 Order (Dkt. 175), Apple brings this renewed motion.

### D.    Core Wireless Agreed To Dismiss Its Breach Of Contract Claims, But Not Its Related Declaratory Judgment Claims.

Pursuant to an agreement between the parties, Apple and Core Wireless have filed a joint motion to dismiss the breach of contract claims in Counts I and II of the Amended Complaint.

---

[5] The court granted Apple's motion with respect to Core Wireless's allegations of contributory and induced infringement, but gave Core Wireless leave to replead its claims. (*See* Dkt. 100 [Order Adopting Report and Recommendation].) Core Wireless's Amended Complaint included repled inducement claims, but did not include any contributory infringement claims. (*See, e.g.*, Dkt. 109 [Amend. Compl.], ¶¶ 63-75.)

---

1    (Dkt. 179.)   However, Core Wireless informed Apple that it would not agree to dismiss its

2    related declaratory judgment claims in Counts III and IV.

3    **III.    ARGUMENT**

4            The Declaratory Judgment claims should be dismissed as a matter of law because they

5    are: (1) precluded by res judicata; (2) not based on any valid contractual obligation in the first

6    instance; and (3) duplicative of the contract claims that Core Wireless has agreed to dismiss, or

7    alternatively seek an improper advisory opinion.

8            **A.    Core Wireless's Declaratory Judgment Claims Are Barred By Res Judicata**

9            Res judicata bars litigation of any claims that were raised or could have been raised in a

10   prior action. *Western Radio Servs. Co., Inc. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997).

11   The doctrine is intended to "relieve parties of the cost and vexation of multiple law suits,

12   conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on

13   adjudication." *Marin v. HEW, Health Care Fin. Agency*, 769 F.2d 590, 594 (9th Cir. 1985)

14   (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).   Under Ninth Circuit law,[6] res judicata is

15   applicable whenever there are "(1) an identity of claims, (2) a final judgment on the merits, and

16   (3) privity between parties." *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,

17   322 F.3d 1064, 1077 (9th Cir. 2003).   Each of these requirements is met as a result of the

18   dismissal of the contract claims in *Core Wireless I*.

19           ***First***, there is an "identity of claims."   The Ninth Circuit considers several discretionary

20   factors to determine whether successive actions involve the same claims:

21                   (1) whether rights or interests established in the prior judgment
                     would be destroyed or impaired by prosecution of the second
22                   action; (2) whether substantially the same evidence is presented in
                     the two actions; (3) whether the two suits involve infringement of
23                   the same right; and (4) whether the two suits arise out of the same
                     transactional nucleus of facts.

24   *Costantini v. Trans World Airlines,* 681 F.2d 1199, 1201-02 (9th Cir. 1982).   "The last of these

25   criteria is the most important."   *Id.* at 1202; *see Int'l Union of Operating Eng'rs-Emp'rs Constr.*

---

26   [6] The res judicata analysis is governed by federal law.   *Costantini v. Trans World Airlines*, 681
27   F.2d 1199, 1201 (9th Cir. 1982) ("[A] federal court sitting in diversity must apply the res
     judicata law of the state in which it sits . . . California law, however, determines the res judicata
28   effect of a prior federal court judgment by applying federal standards.").

---

1     *Indus. Pension, Welfare & Training Trust Funds v. Karr*, 994 F.2d 1426, 1430 (9th Cir. 1993)

2     ("We have previously applied the doctrine of res judicata on the ground that the two claims arose

3     out of the same transaction, without reaching other factors cited in *Costantini*.").

4           Here, there is an "identity of claims" because Core Wireless's claims in this case are

5     based on the same alleged contracts, same legal theories, and same purported breach that Judge

6     Gilstrap already rejected in *Core Wireless I*.  (6:12-cv-100 (E.D. Tex.), Dkt. 466 [Memorandum

7     and Order].)   For example, the complaints in both cases allege that:

8        •   Section 3.2 of the ETSI IPR Policy required Apple to negotiate a license to Core

9             Wireless's patent portfolio (6:12-cv-100 (E.D. Tex.), Dkt. 115 ¶¶ 36, 39; Dkt. 109

10            [Amend. Compl.] ¶¶ 21, 42);

11        •   A contract obligating Apple to negotiate a license to Core Wireless's patent portfolio

12             arose out of Apple's statements made in an unrelated litigation against Samsung (6:12-

13             cv-100 (E.D. Tex.), Dkt. 115 ¶ 15 n.3; Dkt. 109 [Amend. Compl.] ¶¶ 45, 49); and

14        •   Apple breached contractual commitments supposedly owed to Core Wireless and ETSI

15             by refusing to take a license from Nokia in 2009, and by failing to negotiate a FRAND

16             royalty (6:12-cv-100 (E.D. Tex.), Dkt. 115 ¶¶ 19, 21-24, 29, 39; Dkt. 109 [Amend.

17            Compl.] ¶¶ 24-31, 42, 49).

18           Indeed, Core Wireless sought—and was denied—the same relief in *Core Wireless I* that it

19     is seeking in its declaratory judgment claims (Counts III-IV) in this case.  In Count III, Core

20     Wireless asks the Court for a declaration that Apple is an "unwilling licensee" for Core

21     Wireless's portfolio of allegedly "Standard-Essential Patents" (including the patents-in-suit)

22     (Dkt. 109 [Amend. Compl.] ¶¶ 51-57), even though the court denied the same relief in *Core*

23     *Wireless I* (6:12-cv-100 (E.D. Tex.), Dkt. 115 ¶ J (seeking judgment that "Apple is not a willing

24     licensee" for its portfolio of allegedly "Standard Essential Patents" that were the subject of the

25     first two counts); 6:12-cv-100 (E.D. Tex.), Dkt. 466 at 10 (dismissing claims).)  Similarly, in

26     Count IV, Core Wireless seeks a declaration of a FRAND royalty rate for its portfolio of

27     allegedly "Standard-Essential Patents" (Dkt. 109 [Amend. Compl.] ¶¶ 58-62), just as it

28     attempted—and failed—to do in *Core Wireless I* (6:12-cv-100 (E.D. Tex.), Dkt. 115 ¶ K

(seeking "a determination of the FRAND royalty rate owed by Apple to Core Wireless" for its portfolio of allegedly "Standard Essential Patents" that were the subject of the first two counts); 6:12-cv-100 (E.D. Tex.), Dkt. 466 at 10 (dismissing claims).)   Core Wireless has already lost these broad portfolio claims in *Core Wireless I*.

   ***Second***, there is "privity between the parties."  This case involves the same plaintiff and the same defendant as the *Core Wireless I* litigation.

   ***Third***, there is a final judgment on the merits.  The district court in the Eastern District of Texas issued its order dismissing Core Wireless's breach of contract claims with prejudice on August 11, 2015 (6:12-cv-100 (E.D. Tex.), Dkt. 466 at 10), and then issued a Final Judgment for Apple on all counts on September 2, 2015 (6:12-cv-100 (E.D. Tex.), Dkt. 470).  *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) (recognizing that dismissal with prejudice for failure to state a claim is a final judgment on the merits for res judicata purposes); *Fazio v. Bank of N.Y. Mellon*, 13-cv-554, 2013 WL 3855552, at *6 (N.D. Cal. July 24, 2013) ("A dismissal with prejudice is a dismissal on the merits.").  Although Core Wireless has appealed the dismissal of its contract claims (*see* 6:12-cv-100, Dkt. 471 [Notice of Appeal]), and that appeal is pending, the district court's judgment is nevertheless final for res judicata purposes. *See Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988) ("The established rule in the federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal."); *Robi v. Five Platters, Inc*., 838 F.2d 318, 327 (9th Cir. 1988) ("The present appeals in no way affect the 'firmness' of the *Robi* decisions in the district court for purposes of issue preclusion."); *Simmons v. Am. Airlines*, 01-cv-1074, 2002 WL 102604, at *3-*4 (N.D. Cal. Jan. 23, 2002) ("[A]lthough Plaintiff's appeal . . . is pending, the district court's order is nonetheless considered a final judgment for the purposes of res judicata.").[7]

---

[7] Even if Core Wireless succeeds in overturning the dismissal on appeal, it would be required to litigate its breach of contract claims before Judge Gilstrap in the *Core Wireless I* matter, not here. Core Wireless cannot bring parallel claims in this case as a backup for its appeal in *Core Wireless I*.  *See Tripati*, 857 F.2d at 1367 ("To deny preclusion in these circumstances [where appeal is pending] would lead to an absurd result: Litigants would be able to refile identical cases while appeals are pending, enmeshing their opponents and the court system in tangles of duplicative litigation.").

In Core Wireless's prior briefing in opposition to Apple's motion to dismiss, it never denied that its contract claims are the same as the claims that it brought in *Core Wireless I*. (*See* Dkt. 24 [Opp'n Br.] at 17-20.)  Rather, Core Wireless argued that at the time (December 2014) its claims in *Core Wireless I* had not been "adjudicated" (*id.* at 18-19), and the court should therefore "defer decision on the contract claims at least until their fate in *Core Wireless I* is resolved." (*id.* at 20).  The *Core Wireless I* claims have now been finally dismissed, and res judicata precludes Core Wireless from attempting to reassert them in this case.  *See Fazio*, 2013 WL 3855552, at *6 (dismissing breach of contract claim on res judicata grounds); *Gullette v. Donahoe*, 12-cv-0490, 2013 WL 1283391, at *5 (N.D. Cal. Mar. 27, 2013) (same); *McRae v. Barnhardt*, 07-cv-01538, 2007 WL 3036003, at *4 (N.D. Cal. Oct. 16, 2007) (same).

### B.  The Relief That Core Wireless Seeks Is Premised On A Contractual Obligation That Does Not Exist

Even if the allegations set forth in Counts III-IV are accepted as true (and are not otherwise precluded by res judicata), those allegations fail to establish the existence of a "valid, enforceable contract," which underlies its request for declaratory relief.

Understanding the deficiencies in the declaratory judgment claims requires first reviewing the related Counts that Core Wireless has agreed to dismiss.  In Count I, Core Wireless alleges breach of the ETSI IPR Policy based entirely on Section 3.2 (Dkt. 109 [Amend. Compl.] ¶¶ 21, 39-43 )—which appears in a section captioned "***Policy Objectives***," and merely states:

> IPR holders whether members of ETSI and their AFFILIATES or third parties, should be adequately and fairly rewarded ***for the use of their IPRs*** in the implementation of STANDARDS and TECHNICAL SPECIFICATIONS

(Dkt. 109-7 [IPR Policy] § 3.2 (emphasis added).)[8]

---

[8] Because Core Wireless attached the ETSI IPR Policy to its Amended Complaint as an exhibit (Dkt. 109-7), the Court can consider the terms of that Policy in deciding this motion.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[A] court may consider material which is properly submitted as part of the complaint on a motion to dismiss[.]") (internal quotation and citation omitted); *Reyes v. Nationstar Mortgage LLC*, 15-cv-01109, 2015 WL 4554377, at *3 (N.D. Cal. July 28, 2015) ("[I]f a complaint is accompanied by attached documents . . . these documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim.") (internal citation omitted).

1    Core Wireless cannot create a contractual obligation to pay (or negotiate to pay) out of a

2    mere "Policy Objective" that does not purport to impose *any* enforceable obligations at all, and

3    that instead only states a goal that patent holders "should be adequately and fairly rewarded *for*

4    *the use*"—i.e., for actual infringement—of their intellectual property by others.  Nothing in

5    Section 3.2 suggests—much less *contractually requires*—that ETSI members must negotiate or

6    must take a license to every declared standard essential patent, without regard to actual

7    essentiality or actual use.

8         Core Wireless's interpretation of the ETSI IPR Policy would mean that a first ETSI

9    member can *unilaterally* create a binding obligation on the part of every other ETSI member to

10   pay for any patent that the first member *unilaterally* decides to declare a patent as essential to an

11   ETSI standard, regardless of whether the patent *is actually essential* to the standard and *actually*

12   *used* by the specific member.  Core Wireless does not cite any legal precedent for that

13   remarkable new theory of recovery—because there is none.  *See Apple Inc. v.*

14   *Telefonaktiebolaget LM Ericsson, Inc.*, 15-cv-00154, 2015 WL 1802467, at *2 (N.D. Cal. Apr.

15   20, 2015) ("[T]here exists no legal basis upon which Apple may be compelled to take a license

16   for Ericsson's patents [declared essential to ETSI] on a portfolio-wide basis.").  Indeed, even

17   Section 3.2 makes clear that its non-binding "objective" to secure "adequate" and "fair"

18   compensation for its members is limited to instances involving actual "*use* of their IPRs" by

19   others.  (Dkt. 109-7 [IPR Policy] § 3.2 (emphasis added).)  Although Core Wireless asserts that

20   its 1,200 patent portfolio has been "declared" essential (Dkt. 109 [Amend. Compl.] ¶ 14), Core

21   Wireless does not—and cannot in good faith—allege that all 1,200 are *actually* essential, or that

22   Apple uses all 1,200 patents in its products.  In fact, in *Core Wireless I*, Core Wireless failed to

23   prove that a single one of the 14 allegedly standard essential patents asserted in that case were

24   infringed by Apple.

25        In Count II, Core Wireless asserts that Apple "breached its contractual obligations to

26   Core Wireless by unreasonably stalling negotiations and refusing to reasonably respond to Core

27   Wireless's FRAND offer."  (Dkt. 109 [Amend. Compl.] ¶ 47.)  But in support, Core Wireless

28   does not identify any contract at all.  Rather, it merely refers to a "position" that Apple took in a

1    letter to Samsung in a different case.  (*Id.* ¶ 45; Ex. A [4/30/12 Apple/Samsung Letter].)⁹  Core

2    Wireless cannot plead the existence of an enforceable contract ***between Apple and Core Wireless***

3    by referencing statements that Apple made in a letter to Samsung—which did not mention Core

4    Wireless or any of its patents, did not include any offer or acceptance of any contract terms, and

5    contained no other indication that Apple intended for Apple and Core Wireless to be mutually

6    bound in any way.  Moreover, ***the contract theory referenced in Apple's letter was explicitly***

7    ***rejected by this Court***.  *See Apple Inc. v. Samsung Elecs. Co.*, 11-cv-01846, 2012 WL 1672493,

8    at *13-*15 (N.D. Cal. May 14, 2012) ("[T]here is no existing license between Apple and

9    Samsung because there was no firm offer and acceptance of the terms of the license that Apple

10   claims already exists . . . .  Nor is it plausible that anyone who uses the technology has a

11   preexisting license merely because an ETSI member submitted a FRAND declaration.").  And

12   even taken on its own terms, that contract theory was always strictly limited to patents that are

13   "actually valid, infringed, and enforceable."  (Ex. A [4/30/12 Apple/Samsung Letter] at 1 ("As

14   Apple has stated repeatedly, it is willing to pay FRAND royalties to Samsung ***insofar as***

15   ***Samsung's declared-essential patents are actually valid, infringed, and enforceable***."

16   (emphasis added).)   That is the opposite of what Core Wireless is now arguing—i.e., that

17   contractual obligations to license (or negotiate a license) exist ***independent of actual***

18   ***infringement, validity, and enforceability***.

19          Against that backdrop, Counts III and IV seek declaratory relief that is tied directly to

20   Core Wireless's theory that Apple has somehow breached paragraph 3.2 of the ETSI IPR Policy.

21   In Count III, Core Wireless seeks a declaration that Apple is an "Unwilling Licensee" on the

22   basis that Apple has allegedly "refus[ed] to negotiate" with Core Wireless, and as a result, Core

23   Wireless is "being denied the adequate and fair reward set forth by the ETSI IPR Policy . . . ."

24   (Dkt. 109 [Amend. Compl.] ¶ 57.)  Further, in Count IV, Core Wireless seeks a declaration of a

---

⁹ Because Apple's letter is referenced in paragraph 45 of Core Wireless's Amended Complaint, and is the basis for the claims in Count II, it may be considered as part of the pleadings for purposes of this motion to dismiss.  *ACP, Inc. v. Skypatrol, LLC*, 13-cv-1572, 2013 WL 3967927, at *3 (N.D. Cal. July 31, 2013) ("[T]he court may consider matters that are properly the subject of judicial notice. . . . Additionally, the court may consider . . . documents referenced extensively in the complaint and documents that form the basis of a plaintiff's claims.").

1    "FRAND royalty rate For Core Wireless's Standard-Essential Patents" because it is allegedly

2    "entitled to compensation pursuant to ETSI's IPR Policy" and Apple has allegedly "refused to

3    accept . . . or further negotiate" a purported FRAND offer from Core Wireless.  (*See id*. at ¶ 61.)

4    Like its breach of contract claims, Core Wireless's declaratory judgment claims inherently rely

5    on and assume Core Wireless's flawed theory that the ETSI IPR Policy creates some obligation

6    for Apple to negotiate a license to Core Wireless's entire patent portfolio in the first place.

7            Because the Amended Complaint fails to identify the existence of a valid contract

8    between Apple and Core Wireless—which undergirds the declaratory judgments sought by Core

9    Wireless—Counts III and IV should be dismissed as a matter of law.  *Be In, Inc. v. Google Inc*.,

10   12-cv-03373, 2013 WL 5568706, at *9 (N.D. Cal. Oct. 9, 2013) (granting motion to dismiss

11   where plaintiff "has not provided allegations from which the Court can infer valid contract

12   formation in this case"); *ACP, Inc. v. Skypatrol*, *LLC*, 13-cv-1572, 2013 WL 3967927, at *5

13   (N.D. Cal. July 31, 2013) ("In the absence of a contract, there could be no breach of contract, and

14   consequently the one cause of action pled in the complaint is not viable."); *see also Apple v.

15   Samsung*, 2012 WL 1672493, at *13-*15 (dismissing identical breach of contract theory).

16   **C.    Core Wireless's Declaratory Judgment Claims Should Be Dismissed For
              Lack Of Standing Under The Declaratory Judgment Act**

17           To maintain a claim under the Declaratory Judgment Act, a plaintiff must establish

18   standing by showing that "there is a substantial controversy, between parties having adverse

19   legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

20   judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation

21   omitted).  Core Wireless's declaratory judgment claims should be dismissed for lack of standing

22   for at least two reasons.

23           *First,* Core Wireless's declaratory judgment claims are duplicative of the contract claims

24   that Core Wireless has agreed to dismiss.  For example, Core Wireless's request for a declaration

25   that Apple is an "unwilling licensee" (Count III) rests on the same flawed theory as the breach of

26   contract claims; namely, that Apple is obligated to negotiate with Core Wireless for a license to

27   its patents by virtue of unilateral FRAND commitments made by Nokia for those patents or

28

1  Apple's ETSI membership.  Accordingly, Count III effectively seeks a declaration that Apple is
2  in breach of the ETSI IPR Policy (at least according to Core Wireless's interpretation).  But Core
3  Wireless sought the same relief in its breach of contract claims (Counts I and II).  (Dkt. 109
4  [Amend. Compl.] ¶¶ 35-50.)  *See Madrid v. Concho Elementary Sch. Dist. No. 6 of Apache*
5  *Cnty.*, 439 F. App'x 566, 567 (9th Cir. 2011) ("[B]ecause Madrid's claim under the Declaratory
6  Judgment Act requested only contract-related relief . . . the district court was within its discretion
7  to read that claim as part of Madrid's breach of contract claim and to deny injunctive and
8  declaratory relief."); *Erler v. Erler*, 12-cv-2793, 2013 WL 6139721, at *8 (N.D. Cal. Nov. 21,
9  2013) ("Because the declaration Plaintiff seeks would grant Plaintiff no additional or different
10 relief from its ruling on the breach claim, nor impose any additional or different obligations on
11 Defendant, the Court finds that Plaintiff is not entitled to declaratory judgment."); *Custom LED,*
12 *LLC v. eBay, Inc.*, 12-cv-00350, 2012 WL 1909333, at *5 (N.D. Cal. May 24, 2012) (declaratory
13 relief claim "superfluous" where "[t]he claim for declaratory relief will not accomplish anything
14 in addition to the resolution of plaintiff's breach of contract claim and, therefore, it is not
15 appropriate.") (internal citation and quotation omitted).

16     Core Wireless's request for a FRAND royalty rate determination (Count IV) is similarly
17 duplicative of what Core Wireless is seeking with its breach of contract claim.  (*E.g.* Dkt. 109
18 [Amend. Compl.] ¶¶ 43, 50.)  *See Tech. & Intellectual Prop. Strategies Grp. PC v. Fthenakis*,
19 11-cv-2373, 2011 WL 3501690, at *10 (N.D. Cal. Aug. 10, 2011) (dismissing "needlessly
20 duplicative" declaratory relief counterclaim that was "wholly dependent on the Court's findings
21 on [the] substantive claims," and would not provide "any damages or relief beyond the relief
22 requested pursuant to [the] substantive claims," nor "resolve any issues aside from those already
23 addressed by the substantive claims."); *Microsoft Corp. v. Motorola, Inc.*, 10-cv-1823, 2011 WL
24 11480223, at *5-*6 (W.D. Wash. June 1, 2011) (dismissing claim for declaration of a RAND
25 royalty rate that was duplicative of request for injunction that defendant make a RAND offer).

26     ***Second,*** if the Court finds that the declaratory judgment claims are not related to Core
27 Wireless's breach of contract claims (and therefore not duplicative), the declaratory judgment
28 claims are improper requests for advisory opinions.  A party lacks standing to bring a declaratory

judgment claim if it seeks an advisory opinion.  *United Pub. Workers v. Mitchell*, 330 U.S. 75, 89 (1947) ("[F]ederal courts . . . do not render advisory opinions."); *AIU Ins. Co. v. Acceptance Ins. Co.*, 07-cv-5491, 2010 WL 5396021, at \*1 (N.D. Cal. Dec. 23, 2010) ("[F]ederal courts have no power to render advisory opinions as to what the law ought to be or affecting a dispute that has not yet arisen.")  Counts III and IV, if decoupled from the contract claims, would do just that by asking the Court to declare that Apple is an "unwilling licensee" and to declare a FRAND royalty rate for Core Wireless's 1,200-patent portfolio of declared-essential patents—without any underlying liability theory.

Detached from any threshold finding of liability, Core Wireless's requests would not affect the legal rights of the parties and, therefore, would need to be dismissed as a matter of law for lack of standing.  *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them.") (quotation marks omitted); *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 450 n.6 (S.D.N.Y. 2014) (dismissing declaratory judgment of contract damages in part because claim for relief "assumes liability has been established").  By seeking a declaration that Apple was unwilling to negotiate a license and a determination of a FRAND rate for Core Wireless's patents—without a finding that Apple was obligated to negotiate with or pay Core Wireless for those patents or that Apple infringed the patents—Core Wireless is asking for an advisory opinion that a federal court cannot render.  Such declarations cannot simply be requested in the abstract, without any grounding in any liability theory.  Nor does the fact that Core Wireless's patents have been declared essential to ETSI give rise to an actual controversy in the absence of a valid claim for liability.  *See, e.g.*, *InterDigital Commc'ns, Inc. v. ZTE Corp.*, 13-cv-00009, 2014 WL 2206218, at \*3 (D. Del. May 28, 2014) (finding no jurisdiction over claim for declaratory judgment of a FRAND royalty rate because such relief "would have little utility and serve little to no useful purpose"); *Ericsson Inc. v. D-Link Sys., Inc.*, 10-cv-473, 2013 WL 4046225, at \*21 (E.D. Tex. Aug. 6, 2013), *aff'd in part, vacated in part, rev'd in part*, 773 F.3d 1201 (Fed. Cir. 2014) (denying defendants' request to set a worldwide RAND rate for portfolio of declared-essential patents because defendants "refused to

1  make any assurance they would accept such an offer," and therefore the court's determination

2  "would have amounted to nothing more than an advisory opinion as to Ericsson's initial RAND

3  license offer").

4      For these reasons, Core Wireless's declaratory judgment claims in Counts III and IV

5  should be dismissed as a matter of law.

6  **IV.    CONCLUSION**

7      For the reasons set forth above, Apple respectfully requests that the Court dismiss the

8  declaratory judgment claims in Counts III and IV of the Amended Complaint.

9

10  Dated: January 14, 2016

11  APPLE INC.

12  By: */s/ Joseph J. Mueller*

13  Mark D. Selwyn (SBN 244180)
mark.selwyn@wilmerhale.com

14  WILMER CUTLER PICKERING
   HALE AND DORR LLP

15  950 Page Mill Road

16  Palo Alto, CA 94304
Telephone: (650) 858-6000

17  Facsimile: (650) 858-6100

18  Joseph J. Mueller (*pro hac vice*)

19  Cynthia D. Vreeland (*pro hac vice*)
Richard W. O'Neill (*pro hac vice*)

20  joseph.mueller@wilmerhale.com

21  cynthia.vreeland@wilmerhale.com
richard.oneill@wilmerhale.com

22  WILMER CUTLER PICKERING
   HALE AND DORR LLP

23  60 State Street

24  Boston, MA 02109
Telephone: (617) 526-6000

25  Facsimile: (617) 526-5000

26  *Attorneys for Defendant and Counterclaim-Plaintiff Apple Inc.*

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing document has been served via the Court's CM/ECF system on January 14, 2016 on counsel of record for Core Wireless Licensing S.A.R.L.  I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: January 14, 2016

_/s/ Joseph J. Mueller_

Joseph J. Mueller