RUSS, AUGUST & KABAT
Marc A. Fenster (CA SBN 181067)
Email: mfenster@raklaw.com
Benjamin T. Wang (CA SBN 228712)
Email: bwang@raklaw.com
Reza Mirzaie (CA SBN 246953)
Email: rmirzaie@raklaw.com
Brian D. Ledahl (CA SBN 186579)
Email: bledahl@raklaw.com
C. Jay Chung (CA SBN 252794)
Email: jchung@raklaw.com
Adam S. Hoffman (CA SBN 218740)
Email: ahoffman@raklaw.com
Neil A. Rubin (CA SBN 250761)
Email: nrubin@raklaw.com
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Kayvan B. Noroozi (CA SBN 271167)
Email: kayvan@noroozi.la
NOROOZI PC
1299 Ocean Ave., Suite 450
Santa Monica, CA 90401
Telephone: (310) 975-7074

Attorneys for Plaintiff
CORE WIRELESS S.A.R.L.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| CORE WIRELESS S.A.R.L.,<br><br>             Plaintiffs,<br><br>vs.<br><br>APPLE INC.,<br><br>             Defendants. | **Case No. 5:15-cv-05008-NC**<br><br>**PLAINTIFF AND COUNTERCLAIM-DEFENDANT CORE WIRELESS'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:    October 19, 2016<br>Time:    1:00 p.m.<br>Place:   Courtroom 7, 4th Floor<br>Judge:  Hon. Nathanael M. Cousins<br><br>**ORAL ARGUMENT REQUESTED** |

RUSS, AUGUST & KABAT

1

## NOTICE OF MOTION AND MOTION

2      PLEASE TAKE NOTICE THAT at 1:00 pm on October 19, 2016, Plaintiff and

3  Counterclaim-Defendant Core Wireless S.A.R.L. ("Core Wireless") shall and hereby does move

4  pursuant to Federal Rule of Civil Procedure 56 for an order granting Core Wireless partial

5  summary judgment that the "Tdoc 97A343" reference does not anticipate claim 14 of U.S. Patent

6  No. 6,477,151 (the "'151 patent") and that neither Tdoc 97A343 by itself nor Tdoc 97A343 in

7  combination with any other reference renders claim 14 of the '151 patent obvious.

8

## RELIEF REQUESTED

9      Core Wireless seeks partial summary judgment of no anticipation or obviousness of

10  claim 14 of the '151 patent based in whole or in part upon the Tdoc 97A343 reference.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

## I. INTRODUCTION

Apple contends that U.S. Patent No. 6,477,151 is invalid because it is anticipated by, or obvious in view of, a document that Apple calls "Tdoc 97A343." However, Apple's evidence that this document qualifies as prior art to the '151 patent consists solely of opinions from their expert witnesses that based upon what they contend were the practices of a standards organization known as ETSI, they believe the document was "circulated" prior to a 1997 ETSI meeting at which that document was discussed.

These expert opinions are unsupported by any documentary evidence that these practices existed during the relevant time period, let alone any evidence that Tdoc 97A343 itself was ever circulated prior to the meeting. During their depositions, Apple's experts admitted that they do not actually know whether Tdoc 97A343 was distributed in the manner they claim in their report. For that reason alone, Apple's invalidity theory fails to meet the clear and convincing evidence standard and should be rejected.

Even if the court could overlook the deposition admissions of Apple's experts and the other evidence that contradicts their opinions, their opinions must be rejected on the grounds that they are uncorroborated. If Apple had offered a percipient witness who could testify that Tdoc 97A343 was distributed in the manner that Apple contends, that witness's testimony could not be used to establish invalidity unless it was corroborated by documentary evidence. The need for corroboration is even stronger here, where there are no percipient witnesses and Apple's sole testimony is that of its paid experts, guessing at what might have happened prior to a meeting that happened nearly nineteen years ago.

Because Apple has failed to offer any evidence to corroborate the opinions of its experts and has failed to offer any clear and convincing evidence that Tdoc 97A343 was distributed prior to the 1997 meet, partial summary judgment should be granted in Core Wireless's favor.

## II. LEGAL STANDARDS

Summary judgment should be rendered if the pleadings and materials show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as matter of law. Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show

1

RUSS, AUGUST & KABAT

1   the absence of a genuine issue of material fact with respect to an essential element of the non-

2   moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has

3   made this showing, the burden then shifts to the party opposing summary judgment to designate

4   specific facts showing there is a genuine issue for trial. *Id.* at 324. To survive a motion for

5   summary judgment, the nonmovant must show that there are genuine factual issues that can only

6   be resolved by the trier of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

7       Patents are presumed valid. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).

8   Therefore, "[o]ne attacking the validity of a patent must present clear and convincing evidence

9   establishing facts that lead to the legal conclusion of invalidity." *Apple Computer, Inc.  v.*

10  *Articulate Sys., Inc.*, 234 F.3d 14, 26 (Fed. Cir. 2000); *accord Takeda Chem. Indus., Inc.*

11  *v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1355 (Fed. Cir. 2007) (affirming finding that

12  defendant had not proved obviousness by clear and convincing evidence). At summary

13  judgment, "a moving party seeking to have a patent held not invalid . . . must show that the

14  nonmoving party, who bears the burden of proof at trial, failed to produce clear and convincing

15  evidence on an essential element of a defense upon which a reasonable jury could invalidate the

16  patent." *Eli Lilly & Co. v. Barr Laboratories, Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001).

17      Clear and convincing evidence is evidence that produces "an abiding conviction that the

18  truth of the factual contentions are 'highly probable.'" *ActiveVideo Networks, Inc. v. Verizon*

19  *Commun., Inc.*, 694 F.3d 1312, 1327 (Fed. Cir. 2012) (quoting *Colorado v. New Mexico*, 467

20  U.S. 310, 316 (1984)). If evidence establishes that a reference was public as of a date somewhere

21  within a range of dates, and only some of the dates in that range are early enough to qualify the

22  reference as prior art, that evidence does not meet the clear and convincing standard. *See Amkor*

23  *Tech., Inc. v. Intl. Trade Commn.*, 692 F.3d 1250, 1258 (Fed. Cir. 2012) (no clear and convincing

24  evidence where range of dates of invention and range of dates of conception of the prior art

25  reference overlapped).

26      Under the *Barbed Wire* doctrine, any witness testimony that is relied upon to invalidate a

27  patent "must be corroborated by documentary evidence." *Lacks Industries, Inc. v. McKechnie*

28  *Veh. Components USA, Inc.*, 322 F.3d 1335, 1350 (Fed. Cir. 2003); *see Barbed–Wire Patent*, 143

1    U.S. 275, 284 (1892) (holding that testimony regarding invalidity can be "unsatisfactory" due to

2    "the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as

3    the party calling them would have them recollect them, aside from the temptation to actual

4    perjury"). This corroboration requirement applies to testimony from witnesses without any

5    interest in the outcome of the case, so long as those witnesses are testifying on behalf of an

6    interested party. *Finnigan Corp. v. Intl. Trade Comm'n.*, 180 F.3d 1354, 1367 (Fed. Cir. 1999).

7    The requirement applies to expert testimony as well as percipient witness testimony. *Zenith*

8    *Elecs. Corp. v. PDI Commun. Sys., Inc.*, 522 F.3d 1348, 1357 (Fed. Cir. 2008) (applying

9    corroboration requirement to expert opinions on invalidity). A defendant cannot meet the

10   corroboration requirement by simply providing testimony of two or more witnesses, if none of

11   those witnesses' testimony is corroborated by documentary evidence. *Union Carbide Chemicals*

12   *& Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1189 (Fed. Cir. 2002) (affirming JMOL

13   of no anticipation because the testimony of two employees of defendant was uncorroborated);

14   *Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 740–43 (Fed. Cir. 2002) (reversing verdict

15   of invalidity because the testimony of six employees of defendant was uncorroborated).

16   **III.   ARGUMENT**

17        **A.    The Relevant Dates Supported By Documentary Evidence Are**

18             **Undisputed**

19        On November 4, 1997, an engineer named Jarkko Oksala submitted an invention report

20   that he had prepared concerning the invention disclosed in the '151 patent. (Oksala Invention

21   Report (Ex. A); Oksala Dep. at 111:11-112:3, 114:13-23 (Ex. B).)[1] Mr. Oksala is the named

22   inventor of the '151 patent and was an employee of Nokia Mobile Phones. (Oksala Dep. at 7:6-

23   10, 10:25-11:4, 11:13-15 (Ex. B).) Included as part of this invention report was a draft of a

24   "CHANGE REQUEST" to Technical Specification GSM 03.64 of the GSM cellular telephone

25   standards. (Ex. A.) This draft change request contained blanks for the "TDOC" number and

26   "CHANGE REQUEST" number. (*Id.*)

27

28   _____

[1] All citations herein to exhibits refer to the concurrently filed declaration of Neil
Rubin.

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

1    One week later, on November 11, 1997, Nokia submitted a patent application to the

2    Finnish patent office, which was assigned Finnish patent application number 974200. ('151

3    patent (Ex. C); Priority Document for Finnish Patent Application 974200 (Ex. D).)

4    Between November 10 and November 14, 1997, a meeting was held by a group known as

5    the ETSI/STC SMG2/3 WPA in Sophia Antipolis, France. (ETSI Meeting Report at 7 (Ex. E).)

6    ETSI was the standards body responsible for the GSM standards at that point in time, and the

7    purpose of this meeting was to discuss proposed changes to those standards. At some point

8    during this meeting, Tdoc 97A343 was discussed, as was a slightly revised version of the same

9    proposal, called Tdoc 97A362. (ETSI Meeting Report at 10 (Ex. E); Tdoc 97A343 (Ex. F); Tdoc

10   97A362 (Ex. G).) The records of this meeting do not identify which day of the meeting Tdoc

11   97A343 (or the revised document Tdoc 97A362) was first discussed. (ETSI Meeting Report

12   at 10 (Ex. E); Walker Dep. at 32:2-17, 33:3-20 (Ex. M).)

13   The substantive text of Tdoc 97A343 is identical to that of the draft contained in Mr.

14   Oksala's November 4, 1997 invention report. (Knightly Rep., ¶ 123 (Ex. H).) However, where

15   the November 4, 1997 draft contained blanks for the "TDOC" and "CHANGE REQUEST"

16   numbers, in Tdoc 97A343 those blanks have been filled in with a TDOC of "97A343" and a

17   "CHANGE REQUEST No." of "A040r0." (Compare Ex. A to Ex. F.) In addition, Tdoc 97A343

18   changed the "Date" of the document from "04 Nov 1997" to "10 Oct 1997." (*Id.*)

19   The subsequent revised version of this document called Tdoc 97A362 changed a single

20   word from "should" to "shall" and changed the "CHANGE REQUEST No." from "A040r0" to

21   "A040r1." (Tdoc 97A362 (Ex. G); Walker Dep. at 33:21-34:6 (Ex. M).) It contained the same

22   "Date" of "10 Oct 1997" as Tdoc 97A343.

23   On January 16, 1998, a copy of Tdoc 97A343 was uploaded to the ETSI website. (ETSI

24   Website Directory Listing, p. 2 (Ex. N).)

25   On November 10, 1998, Nokia submitted U.S. Patent Application 09/189,590, which

26   claimed priority to the earlier Finnish patent application. ('151 patent (Ex. C).) This U.S.

27   application was granted by the U.S. Patent Office and resulted in the '151 patent. (*Id.*)

28

4

**B.     To Rely Upon Tdoc 97A343 As Prior Art to the '151 Patent, Apple Must Produce Clear and Convincing Evidence That Tdoc 97A343 Was Published Prior to November 10, 1997**

Apple contends that Tdoc 97A343 is prior art to the '151 patent because it "was readily accessible to interested people in the field more than one year before the '151 patent was filed." (Knightly Rep., ¶ 115 (Ex. H).) In other words, Apple contends that Tdoc 97A343 qualifies as prior art under 35 U.S.C. § 102(b) as that section existed prior to the March 16, 2013 effective date of the America Invents Act ("AIA").

Under pre-AIA § 102(b), Apple must show that "the invention was . . . described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b).[2] In other words, Apple must show that Tdoc 97A343 was a "printed publication" prior to November 10, 1997.

Apple contends that Tdoc 97A343 is a printed publication because it was "circulated" to certain unspecified members of the relevant working group prior to the meeting. (Knightly Rep., ¶ 126 (Ex. H); Walker Rep., ¶ 152 (Ex. I); Buehrer Rep., ¶ 309 (Ex. J).) Even assuming for the purposes of this motion that such "circulation" of Tdoc 97A343 would have made it a "printed publication" under § 102(b), Apple has provided no evidence that any such circulation of the document actually ever occurred.

**C.     Apple Can Offer No Corroborating Evidence That Tdoc 97A343 Was Published Prior to November 10, 1997**

Apple offers no percipient witness and no document that shows that Tdoc 97A343 was distributed to anyone at all outside of Nokia prior to November 10, 1997. Indeed, the documents that are in evidence suggest that Tdoc 97A343 was first disclosed to participants at the Sophia Antipolis meeting and that it was only distributed more widely months after that meeting ended.

---

[2] Apple has not contended that Tdoc 97A343 qualifies as prior art under any subsection of § 102 other than § 102(b), and Tdoc 97A343 does not. It is undisputed that the named inventor of the '151 patent Mr. Oksala was also the author of Tdoc 97A343. (Oksala Dep. at 28:17-21 (Ex. B).) In addition, Nokia promptly reduced Mr. Oksala's invention to practice by filing the application with the Finish patent office on November 11, 1997, one week after Mr. Oksala submitted his invention report.

RUSS, AUGUST & KABAT

1    All that Apple can point to as support for its claim that Tdoc 97A343 was distributed earlier is

2    expert opinion that it was "likely circulated" or "typically" may have been circulated, based upon

3    that expert's experience with other standards proposals. Such opinions fall well short of the clear

4    and convincing evidence that Apple must provide in order to establish that claim 14 of the '151

5    patent is invalid in light of Tdoc 97A343.

6           During fact discovery in this action, Apple never contended that Tdoc 97A343 was

7    published prior to November 10, 1997 and never produced any evidence supporting an earlier

8    publication date. Only in its expert reports on invalidity, served after the close of fact discovery,

9    did Apple first disclose that it believed Tdoc 97A343 was published prior to November 10, 1997.

10          In its tenth interrogatory to Apple, Core Wireless asked that Apple identify and describe

11   "all factual and legal bases" in support of its affirmative defenses, including its defense that the

12   '151 patent is invalid. Apple's response did not identify any such bases directly, but rather

13   incorporated its May 18, 2015 Invalidity Contentions and its expert reports concerning invalidity

14   by reference.  (Apple's 2d Supp. Resp. to Core Wireless's 2d Interrogs. at 24 (Ex. K).)

15          Apple's Invalidity Contentions list as the "Date of Publication" for Tdoc 97A343 "[a]t

16   least as early as November 10, 1997." (Apple Inc.'s Invalidity Contentions at 10 (Ex. L).) They

17   cite to no evidence other than Tdoc 97A343 itself to support this alleged publication date.

18          In its expert report concerning invalidity of the '151 patent, submitted by Dr. Edward W.

19   Knightly, Apple contended for the first time that Tdoc 97A343 was distributed prior to

20   November 10, 1997.   (Knightly Rep., ¶ 115 (Ex. H).) However, presumably because Dr.

21   Knightly lacked first-hand experience with the relevant standards organizations, his report cites

22   extensively to discussions with two other Apple experts, Dr. Walker and Dr. Buehrer, as support

23   for his opinion that Tdoc 97A343 was circulated prior to that date.  (*Id.*, ¶¶ 115, 126, 128, 132.)

24   Indeed, Dr. Knightly cites to no evidence other than Tdoc 97A343 itself and his discussions with

25   Dr. Walker and Dr. Buehrer to support his opinion that the document was circulated. (*Id.*)

26          Dr. Walker and Dr. Buehrer each submitted expert reports of their own in this case, and

27   each devotes a single paragraph to Tdoc 97A343. (Walker Rep., ¶ 152 (Ex. I); Buehrer Rep., ¶

28

CORE WIRELESS S.AR.L. V. APPLE INC.
Case No. 5:15-cv-05008-NC

RUSS, AUGUST & KABAT

1  309 (Ex. J).) Dr. Walker's opinion concerning when Tdoc 97A343 was distributed amounts to a

2  single sentence:

3  "Based on the fact that this document was available on ETSI's website and on my

4  experience that proposals typically may be circulated amongst working group

5  members several weeks prior to a meeting at which the proposal will be

6  discussed, I believe that this document was circulated to other members of the

7  SMG2 working group in advance of that November 10 meeting."

8  (Walker Rep., ¶ 152 (Ex. I).)

9  Dr. Walker cites to no document that corroborates his experience concerning what was

10  "typical" practice at ETSI in 1997, let alone to any document that corroborates his opinion that

11  this particular document was circulated. Moreover, Dr. Walker recanted this opinion during his

12  deposition. First, he admitted that he could not confirm that Tdoc 97A343 was on the ETSI

13  website or was circulated by email prior to the November 10 meeting. (Walker Dep. at 35:10-

14  36:23 (Ex. M).) He then testified that "I probably should not have written the word 'was' but

15  written the word 'could have been' or 'may have been' . . . ." (*Id.* at 36:9-14.)

16  Dr. Walker was then shown a printout listing files on the ETSI website, which lists a date

17  of January 16, 1998 for Tdoc 97A343. (ETSI Website Directory Listing (Ex. N).) He agreed on

18  the basis of this printout that Tdoc 97A343 was "probably not" uploaded to the ETSI website

19  prior to January 16, 1998. (Walker Dep. at 42:7-43:14 (Ex. M).)

20  An uncorroborated opinion that proposals "typically may be," "could have been," or

21  "may have been" circulated is far short of clear and convincing evidence that this one particular

22  proposal was circulated. But, a document cited by Dr. Walker demonstrates that the practice of

23  distributing proposals prior to a meeting was not as common as even his tepid "typically may be"

24  opinion suggests. In paragraph 147 of his report, Dr. Walker quotes an 2016 FAQ document

25  concerning the ***current*** standards process of 3GPP, the standards body that subsequently took

26  over responsibility for the GSM standard that Tdoc 97A343 related to from ETSI. (3GPP FAQs,

27  APLCW-2&3-0000100283 at 100290 (Ex. O).); Walker Dep. at 30:2-13 (Ex. M).) Dr. Walker

28  quotes part of a paragraph that states that "TDoc numbers start to be allocated some weeks

7

RUSS, AUGUST & KABAT

1    before a 3GPP meeting, and the authors then create them and they or the group's secretary

2    uploads them to the public file server as soon as possible." (Walker Rep., ¶ 147 (Ex. I); 3GPP

3    FAQs, APLCW-2&3-0000100283 at 100290 (Ex. O).)

4          The paragraph that Dr. Walker quotes is an answer to the question "How can I determine

5    when a meeting contribution document (TDoc) became publicly available." (*Id.*) Dr. Walker's

6    quote omits the highly relevant last sentence of that paragraph, however, which states that

7    "[t]ypically, at the start of a meeting, around 50% of the TDocs are available." (*Id.*) In other

8    words, according to a document that Dr. Walker himself relies upon to establish the practices of

9    the relevant standards bodies, 50% of Tdocs are made publicly available for the first time ***during***

10   the working group meeting.

11         Dr. Walker's quote about the Tdoc numbers being allocated in the weeks prior to a

12   meeting explains the blank "TDOC" number in the November 4, 1997 invention disclosure; the

13   Tdoc number had simply not been allocated by the standards body as of November 4. This is

14   consistent with testimony that Dr. Walker offered during his deposition concerning the October

15   10, 1997 date that appears on Tdoc 97A343. Dr. Walker testified that normally a Tdoc would list

16   the date of the meeting at which it is being presented, not some prior date such as the date it was

17   created. (Walker Dep. at 37:8-38:12 (Ex. M).) As a result, Dr. Walker concluded that the

18   October 10 date may have been a typo and that it was meant to be November 10, the first day of

19   the Sophia Antipolis working group meeting. (*Id.*) At some point after the November 4, 1997

20   invention disclosure was submitted within Nokia, the standards body assigned Tdoc and Change

21   Request numbers to Nokia, and those numbers were added to the document to create Tdoc

22   97A343. In the process, the date was changed to reflect the date of the working group meeting,

23   and the October typo was introduced.

24         As for Dr. Buehrer, he offers the opinion "I conclude that Tdoc 97A343 was circulated to

25   other working group members and therefore publicly available at or around the date on the

26   document, October 10, 1997." (Buehrer Rep., ¶ 309 (Ex. J).) However, Dr. Buehrer cites to no

27   documents to support this conclusion other than Tdoc 97A343 and the later Tdoc 97A362.

28   Nothing in either document indicates whether the document was circulated, when it was

8

RUSS, AUGUST & KABAT

1  circulated, or whom it was circulated to. He points to "the ETSI and 3GPP practice of circulating

2  proposals before a meeting at which they will be discussed," but he cites to no document that

3  corroborates his testimony that such a practice actually existed. (*Id.*) He also cites to "my

4  experience that proposals would typically be circulated in the weeks before a working group

5  meeting." (*Id.*)

6      The experience that Dr. Buehrer cites to was not experience with the ETSI or 3GPP

7  standards bodies relevant to Tdoc 97A343. (Buehrer Dep. at 142:1-144:24, 150:14-151:3

8  (Ex. P).) Rather Dr. Buehrer's experience was with a different standards body known as 3GPP2,

9  developing a separate set of wireless communications standards. (*Id.*) During his deposition, Dr.

10  Buehrer admitted that he did not know whether Tdoc 97A343 was actually distributed prior to

11  the November 10, 1997 meeting:

12      "Q.    So if the r1 version of the document was discussed during the November

13          10th to 14th, 1997 meeting, you don't know whether the r0 document [Tdoc

14          97A343] was distributed prior to that meeting?

15      A.     I don't know for a fact when it was distributed. I just know that it had a

16          date of Ocobter 10th, and there was one revision made to it."

17  (Buehrer Dep. at 156:4-10 (Ex. P).)

18      None of Apple's three experts knows whether Tdoc 97A343 was ever distributed prior to

19  the November 10, 1997 start of the ETSI meeting. Dr. Knightly knows nothing on the subject

20  aside from what Dr. Walker and Dr. Buehrer have told him. And the deposition testimony of Dr.

21  Walker and Dr. Buehrer makes clear that they don't know whether the document was distributed

22  prior to the meeting either. Both are guessing, based upon fragmentary evidence and their

23  understanding of how participants in a meeting held nearly 19 years ago may have distributed

24  their proposals prior to that meeting. None of these witnesses' testimony meets the corroboration

25  requirement of *Barbed Wire,* and none of Apple's evidence satisfies their burden to provide clear

26  and convincing evidence of invalidity.

27

28

**IV.     CONCLUSION**

For the foregoing reasons, Core Wireless respectfully asks that partial summary judgment be granted that Tdoc 97A343 does not qualify as prior art to anticipate or render obvious the '151 patent.

Respectfully submitted,

DATED: September 1, 2016          **RUSS, AUGUST & KABAT**


*/s/ Marc A. Fenster*

Marc A. Fenster (CA SBN 181067)
Email: mfenster@raklaw.com
Benjamin T. Wang (CA SBN 228712)
Email: bwang@raklaw.com
Reza Mirzaie (CA SBN 246953)
Email: rmirzaie@raklaw.com
Brian D. Ledahl (CA SBN 186579)
Email: bledahl@raklaw.com
C. Jay Chung (CA SBN 252794)
Email: jchung@raklaw.com
Adam S. Hoffman (CA SBN 218740)
Email: ahoffman@raklaw.com
Neil A. Rubin (CA SBN 250761)
Email: nrubin@raklaw.com
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Kayvan B. Noroozi (CA SBN 271167)
Email: kayvan@noroozi.la
NOROOZI PC
1299 Ocean Ave., Suite 450
Santa Monica, CA 90401
Telephone: (310) 975-7074

Attorneys for Plaintiffs
CORE WIRELESS S.A.R.L.