**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

RUSS, AUGUST & KABAT
Marc A. Fenster (CA SBN 181067)
Email: mfenster@raklaw.com
Benjamin T. Wang (CA SBN 228712)
Email: bwang@raklaw.com
Reza Mirzaie (CA SBN 246953)
Email: rmirzaie@raklaw.com
Adam S. Hoffman (CA SBN 218740)
Email: ahoffman@raklaw.com
Neil A. Rubin (CA SBN 250761)
Email: nrubin@raklaw.com
Jacob R. Buczko (CA SBN 269408)
Email: jbuczko@raklaw.com
James N. Pickens (CA SBN 307474)
Email: jpickens@raklaw.com
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Kayvan B. Noroozi (CA SBN 271167)
Email: kayvan@noroozi.la
NOROOZI PC
1299 Ocean Ave., Suite 450
Santa Monica, CA 90401
Telephone: (310) 975-7074

Attorneys for Plaintiff
CORE WIRELESS LICENSING S.A.R.L.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| CORE WIRELESS LICENSING S.A.R.L., <br>                     Plaintiff, <br><br>     vs. <br><br> APPLE INC., <br>                     Defendant. | Case No. 5:15-cv-05008 <br><br> **Core Wireless's Opposition to Apple's Motion to Preclude Certain Testimony and Opinions of Stephen E. Dell** <br><br> Date: November 16, 2016 <br> Time: 2:00 p.m. <br> Location: Courtroom 7, 4th Floor <br> Judge: Hon. Nathaniel Cousins |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

I. INTRODUCTION. ...............................................................................................................1

II. BECAUSE MR. DELL'S METHODOLOGY IS SOUND, APPLE'S MOTION MUST BE DENIED. ........................................................................................................1

    A. Mr. Dell's methodology. ........................................................................................1

    B. Mr. Dell's methodology is sound. ..........................................................................4

III. APPLE'S CRITICISMS ARE WITHOUT MERIT. ...........................................................7

    A. First criticism: "Mr. Dell's 'Nokia Per Patent Offer' and 'Nokia Public Policy' royalty rate indicators should be excluded for violating the entire market value rule." ........................................................................................................7

    B. Second criticism: "Nokia's Announced And Demanded Royalty Rates Are Not Sufficiently Reliable Evidence On Which Mr. Dell May Rely In His Opinions." ................................................................................................................9

    C. Apple's fleeting criticisms are likewise without merit. ........................................11

IV. CONCLUSION. ................................................................................................................12

i

**CORE WIRELESS LICENSING S.AR.L. V. APPLE INC.**
**CORE WIRELESS'S OPPOSITION TO APPLE'S MOTION TO PRECLUDE CERTAIN TESTIMONY AND OPINONS OF STEPHEN E. DELL**
**Case No. 5:15-cv-05008-NC**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012) .................................................................................... 9

*Commonwealth Scientific and Indus. Research Organisation (CSIRO) v. Cisco Systems, Inc.*,
    809 F.3d 1295 (Fed. Cir. 2015) .................................................................................... 1

*Ericsson v. D-Link Systems*,
    773 F.3d 1201 (Fed. Cir. 2014) ............................................................................. 1, 6, 8

*i4i Ltd. Partnership v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010) .................................................................................. 1, 9

*SmithKline Beecham Corp. v. Apotex Corp.*,
    439 F.3d 1312 (Fed. Cir. 2006) .................................................................................. 11

ii

**CORE WIRELESS LICENSING S.AR.L. V. APPLE INC.**
**CORE WIRELESS'S OPPOSITION TO APPLE'S MOTION TO PRECLUDE CERTAIN TESTIMONY AND OPINONS OF STEPHEN E. DELL**
Case No. 5:15-cv-05008-NC

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## I. INTRODUCTION.

Apple's motion seeks to exclude Mr. Dell's expert testimony based on inaccurate representations of the applicable law and the evidence at hand. Apple entirely ignores controlling Federal Circuit authority that fundamentally rejects the core premises of its motion, and also egregiously misstates Mr. Dell's deposition testimony. As this opposition demonstrates, Mr. Dell's methodology is both legally sound under controlling Federal Circuit precedent and factually supported by relevant evidence. Accordingly, Apple's motion must be denied.

## II. BECAUSE MR. DELL'S METHODOLOGY IS SOUND, APPLE'S MOTION MUST BE DENIED.

A *Daubert* challenge under Rule 702 has a limited scope. "When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010) (citations omitted).

Mr. Dell's methodology—which relies upon Nokia and Apple's actual licensing histories, negotiations, and policies with respect to comparable patents—has been explicitly approved in two recent and controlling Federal Circuit precedents. *See Commonwealth Scientific and Indus. Research Organisation (CSIRO) v. Cisco Systems, Inc.*, 809 F.3d 1295, 1304 (Fed. Cir. 2015) (holding that "the district court did not violate apportionment principles in employing a damages model that took account of the parties' informal negotiations with respect to the end product," *i.e.*, the value of the entire accused product rather than the wireless chip); *Ericsson v. D-Link Systems*, 773 F.3d 1201, 1228 (Fed. Cir. 2014) (recognizing that "licenses are generally negotiated without consideration of the [entire market value rule]" and holding that a license may not be excluded solely because of its chosen royalty base). Accordingly, Apple's motion must be denied.

### A. Mr. Dell's methodology.

To value damages in this case, Mr. Dell relies upon a hypothetical negotiation between

1

**CORE WIRELESS LICENSING S.AR.L. V. APPLE INC.**
**CORE WIRELESS'S OPPOSITION TO APPLE'S MOTION TO PRECLUDE CERTAIN TESTIMONY AND OPINONS OF STEPHEN E. DELL**
Case No. 5:15-cv-05008-NC

Apple and Nokia occurring in 2008-2010.[1] Noroozi Decl. Ex. A (Dell Report) at ¶¶ 64-72. Mr. Dell utilizes the *Georgia-Pacific* factors to guide his hypothetical negotiation analysis and specifically accounts for the impact of Nokia's FRAND commitments on those factors. *See, e.g., id.* at ¶¶ 16, 88 & n. 162, 95, 103. As explained in detail below, Mr. Dell's analysis arrives at a per patent, per unit damages estimate first by evaluating the respective bargaining positions, that Nokia and Apple would have taken at the hypothetical negotiation, and second by evaluating the position they would have agreed upon after further negotiation.

With respect to the first aspect of his *Georgia-Pacific* analysis, Mr. Dell thoroughly considered the evidence in this case to determine the starting bargaining positions on **both sides of the bargaining table**. *See id.* at ¶¶ 158-172. In other words, Mr. Dell considered Nokia's policies and practices to determine the bargaining position that Nokia would present to Apple during the hypothetical negotiation, and also considered Apple's policies and practices to determine the different bargaining position Apple would present to Nokia at their negotiation. *Id.* In short, Mr. Dell recognized (unsurprisingly) that Nokia and Apple would have had different negotiation positions.

Looking to Nokia's end of the table, Mr. Dell acknowledged evidence that Nokia's consistent negotiation position—both in its publicly announced licensing policy and its in *actual* licensing negotiations with Apple—has been to utilize "the sale price of an end user device" or the "average selling price of a subscriber unit" as the royalty base. *See, e.g., id.* at ¶¶ 41, 79, 164. Mr. Dell further recognized Nokia's "stated licensing policy and practice" to license its "standard essential patents as a percentage of the licensee's handset value," which in this case would be approximately $628 per unit for iPhones and $575 per unit for iPads. *Id.* at ¶ 180 n. 389.

At the same time, Mr. Dell also considered extensive evidence of Apple's actual, contemporaneous, patent licensing negotiations with Nokia, in which Apple itself took the position that the appropriate royalty base for a patent license between Nokia and Apple should be the value

---

[1] Apple's motion does not dispute that Nokia, which owned the patents in suit as of the hypothetical negotiation date, is the appropriate counterparty of the hypothetical negotiation.

2

**CORE WIRELESS LICENSING S.AR.L. V. APPLE INC.**
**CORE WIRELESS'S OPPOSITION TO APPLE'S MOTION TO PRECLUDE CERTAIN TESTIMONY AND OPINONS OF STEPHEN E. DELL**
Case No. 5:15-cv-05008-NC

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

[REDACTED] *Id.* at ¶¶ 81 & n. 154, 94, 168. He also considered evidence of Apple's stated positions to ETSI, in which Apple publicly agreed that a common royalty base applicable to the licensing of FRAND-encumbered cellular standard essential patents could appropriately be "the industry average sales price for a basic communications device that is capable of both voice and data communication." *Id.* at ¶¶ 85, 138, 154, 183. Mr. Dell then conservatively assumed that, in forming its bargaining position at the hypothetical negotiation, "Nokia would have conceded to Apple's stated requests to ETSI that the common royalty base for FRAND licensing to be no higher than the industry average sales price for a 'basic communications device,' rather than the average selling price of Apple's Accused Products in this case." *Id.* at ¶ 183 n. 390.

Mr. Dell's analysis thus yielded two highly reliable inputs for Nokia's negotiating position as to the *royalty rate*: (1) Nokia's publicly announced rate; and (2) its actual per patent rate offer to Apple during their negotiations. *Id.* at ¶¶ 160-164. And he also identified three highly reliable inputs for Nokia's negotiation position as to the *royalty base*: (1) the average purchase price for a wireless device at the relevant time ($101); (2) Apple's valuation of a "[REDACTED] and (3) the average purchase price for a smartphone at the time ($208). *Id.* at ¶¶ 161 & n. 363, 168, 171. Based on these inputs, Mr. Dell estimated that ***Nokia's bargaining position*** at the hypothetical negotiation would range from a low of $[REDACTED] per unit per patent to a high of $[REDACTED] per unit per patent. *See id.* at ¶¶ 172 & 185 (summarizing calculations).

Turning his analytical gaze to Apple's side of the table, Mr. Dell specifically acknowledged that "Apple would seek a different approach" and would instead urge "the baseband processor chip to be the appropriate royalty base." *Id.* at ¶ 165. While he noted that such a bargaining position would be "inconsistent with Apple's declaration to ETSI in 2011" that the common royalty base could appropriately be the value of a basic communication device, *id.* at ¶ 183, Mr. Dell nonetheless conservatively assumed that Apple would insist on the baseband chip as the appropriate royalty base, and analyzed Apple's bargaining position accordingly. *See*

*id.* at ¶¶ 165-171. Based on the evidence as to the relevant inputs from Apple's perspective (which Apple does not challenge), Mr. Dell estimated that ***Apple's bargaining position*** at the hypothetical negotiation would range from ▮ to ▮ per patent per unit. *Id.* at ¶ 172.

Mr. Dell made explicitly clear that, in his opinion, the above ranges "would represent the respective ***starting points*** for the hypothetical negotiation for Nokia and Apple respectively." *Id.* (emphasis added). In other words, Mr. Dell did ***not*** opine that the above approaches and ranges themselves would directly yield an ultimate damages estimate, without incorporating further considerations.

Rather, in his extensive analysis of *Georgia-Pacific* factor 15, Mr. Dell then further evaluated the above starting positions in light of the evidence and considerations the parties would have found relevant, as well as the evidence of their respective bargaining positions as of the time of the negotiation, and concluded that the parties would have reached an agreement at ▮ per unit per patent for two of the patents in suit, and ▮ per unit as to the third patent. *Id.* at ¶¶ 174-186. Mr. Dell then further evaluated the reasonableness of his conclusions in light of Apple's actual total royalty payments for other declared standard essential patents, and additionally concluded that his estimated royalty rates would not raise concerns as to either royalty stacking or patent hold up. *Id.* at ¶ 187.

**B.     Mr. Dell's methodology is sound.**

Controlling Federal Circuit precedent holds that Mr. Dell's methodology is sound.

In *CSIRO v. Cisco*, the Federal Circuit held that it was not a methodological error for the district court to base its damages analysis on evidence from the parties' negotiations, even where the district court (1) looked to the value of the accused "end product," rather than the "smallest salable patent-practicing unit," and (2) relied on the plaintiff's published licensing rates, which had never been accepted in any license. 809 F.3d 1295, 1299-1300, 1304 (Fed. Cir. 2015).

There, the district court had determined damages, after a bench trial, by first identifying "a reasonable starting point for negotiations between the parties" based on the parties actual negotiation history, and by then evaluating the *Georgia-Pacific* factors to determine where the

4

CORE WIRELESS LICENSING S.A.R.L. V. APPLE INC.
CORE WIRELESS'S OPPOSITION TO APPLE'S MOTION TO PRECLUDE CERTAIN TESTIMONY AND OPINONS OF STEPHEN E. DELL
Case No. 5:15-cv-05008-NC

parties would have reached agreement given the facts and their respective bargaining power. *Id.* at 1300. With respect to CSIRO's starting position, the trial court looked to rates published by CSIRO in a form license offer, called the "Rate Card." *Id.* at 1300. Notably, "**CSIRO did not execute any licenses under the Rate Card terms.**" *Id.* at 1299 (emphasis added). As for Cisco's position, the trial court relied upon a rate of $0.90 per unit that was "informally suggested" by a Cisco IP licensing executive at one point during negotiations, but never agreed to by CSIRO. *Id.* It then concluded that the parties' hypothetical negotiation would have concluded in rates from $0.65 to $1.90, tiered by sales volume and adjusted for disparate product profit margins. *Id.* at 1300.

On appeal, Cisco challenged the district court's approach as methodologically improper because it relied on royalty rates tied to Cisco's end products, rather than "the wireless chip, which it found to be the smallest salable patent-practicing unit." *Id.* at 1300-1301. Cisco argued that "all damages models [must] begin with the smallest salable patent-practicing unit." *Id.* 1303.

The Federal Circuit explicitly rejected that position as both "untenable" and in "conflict[ ] with our prior approvals of a methodology that values the asserted patent based on comparable licenses." *Id.* (citations omitted). It further noted that "adopting Cisco's position would necessitate exclusion of comparable license valuations that—at least in some cases—may be *the most effective method* of estimating the asserted patent's value." *Id.* at 1303-1304 (emphasis added).

Instead, *CSIRO* held that evidence of licensing rates exchanged during the parties' actual licensing negotiations renders the general requirement of apportionment from the smallest salable patent practicing unit, as well as the "entire market value rule," completely "*inapplicable*." *Id.* (emphasis added). The Federal Circuit recognized that actual evidence of the parties' licensing policies and negotiation history, even if tied to the value of the end product, inherently "builds in" apportionment. *Id.* ("Because the parties discussions centered on a license rate for the '069 patent, this starting point for the district court's analysis already built in apportionment. Put differently, the parties negotiated over the value of the asserted patent, 'and

5

**CORE WIRELESS LICENSING S.A.R.L. V. APPLE INC.**
**CORE WIRELESS'S OPPOSITION TO APPLE'S MOTION TO PRECLUDE CERTAIN TESTIMONY AND OPINONS OF STEPHEN E. DELL**
Case No. 5:15-cv-05008-NC

no more.'") (citing and quoting *Ericsson v. D-Link*, 773 F. 1201, 1226 (Fed. Cir. 2014)). In reaching that decision, the Federal Circuit reiterated its holding in *Ericsson v. D-Link* that "otherwise comparable licenses are not inadmissible solely because they express the royalty rate as a percentage of total revenues, rather than in terms of the smallest salable unit." *Id.* (citing *Ericsson*, 773 F.3d at 1228).

Moreover, the Federal Circuit found no methodological fault with the district court's reliance upon CSIRO's "Rate Card" as a starting point for the parties' bargaining range, despite the fact that "***CSIRO did not execute any licenses under the Rate Card terms***." *Id.* at 1299 (emphasis added). Rather, the appellate court simply noted that the lack of executed licenses on the Rate Card terms may warrant a downward adjustment. *Id.* at 1305-06.

As demonstrated in the previous section, Mr. Dell's methodology is entirely consistent with the methodology blessed in *CSIRO*. Mr. Dell relies on Nokia's explicit licensing policy, as well as its actual contemporaneous negotiation history with Apple, in determining that Nokia's starting bargaining position would have relied on the value of the end product, rather than the baseband chip, as the appropriate royalty base. As in *CSIRO*, such an approach "already built in apportionment" because Nokia's proposed rates to Apple ▮▮▮ per patent or patent family for GSM patents), as well as its published portfolio-wide rates (1.5% to 2%), were both explicitly based on "the sales price of an end user device" as the royalty base. Mr. Dell also relied on evidence that Apple agreed—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in its statements to ETSI—that the value of a basic communications device ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is an appropriate royalty base for FRAND-encumbered declared standard essential telecommunications patents. Thus, as in *CSIRO*, Mr. Dell's methodology, which relies on actual evidence of the parties' negotiation practices and histories, does not violate apportionment principles solely because it recognizes Nokia's chosen royalty base and Apple's actual license negotiation history.

Moreover, Mr. Dell's reliance on Nokia's published rates and offers to Apple is also methodologically proper regardless of whether Apple or anyone else ever accepted those rates.

6

**CORE WIRELESS LICENSING S.AR.L. V. APPLE INC.
CORE WIRELESS'S OPPOSITION TO APPLE'S MOTION TO PRECLUDE CERTAIN TESTIMONY AND OPINONS OF STEPHEN E. DELL
Case No. 5:15-cv-05008-NC**

1   As in *CSIRO*, Mr. Dell relies on that evidence in evaluating Nokia's *starting bargaining*

2   *position*, which is precisely what the evidence demonstrates. And unlike in *CSIRO*, Mr. Dell's

3   ultimate reasonable royalty conclusion accounted for the fact that "[t]here is no established

4   royalty for the patents at issue," Ex. A at ¶ 176, and that Nokia's published rates represented an

5   "upper bound of the starting point from which the parties would negotiate." *Id*. at ¶ 179.

6   Consistently, Mr. Dell's ultimate reasonable royalty conclusions of ▮ to ▮ per unit per

7   patent are well below the ▮ upper bound he identifies as Nokia's starting point.

8         Accordingly, because Mr. Dell's methodology is sound, Apple's motion must be denied.

**III.   APPLE'S CRITICISMS ARE WITHOUT MERIT.**

Apple's motion raises two principal criticisms of Mr. Dell's approach—his reliance on the value of end products rather than baseband chips, and his reliance on Nokia's published rates and offers to Apple, which were purportedly never accepted. Apple also makes several additional footnote criticisms in passing and without meaningful discussion. We address and refute each of Apple's criticism in turn below.

    **A.   First criticism: "Mr. Dell's 'Nokia Per Patent Offer' and 'Nokia Public Policy' royalty rate indicators should be excluded for violating the entire market value rule."**

Apple moves to preclude Mr. Dell's opinions as to Nokia's starting bargaining position in the hypothetical negotiation, asserting that this aspect of Mr. Dell's analysis violates the entire market value rule. Apple Mot. at III.B. Apple argues that unless there is evidence that the patents in suit drive consumer demand for Apple's accused devices, Mr. Dell could not rely on the value of an end device as the royalty base, and was instead required to use the baseband chip, which Apple contends is the smallest salable patent-practicing unit. *Id.* Apple further argues that its own contrary licensing negotiation history creates no exception. *Id.* at 12-13.

Apple's premises are false. As explained in Section II, *CSIRO v. Cisco* explicitly rejected the arguments Apple asserts here. Apple makes no attempt to reconcile *CSIRO* with the motion it has presented to this Court. Instead, Apple's only mention of *CSIRO* misrepresents that decision

7

**CORE WIRELESS LICENSING S.AR.L. V. APPLE INC.**
**CORE WIRELESS'S OPPOSITION TO APPLE'S MOTION TO PRECLUDE CERTAIN TESTIMONY AND OPINONS OF STEPHEN E. DELL**
Case No. 5:15-cv-05008-NC

by suggesting it requires the use of the smallest salable unit under these facts. Apple Mot. at 10. Yet the very next sentence of *CSIRO* after that cited by Apple holds that the "smallest salable unit" apportionment principal is "***inapplicable***" under the facts at issue here. 809 F. 3d at 1303 ("Fundamentally, the smallest salable patent-practicing unit principle states that a damages model cannot reliably apportion from a royalty base without that base being the smallest salable patent-practicing unit. That principle is inapplicable here, however, as the district court did not apportion from a royalty base at all. Instead, the district court began with the parties' negotiations.").

As *CSIRO* explicitly held, Mr. Dell's reliance on Nokia's actual licensing policies and actual licensing offers to Apple cannot be excluded simply because of Nokia's chosen royalty base. 809 F.3d 1303-1304. That is particularly true here given the evidence that Apple acquiesced to the propriety of that royalty base ▮▮▮▮▮▮▮▮▮▮ in its statements to ETSI. Ex. A at ¶¶ 81 & n. 154, 85, 94, 138, 154, 168, 183. Moreover, as Mr. Dell noted in his report, ▮▮▮▮▮▮▮▮▮▮ Ex. A at ¶ 142.

Each of Apple's case citations is likewise inapposite. In *CSIRO,* the Federal Circuit explicitly cited and discussed *LaserDynamics*, *VirnetX v. Cisco*, and *Uniloc v. Microsoft*— including much of the same language Apple quotes in its motion—before holding that the entire market value rule and the smallest salable unit principle are "inapplicable" to evidence of the parties' actual negotiation positions and histories. 809 F.3d at 1301-1304 (discussing *LaserDynamics*, *VirnetX*, and *Uniloc*). Apple's reliance on those decisions, as well as district court decisions in *Power Integrations*, *Good Tech*, *GPNE*, and *Nortek* that apply the entire market value rule and the smallest salable unit principle, is thus misplaced in light of *CSIRO*.

Finally, Apple simultaneously argues that Mr. Dell should have and should not have used a ▮ figure for his royalty base instead of the ▮▮▮▮▮▮▮▮▮▮ figures he used. Apple Mot. at 12. To the extent there is a coherent criticism here, it is a factual one and not a

8

methodological one, and thus goes to weight and not admissibility. *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010) ("When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility.") (citations omitted); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012) ("Verizon's disagreements are with the conclusions reached by ActiveVideo's expert and the factual assumptions and considerations underlying those conclusions, not his methodology. These disagreements go to the weight to be afforded the testimony and not its admissibility.").

    **B.**    **Second criticism: "Nokia's Announced And Demanded Royalty Rates Are Not Sufficiently Reliable Evidence On Which Mr. Dell May Rely In His Opinions."**

Apple separately moves to preclude Mr. Dell's reliance on Nokia's "announced and demand royalty rates" by asserting that Nokia's published royalty rates, as well as its actual negotiation offers to Apple, are not "sufficiently reliable evidence" because these rates were purportedly never accepted. Apple asserts that, as a matter of fact, "Mr. Dell . . . assum[es] that the [ ] parties ***would have agreed*** to Nokia's publicly-announced rate," Mot. at 5 (emphasis added), while "ignoring" evidence that Nokia actually agreed to different rates in its licenses with Apple and Qualcomm. *Id.* at 3 & 5. Apple further asserts that, as a matter of law, Mr. Dell may not rely on "proposals" and "aspirational statements" from Nokia without evidence that Nokia entered into licenses at its announced or demanded rates, citing the *Golden Bridge* decision as its principal support. Apple Mot. at III.C.

Apple's second criticism is wrong both in its factual and legal premises.

*First*, Mr. Dell does ***not*** assume that the parties would have ultimately agreed to Nokia's publicly-announced rate, or the rate it offered to Apple. Rather, Mr. Dell uses that evidence to analyze Nokia's *starting bargaining position*, which is exactly what that evidence shows. *See, e.g.,* Ex. A at ¶ 179 (opining that the parties would have considered Nokia's published rates to be

9

**CORE WIRELESS LICENSING S.AR.L. V. APPLE INC.**
**CORE WIRELESS'S OPPOSITION TO APPLE'S MOTION TO PRECLUDE CERTAIN TESTIMONY AND OPINONS OF STEPHEN E. DELL**
Case No. 5:15-cv-05008-NC

an "upper bound of the starting point from which the parties would negotiate."). Mr. Dell then conducts a further detailed analysis of both parties' bargaining positions and bargaining power based on all of the *Georgia-Pacific* factors before reaching his ultimate royalty conclusion. *Id.* at ¶¶ 174-186, 89-90 (discussing Nokia's licenses with Qualcomm and Apple as evidence that "Nokia's stated policy can be, and has been, adjusted based on market conditions or other considerations.").

*Second*, Mr. Dell's reliance on Nokia's announced or demanded rates was not legally erroneous, regardless of whether those rates were ever accepted by Apple or others. *CSIRO* is again controlling on this issue. There, the Federal Circuit found no fault with the district court's reliance on CSIRO's "Rate Card" offer to identify a "reasonable starting point for negotiations between the parties" despite recognizing that CSIRO did not execute ***any licenses*** accepting those rates. Rather, the appellate court simply suggested that the lack of actual licenses on those terms may warrant a downward adjustment from those rates to the ultimately reasonable royalty conclusion. 809 F.3d at 1305-06. Here, Mr. Dell has made such an adjustment. Ex. A at ¶¶ 174-186 (concluding that the parties would have agreed to a rate of ███████, significantly below the ██ upper bound Nokia would have initially demanded). Accordingly, there is no methodological error with his approach.

Apple's reliance on *Golden Bridge*, a district court decision that pre-dates *CSIRO*, does not compel otherwise. In addition to lacking authoritative weight in light of *CSIRO*, *Golden Bridge* is factually inapposite. There, the plaintiff contended that its expert relied on evidence of "industry practice." 2014 WL 2194501, at *5. But the only such purported evidence came from "third-party papers," which merely represented "the authors' proposals or aspirations, not actual practice in the field." *Id.* Here, by contrast, Mr. Dell has relied on evidence of Nokia's actual practice in the field, not the aspirational academic suggestions of third-party authors. Thus, Mr. Dell has utilized the very sort of evidence found missing in *Golden Bridge*, and his opinions are not merely grounded in "ipse dixit." *See id.*

Moreover, contrary to Apple's representations to this Court, Mr. Dell does have evidence

10

**CORE WIRELESS LICENSING S.AR.L. V. APPLE INC.**
**CORE WIRELESS'S OPPOSITION TO APPLE'S MOTION TO PRECLUDE CERTAIN TESTIMONY AND OPINONS OF STEPHEN E. DELL**
Case No. 5:15-cv-05008-NC

of Nokia's public rate being accepted—. Apple represents to this Court that Mr. Dell testified: "I don't think there's [ ] evidence" that anyone agreed to pay Nokia's announced rates. Apple Mot. at 15 (citing Dell depo. at 195:5-8). Yet Mr. Dell's *actual* testimony is completely otherwise.



### C. Apple's fleeting criticisms are likewise without merit.

Apple also makes three passing criticisms in footnotes, while noting that these are "not the focus" of its motion. Apple Mot. at n. 1-3. Such fleeting, undeveloped "arguments raised in footnotes are not preserved" and do not provide a basis for relief. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (collecting cases). Moreover, Apple's footnote tactic was not for want of space; Apple had more than four pages of additional briefing available to it. Apple chose not to develop these criticisms because they are meritless, and they should not be considered. In any case, each of Apple's footnotes challenge the factual inputs and conclusions of Mr. Dell's opinions, and not his methodology, and thus cannot support exclusion. *See* n. 1 (challenging assumption as "not reasonable" and contradictory of Nokia and Core Wireless's past positions); n. 2 (challenging conclusions as "not logically sound"); n. 3 (challenging Mr. Dell's expert judgment and analysis based on the evidence).

11

**CORE WIRELESS LICENSING S.AR.L. V. APPLE INC.**
**CORE WIRELESS'S OPPOSITION TO APPLE'S MOTION TO PRECLUDE CERTAIN TESTIMONY AND OPINONS OF STEPHEN E. DELL**
Case No. 5:15-cv-05008-NC

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

IV. CONCLUSION.

For the reasons stated above, Apple's motion to preclude certain testimony of Mr. Dell should be denied.

Respectfully submitted,

DATED: October 26, 2016          */s/ Kayvan B. Noroozi*

Kayvan B. Noroozi (CA SBN 271167)
Email: kayvan@noroozi.la
NOROOZI PC
1299 Ocean Ave., Suite 450
Santa Monica, CA 90401
Telephone: (310) 975-7074

Marc A. Fenster (CA SBN 181067)
Email: mfenster@raklaw.com
Benjamin T. Wang (CA SBN 228712)
Email: bwang@raklaw.com
Reza Mirzaie (CA SBN 246953)
Email: rmirzaie@raklaw.com
Adam S. Hoffman (CA SBN 218740)
Email: ahoffman@raklaw.com
Neil A. Rubin (CA SBN 250761)
Email: nrubin@raklaw.com
Jacob R. Buczko (CA SBN 269408)
Email: jbuczko@raklaw.com
James N. Pickens (CA SBN 307474)
Email: jpickens@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Attorneys for Plaintiffs
CORE WIRELESS LICENSING S.A.R.L.