UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORE WIRELESS LICENSING S.A.R.L.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>APPLE INC.,<br><br>　　　　Defendant. | Case No. 15-cv-05008 NC<br><br>**ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 260, 261 |

Plaintiff Core Wireless alleges that defendant Apple infringes three patents related to mobile phone wireless communications systems and cellular networks. The patents were filed in the late 1990s and early 2000s and initially assigned to Nokia Corporation or a related entity. Nokia designated the patents-in-suit, as well as thousands of others, as essential to implementing a variety of wireless communications standards. Nokia then transferred the patents to Core Wireless.

In June 2016, Magistrate Judge Grewal issued a claim construction order in this case. Dkt. No. 222. After Judge Grewal's retirement, the case was transferred to the undersigned. Now, the parties each move for partial summary judgment to narrow the scope of the case. Dkt. Nos. 260, 261. The case is set for trial on December 5, 2016.

Core Wireless moves for partial summary judgment of no invalidity of the '151 patent, arguing that Apple's prior art reference was not publicly accessible before the critical date. Dkt. No. 260. Apple moves for partial summary judgment arguing: (1) claim

Case No. 15-cv-05008 NC

41 of the '818 patent is a case of divided infringement, so Apple cannot infringe that claim; (2) the LTE standard cannot infringe claim 14 of the '151 patent because LTE does not contain the requisite multiframe structures; (3) Core Wireless cannot prove induced infringement because Apple was not on notice of the patents; and (4) Nokia did not mark its products, so Core Wireless cannot recover pre-suit damages. Dkt. No. 261.

Apple also moves for partial summary judgment of no enhanced damages under 35 U.S.C. § 284. At the summary judgment hearing, Core Wireless stated that it is dropping its claim for enhanced damages from the case.

The Court GRANTS Core Wireless' motion for summary judgment because even drawing all inferences in favor of Apple, Apple has not presented sufficient evidence that the prior art reference was publicly accessible before the critical date. The Court GRANTS IN PART and DENIES IN PART Apple's motion for summary judgment as follows: (1) the motion is DENIED because claim 41 is not divided infringement, but rather requires the network to be configured as described; (2) the motion is GRANTED as to the '818 patent, claim 41, because the LTE standard does not have multiframe structures; (3) the motion is GRANTED as to induced infringement of the LTE standard and DENIED as to induced infringement of the GSM, GPRS, and UMTS standards because Core Wireless has demonstrated that there is a dispute of material fact as to Apple's intent to infringe; and (4) the motion as to pre-suit notice is DENIED because there is a dispute of fact of Apple's notice.

I.   **LEGAL STANDARD**

Partial summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

Case No. 15-cv-05008 NC              2

Bald assertions that genuine issues of material fact exist are insufficient. *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

The moving party bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings, and, by its own affidavits or discovery, set forth specific facts showing that a genuine issue of fact exists for trial. Fed. R. Civ. P. 56(c); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) (citing *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)). All justifiable inferences, however, must be drawn in the light most favorable to the nonmoving party. *Tolan*, 134 S. Ct. at 1863 (citing *Liberty Lobby*, 477 U.S. at 255).

## II. CORE WIRELESS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Core Wireless asks the Court to find that Apple cannot prove by clear and convincing evidence that claim 14 of the '151 patent is invalid as anticipated or obvious. Dkt. No. 260. Core Wireless argues that Apple's supporting reference, Tdoc 97A343, is not prior art because it was not available as printed publication more than one year prior to the date of the '151 patent application (the "critical date"). Dkt. No. 260-7 (Tdoc 97A343).

In order to establish that a document is prior art, Apple must show that "the invention was . . . described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b) (pre-AIA). "Whether an asserted anticipatory documents qualifies as a 'printed publication' under § 102 is a legal conclusion based on underlying factual determinations." *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1321 (Fed. Cir. 2002). A reference is publicly accessible "upon a satisfactory showing that such document has been disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it." *SRI Int'l, Inc. v. Internet Sec. Sys. Inc.*, 511 F.3d 1186, 1194

Case No. 15-cv-05008 NC                     3

(Fed. Cir. 2008).

Invalidity of a patent claim must be proven by clear and convincing evidence. *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012). Additionally, the factual predicate for Apple's invalidity assertion must be established by clear and convincing evidence. *See Checkpoint Sys., Inc. v. U.S. Int'l Trade Comm'n*, 54 F.3d 756, 761 n.5 (Fed. Cir. 1995) (concluding that the party asserting invalidity "bore the burden of establishing, by clear and convincing evidence, facts which support the ultimate legal conclusion of invalidity").

Here, the parties do not dispute that Tdoc 97A343 was disseminated and discussed at the ETSI working group meeting November 10-14, 1997.[1] However, the critical date for the '151 patent is November 10, 1997. Thus, Apple bears the burden of proving that Tdoc 97A343 was publicly available *before* the working group meeting.

The basic facts are not in dispute: (1) Tdoc 97A343 was discussed at the November 10-14, 1997, ETSI working group meeting; (2) Tdoc 97A343 is dated October 10, 1997; (3) Apple has not put forth any evidence that the date on the document refers to its public dissemination date; (4) Apple's experts, Drs. Walker and Buehrer, rely on their knowledge of ETSI's general business practice of distributing documents discussed at a meeting in advance; and (5) Apple does not have any evidence that Tdoc 97A343 specifically was disseminated outside of Nokia prior to the November 10 meeting.

In support of its argument, Core Wireless points to Dr. Walker's deposition testimony that the document "could have been" or "may have been" circulated to ETSI members prior to the meeting. *See* Dkt. No. 260-14, Walker Dep. at 35-43. Dr. Buehrer similarly stated "I don't know for a fact when it was distributed." Dkt. No. 260-17, Buehrer Dep. at 156. As to the date on the document, Dr. Walker admitted that it "may

---

[1] Tdoc 97A343 is a change request to technical specification GSM 03.64 of the GSM cellular standards. ETSI is the European Telecommunications Standards Institute, responsible for setting GSM (global system for mobile communications) standards. Among those standards are GSM, GPRS, 3GPP, and LTE, each describing a subsequent generation of telecommunications standards.

Case No. 15-cv-05008 NC                 4

have been a typo." Walker Dep. at 38.  There is no additional evidence that the document was distributed prior to the meeting.

The Court finds that this does not meet Apple's clear and convincing evidentiary burden.  To meet the clear and convincing burden, Apple must present evidence that leaves the fact finder with a firm belief or conviction that it is highly probably that the factual contentions of the defense are true.  *See* Ninth Circuit Model Jury Instruction 1.4 (citing *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)); Federal Circuit Model Instruction A.5 (clear and convincing evidence requires a juror to be "left with a clear conviction that the fact has been proven").  Without further corroboration that Tdoc 97A343 was seen by someone outside of Nokia, sent to someone outside of Nokia, or made publicly available on the ETSI website, the Court cannot conclude that a reasonable jury could find that the '151 patent is invalid as obvious or anticipated based on the Tdoc 97A343 reference.

Core Wireless' motion for partial summary judgment of no invalidity of the '151 patent is therefore GRANTED.

### III. APPLE'S MOTION FOR SUMMARY JUDGMENT

#### A.   Infringement of the '818 Patent

Apple argues that there can be no infringement of the '818 patent because the only claim at issue, claim 41, is divided infringement.  Apple argues that the Court should read the method claim to contain seven distinct steps, of which the mobile device would perform the first three steps, while the network performs the remaining steps.  Apple argues that this interpretation is correct because (1) Core Wireless' expert agrees that claim 41 requires acts of both the mobile device and the network; (2) the prosecution history supports the interpretation; (3) the inventors agree; and (4) the case law demonstrates that a method claim does not need a gerund to identify a step.  Core Wireless responds that the grammar, indentation, and expert testimony support the interpretation that there are only three steps, but seven limitations in claim 18.  Core Wireless argues that the language specifying the network requirements simply describe the "environment" in which the steps are performed.

Case No. 15-cv-05008 NC 5

"A method patent claims a number of steps . . . the patent is not infringed unless all the steps are carried out." *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014). "Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015).

Here, the parties agree that Apple's accused products do not perform the radio network components of the claim. Thus, if Apple's interpretation of the claim is correct, then Apple cannot infringe the claim. The Court finds that it must construe the claim before assessing whether summary judgment is appropriate.

Claim 41 states:

> 41. A method comprising:
> storing an operator identifier and/or a core network element identifier;
> inserting the core network element identifier to a connection initiating message for establishing a connection; and
> sending said connection initiating message comprising the core network element identifier to a radio network controller, the radio network controller configured to select a core network element from a sub-list of core network elements selected from core network elements stored on a list to connect to a user equipment, the core network elements in the sub-list serving a particular routing area where the user equipment is currently located, the core network elements in the sub-list selected based on one or more of: an area identifier associated with the particular routing area where the user equipment is located and the core network element identifier;
> wherein the core network elements stores on the list serve a plurality of different routing areas, wherein each of the core network elements stored on the list serves one of the plurality of different routing areas.

Apple argues that claim 41 should be read as follows:

> 41. A method comprising:
>
> 41A. storing an operator identifier and/or a core network element identifier;
>
> 41B. inserting the core network element identifier to a connection initiating message for establishing a connection; and

Case No. 15-cv-05008 NC                6

> 41C. sending said connection initiating message comprising the core network element identifier to a radio network controller,
>
> 41D. the radio network controller configured to select a core network element from a sub-list of core network elements selected from core network elements stored on a list to connect to a user equipment,
>
> 41E. the core network elements in the sub-list serving a particular routing area where the user equipment is currently located,
>
> 41F. the core network elements in the sub-list selected based on one or more of: an area identifier associated with the particular routing area where the user equipment is located and the core network element identifier;
>
> 41G. wherein the core network elements stores on the list serve a plurality of different routing areas, wherein each of the core network elements stored on the list serves one of the plurality of different routing areas.

This breakdown of the claim was first proposed by Core Wireless' expert for ease of communicating about the claim. Apple now adopts this breakdown and argues that each sub-part is a step of the claim.

Both parties agree that the language identified as 41D shifts the focus of the entity performing the requirements from the mobile device to the radio network controller. However, under Apple's proposed interpretation, the claim requires the cellular network to currently perform the described elements (marked 41D through 41G), impermissibly requiring more than one entity to work together to infringe the claim. Under Core Wireless' interpretation, the cellular network has already performed the described elements, such that the network controller is configured to create a pre-existing environment in which the steps are only performed by the mobile device.

"To construe a claim term, the trial court must determine the meaning of any disputed words from the perspective of one of ordinary skill in the pertinent art at the time of filing." *Chamberlain Group, Inc. v. Lear Corp.*, 516 F.3d 1331, 1335 (Fed. Cir. 2008). "Intrinsic evidence, that is the claims, written description, and the prosecution history of the patent, is a more reliable guide to the meaning of a claim term than are extrinsic

sources like technical dictionaries, treatises, and expert testimony." *Id.* (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005)).  Thus, the Court addresses (1) the claim; (2) the specification; (3) the prosecution history; and (4) expert testimony.

First, the Court finds that the claim's grammar and indentation support Core Wireless' argument that 41D-41G describe an environment and not separate steps.  The three steps identified by Core Wireless (41A-41C) each start on a separate line with a gerund, a verb that acts as a noun, demonstrating how the method should be performed (by storing, inserting, and sending).  On the other hand, 41D-41G are contained within the indentation for 41C and do not begin with a gerund.  41D appears to describe the environment in which the method described in 41C is practiced.  *See Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1374 (Fed. Cir. 2008) ("Method claim preambles often recite the physical structures of a system in which the claimed method is practiced.").

Second, the specification describes many types of environments and configurations for the invention.  The abstract states: "The invention proposed a system and method of providing a connection in a communication network which comprises several network elements and is adapted to route a connection via a first network element such as a radio network controller and one or more of alternatively selectable second network elements such as serving notes."  From this information, the Court observes that the invention is focused on the connection, and the patent seeks to protect the method of connection between various types of networks.

Third, prosecution history "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be."  *Phillips*, 415 F.3d at 1317.  Here, the prosecution history supports Apple's position that the claim was only allowed as not anticipated because of the addition of language that describes how the core network elements should be configured.  Dkt. No. 261-5 (prosecution history).  Core Wireless' expert, Dr. Mahon, agreed with this

conclusion in his deposition. Dkt. No. 261-4, Mahon Depo. at 54. However, the prosecution history does not reveal whether the patent office interpreted the claim to require the core network to perform any steps.

Fourth, Dr. Mahon testified that to assess infringement of claim 41, he evaluated whether the radio network controller is configured per the limitations of the claim. Dkt. No. 261-4, Mahon Depo. at 15-17. Dr. Mahon testified that the disputed language "applies to configuration requirements for the radio network controller." *Id.* at 45. Dr. Mahon does not concede that the radio network controller must perform any steps under claim 41.

Considering all of the intrinsic and extrinsic evidence, the Court concludes that claim 41 is not a case of divided infringement. Instead, claim 41 describes a method which requires the mobile phone to perform the steps listed and the existence of the cellular network configured as the claim describes. The cellular network does not need to perform any steps; however, its existence, configured as described in 41D-41G, is a prerequisite for performance of step 41C.

As the Court construes the claim against Apple's interpretation, the Court also finds that summary judgment of non-infringement must be DENIED as to the '818 patent.

### B.    Infringement of the '151 Patent

Apple moves for summary judgment of no infringement on the '151 patent as to the LTE standard only. Claim 14 is the only remaining claim. Apple argues that the claim requires a multiframe structure, but that none is present in the LTE standard.

Claim 14 states:
> 14. A mobile station for use in a radio telephone network, the radio telephone network comprising a base station subsystem and a plurality of mobile stations for communicating with the base station subsystem and in which radio signal transmission slots at a mobile station are synchronized to radio signal reception slots at the base station subsystem to account for a propagation delay between the mobile station and the base station subsystem, the reception slots corresponding to uplink and/or downlink user data packet switched transmission channels allocated dynamically by the base station subsystem, the mobile station being configured to:
> receive a timing advance value once, from the base station subsystem to the mobile station, and to;

Case No. 15-cv-05008 NC                         9

> advance transmission slots at the mobile station for both the uplink and downlink channels using the received timing advance value so that transmitted data is received at the base station subsystem in the allocated base station subsystem reception slots.

The Court previously construed "receive a timing advance value once" to mean "receive a timing advance value one time for a multiframe structure." Dkt. No. 222 at 15. When the parties asked for construction, the ambiguity to be addressed was that the claim does not specify a time period for the TAV to be updated once. *Id.* The Court adopted Apple's proposed construction because the patent's abstract and specification teach that the TAV must be updated once every 8 multiframes. *Id.* at 16.

To prove infringement, Core Wireless bears the burden of proof to show the presence of every element or its equivalent in the accused device. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011); 35 U.S.C. § 271. Apple argues that Core Wireless cannot do this as to the LTE standard because the '151 patent is focused on the GPRS standard, which has multiframes, while the LTE standard does not. Core Wireless has not argued that the doctrine of equivalents applies, and Apple notes that Core Wireless did not timely disclose an equivalents theory. Dkt. No. 261 at n.4.

Core Wireless responds that although its expert, Dr. Richard D. Wesel, concedes that the LTE standard does not use the word multiframe, the LTE standard still uses the concept of a multiframe structure. Dkt. No. 262-3, Wesel Expert Rep. at ¶ 233.

However, when Dr. Wesel was asked at his deposition whether "anyone anywhere any time has ever used that definition of multiframe structure aside from you in this case," Dr. Wesel responded "No." Dkt. No. 262-3, Wesel Depo. at 165. Core Wireless argues that this simply shows that people use different words when describing LTE. However, the Court previously rejected Core Wireless' vague interpretation of the timing parameters for the timing advance value and concluded that the claim requires the measurement of a multiframe structure. Dkt. No. 222 at 15-16.

There appears to be no dispute of fact that, when applying the Court's claim construction, the LTE standard does not use a multiframe structure. Thus, claim 14 of the

'151 patent cannot be infringed by the LTE standard. The Court GRANTS Apple's motion for summary judgment of non-infringement of claim 14 for the LTE standard.

### C. Induced Infringement

Apple next argues that Core Wireless can put forth no evidence to support its claim of induced infringement as to all the patents-in-suit. "Inducement requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009); 35 U.S.C. § 271(b). Apple argues that (1) Core Wireless cannot prove direct infringement; (2) Core Wireless has no facts to demonstrate that Apple had specific intent to induce infringement; and (3) Core Wireless cannot show pre-suit knowledge of the patents.

First, "direct infringement can be proven by circumstantial evidence." *Vita-Mix*, 581 F.3d at 1326. Additionally, a defendant can be held liable for inducement of infringement if its customers directly infringe. *Id.* (citing *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 673 (Fed. Cir. 1990)). Core Wireless asserts that this is their theory of direct infringement.

As to the second and third arguments, Core Wireless must demonstrate that Apple had the specific intent to cause infringement. *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006). However, "[i]nducement can be found where there is evidence of active steps taken to encourage direct infringement, which can in turn be found in advertising an infringing use or instructing how to engage in an infringing use." *Takeda Pharm. U.S.A., Inc. v. W.-Ward Pharm. Corp.*, 785 F.3d 625, 630-31 (Fed. Cir. 2015). Core Wireless has put forth evidence that Apple was given a list of patents in September 2009 that Nokia believed Apple devices infringed. Dkt. No. 262-2. Apple did not license the patent-in-suit. The Court finds that drawing all inferences in favor of Core Wireless, there is a dispute of material fact as to Apple's intent and pre-suit knowledge.

Apple argues that Nokia's extensive list of patents in this 2009 exchange was not sufficient as a matter of law to put Apple on notice of the patents. In support of this

argument, Apple cites *Cascades Computer Innov., LLC v. Samsung Elecs. Co.*, 77 F. Supp. 3d 756, 766-67 (N.D. Ill. 2015). In *Cascades Computer*, the patent holder sent the accused infringer a list of 39 patents, but stated in the demand letter that it wanted to draw the accused infringer's attention to just five of the 39 patents. 77 F. Supp. 3d at 766-67. The patent-in-suit was not one of the five, so the Court concluded that the list was insufficient notice. *Id.* Here, Core Wireless has put forth evidence that Nokia told Apple *all* the patents in the list provided were relevant, and that Nokia offered a license covering all patents.

However, Apple correctly notes that Nokia's 2009 notice letter only referred to the GSM, GPRS, and UMTS standards. Dkt. No. 280 at 10. Core Wireless has not shown that it gave Apple notice that the patents-in-suit apply to the LTE standard. Thus, the Court finds that there is a dispute of fact as to Apple's notice and intent for the GSM, GPRS, and UMTS standards as early as September 2009. However, there is no dispute of fact that Nokia and Core Wireless did not put Apple on notice of infringement as to the LTE standards until this lawsuit on September 10, 2014. Thus, the Court GRANTS Apple's motion for summary judgment on induced infringement as to the LTE standards up until September 10, 2014.

### D. Pre-Suit Damages

Apple argues that Core Wireless cannot recover pre-suit damages because its predecessor, Nokia, made and offered to sell its own invention. Additionally, Apple argues that Nokia did not give Apple notice of infringement.

To recover pre-suit damages, a patentee that makes or offers to sell its own invention must either (1) mark the patented article with the pertinent patent numbers, or (2) give actual notice to an alleged infringer of its supposed infringement. 35 U.S.C. § 287(a). The purpose of section 287(a) is "to encourage the patentee to give notice to the public of the patent." 35 U.S.C. § 287(a); *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 185 (Fed. Cir. 1994). "The correct approach to determining notice under Section 287 must focus on the action of the patentee, not the knowledge or understanding of the

infringer." *Id.* at 187. Additionally, "[t]he law is clear that the notice provisions of § 287 do not apply where the patent is directed to a process or method." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1316 (Fed. Cir. 2009).

Apple argues that Nokia did not mark its own products, and that publicly-accessible Nokia manuals indicate that its cell phones were compliant with GSM, LTE, and UMTS/WCDMA standards. Dkt. No. 260 at Exhs. 15-23. Core Wireless objects to these documents as late disclosed and hearsay. The Court finds that it does not need to reach this evidentiary issue because section 287(a) requires marking *or* notice to the alleged infringer. Because section 287(a) focuses on the action of the patentee in providing notice, the Court interprets this to be a lower standard than the specific intent required to prove induced infringement under section 271(b).

As noted above, the Court finds that there is a dispute of fact as to Apple's notice of the patents-in-suit. Apple's motion for partial summary judgment on pre-suit damages is therefore DENIED.

## IV. CONCLUSION

In summary:

1. The Court GRANTS Core Wireless' motion that the '151 patent is not invalid as anticipated or obvious.
2. Core Wireless dropped its claim for enhanced damages under 35 U.S.C. § 284, so Apple's motion for summary judgment on this theory is moot.
3. Apple's motion of non-infringement of claim 41 of the '151 patent is DENIED.
4. Apple's motion of non-infringement of claim 14 of the '818 patent as to the LTE standard is GRANTED.
5. Apple's motion of no induced infringement pre-suit is GRANTED as to the LTE standard, and the motion is DENIED as to the GSM, GPRS, and UMTS standards.
6. Apple's motion of no pre-suit damages is DENIED.

**IT IS SO ORDERED.**

Dated: October 31, 2016

_____
NATHANAEL M. COUSINS
United States Magistrate Judge