UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORE WIRELESS LICENSING S.A.R.L., | Case No. 15-cv-05008 NC |
| Plaintiff, | |
| v. | **[ANNOTATED] FINAL JURY INSTRUCTIONS** |
| APPLE INC., | |
| Defendant. | |

## I.    Introduction

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you as to the law of the case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Case No. 15-cv-05008 NC

1   In following my instructions, you must follow all of them and not single out some

2   and ignore others; they are all important.

3   **II.   Burden of Proof**

4   There are two standards of proof that you will apply to the evidence, depending on

5   the issue you are deciding.  When a party has the burden of proving any claim by a

6   preponderance of the evidence, it means you must be persuaded by the evidence that the

7   claim is more probably true than not.  When a party has the burden of proving any claim or

8   defense by clear and convincing evidence, it means that you must be persuaded by the

9   evidence that it is highly probable that the claim or defense is true.  This is a higher

10  standard of proof than proof by a preponderance of the evidence, but it does not require

11  proof beyond a reasonable doubt.

12  You should base your decision on all of the evidence, regardless of which party

13  presented it.

14  **III.  Evidence**

15  **A.    Evidence You May Consider**

16  The evidence you are to consider in deciding what the facts are consists of:

17  (1) the sworn testimony of any witness;

18  (2) the exhibits which are received into evidence; and

19  (3) any facts to which the lawyers have agreed.

20  In reaching your verdict, you may consider only the testimony, exhibits, and

21  stipulations of fact received into evidence.

22  **B.    Things You May Not Consider**

23  Certain things are not evidence, and you may not consider them in deciding what

24  the facts are.  I will list them for you:

25  (1) Arguments and statements by lawyers are not evidence.  The lawyers are not

26  witnesses.  What they say in their opening statements, closing arguments, and at other

27  times is intended to help you interpret the evidence, but it is not evidence.  If the facts as

28  you remember them differ from the way the lawyers have stated them, your memory of

United States District Court
Northern District of California

them controls.

(2) Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

## C.   Taking Notes

You may have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

## D.   Stipulations of Fact

The parties have agreed to certain facts that have provided for you.  You should therefore treat these facts as having been proved.

## E.   Charts and Summaries Not Received in Evidence

Certain charts and summaries not received in evidence may be shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  You may hear these charts and summaries referred to as "demonstratives" or "demonstrative evidence."  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

## F.   Charts and Summaries in Evidence

Certain charts and summaries may be received into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the

United States District Court
Northern District of California

underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

### G.    Types of Evidence

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  For example, direct evidence that it was raining would be a photo showing that it was raining on a given day.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  For example, circumstantial evidence that it was raining would be testimony of a witness who said they believed it was raining, not because they saw the rain, but because they saw a person entering the building with a wet umbrella.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give, if any, to any evidence.

### H.    Use of Interrogatories of a Party

Evidence may be presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers were given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures.  You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

### I.    Use of Request for Admission of a Party

Before trial, each party has the right to ask another party to admit in writing that certain facts are true.  If the other party admits those facts, you must accept them as true and conclusively proved in this case.

### J.    Evidence for a Limited Purpose

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

### K.    Use of Physical Evidence During Deliberations

Certain physical exhibits have been admitted for demonstrative purposes so that you can better understand and appreciate the products that are at issue in this case.  You may hold and view the physical exhibits.  However, you must not alter or modify the physical exhibits in any way, and you must not attempt to put them into operation, or perform any testing or analysis on them to test, prove, or disprove any theory or principle that was discussed at trial.

[**Note:** This instruction will be removed if no physical exhibits are admitted.]

### L.    The Court's Ruling on Objections

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overruled the objection, the question was answered or the exhibit received.  If I sustained the objection, the question was not answered, and the exhibit was not received.  Whenever I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been or what the document might have said.  My rulings are not intended to influence your decision.  Your decisions must be based entirely on the testimony and documents received into evidence.

Sometimes I may have ordered that evidence be stricken from the record and that you disregard or ignore the evidence.  That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

### M.    Bench Conferences and Recesses

From time to time during the trial, it may have been necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury was present in the courtroom, or by calling a recess.  The purpose of these conferences was not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

I may not have always granted an attorney's request for a conference.  Do not

United States District Court
Northern District of California

consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

## IV. Witnesses

### A. Evaluation of Witness Testimony

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

### B. Impeachment Evidence

The evidence that a witness lied under oath or gave different or inconsistent testimony on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much, if any, weight to give to that witness's testimony.

### C. Expert Witnesses

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's

United States District Court
Northern District of California

1  education and experience, the reasons given for the opinion, and all the other evidence in

2  the case.

3  **D.   Deposition Testimony**

4  A deposition is the sworn testimony of a witness taken before trial.  The witness is

5  placed under oath to tell the truth and lawyers for each party may ask questions.  The

6  questions and answers are recorded by written transcript and sometimes video recording.

7  When a person is unavailable to testify at trial, the deposition of that person may be used at

8  the trial.

9  You should consider deposition testimony, presented to you in court in lieu of live

10  testimony, in the same way as if the witness had been present to testify.

11  If testimony was read, rather than played back from a recording, do not place any

12  significance on the behavior or tone of voice of any person reading the questions or

13  answers.

14  You will be hearing or viewing only a portion, or series of portions, of the

15  depositions taken by the parties in this case.  Do not make any inferences about the fact

16  that you are not hearing or seeing the deposition in its entirety or that what you are hearing

17  or viewing has been edited.

18  **V.   Summary of Contentions**

19  I will first give you a summary of each side's contentions in this case.  I will then

20  tell you what  each side must prove to win on each of its contentions.

21  In this case, Core Wireless asserts United States Patent Numbers 6,633,536 and

22  6,477,151.  As the parties and I have been doing throughout this trial, in these final

23  instructions I will refer to these patents as the '536 and '151 patents.

24  Core Wireless asserts the following claims from the '536 and '151 patents, which I

25  will refer to as "the asserted claims":

26  Claim 19 of the '536 patent; and

27  Claim 14 of the '151 patent.

28  As I previously told you, Core Wireless seeks money damages from Apple for

allegedly infringing the asserted claims by making, using, selling, and offering for sale products that Core Wireless argues are covered by the asserted claims.  The products that are alleged to infringe are the 3G, 3GS, 4, 4S, 5, 5S, 5C, 6, 6 Plus, 6S, 6S Plus, and SE models of Apple's iPhone and the iPad, iPad3, iPad 4, iPad Mini, iPad Air, iPad Air 2, and iPad Pro models of Apple's iPad products.

For each asserted patent, Apple denies that it has infringed the asserted claim of the patent and argues that, in addition, the asserted claim is invalid.

Your job is to decide whether the asserted claims have been infringed and whether any of the asserted claims are invalid.  If you decide that any claim of either patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Core Wireless to compensate it for the infringement.

## VI.  Interpretation of Claims

Before you decide whether Apple has infringed the claims of the '536 or '151 patents or whether the claims are invalid, you will need to understand the patent claims. As I mentioned, the patent claims are numbered sentences at the end of the patent that describes the boundaries of the patent's protection.  It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case.  You must accept those interpretations as correct.  My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity.  The decisions regarding infringement and invalidity are yours to make.

You should apply the following constructions to the claims of the '151 patent:

- The term "receive a timing advance value once" means "receive a timing advance value one time for a multiframe structure."
- The term "for both the uplink and downlink channels" means "for transmissions in the uplink direction on both the uplink and downlink channels."

You should apply the following constructions to the claims of the '536 patent:

- The term "good state" means "state flagging that the frame contains error- free user information."
- The term "bad state" means "state flagging that the frame does not contain error-free user information."
- The term "bit pattern" means "sequence of bits conveying a signaling message not delineated by a code word."

For claim language where I have not provided you with any meaning, the claim language's plain and ordinary meaning to a person of ordinary skill in the art at the time of the invention applies.

## VII. Infringement

I will now instruct you on the rules you must follow in deciding whether Core Wireless has proven that Apple has infringed one or more of the asserted claims.

### A.     Burden of Proof

To prove infringement of any claim, Core Wireless must persuade you that it is more  likely than not that Apple has infringed that claim.

### B.     Direct Infringement

A patent claim defines what is covered by the patent. A product or method directly infringes a  patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process. The first step is to  decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to  the meaning of the asserted patent claims. The second step is to decide whether Apple has made, used, sold, or offered for sale within the United States a  product covered by one of the asserted claims, or performed within the United States a method covered by one of the asserted claims. If it has, it infringes. You, the jury,  make this decision.

You must consider each of the asserted claims of the patents individually,  and decide whether Apple infringes that claim.

Whether or not Apple knew its product infringed or even knew of the patent does not matter in determining direct infringement.

## C.    Literal Infringement

To decide whether a direct infringer's product or method literally infringes a claim of the '536 or '151 patents, you must compare that product or method with the patent claim and determine whether every requirement of the claim is included in that product or method. If so, Apple's product or method literally infringes that claim. If, however, Apple's product or method does not have every requirement in the patent claim, Apple's product or method does not literally infringe that claim. You must decide literal infringement for each asserted claim separately.

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim. An open claim is infringed as long as every requirement in the claim is present in a direct infringer's product or method. The fact that a direct infringer's product or method also includes other parts or steps will not avoid infringement, as long as it has every requirement in the patent claim.

If Apple does not itself perform every requirement in the patent claim, Apple cannot be liable for infringement merely because other parties perform the missing elements, unless Apple directed or controlled the acts by those parties. Apple does not direct or control someone else's action merely because Apple entered into a business relationship with that person. Instead, Apple must specifically instruct or cause that other person to perform each step in an infringing manner, so that every step is attributable to Apple as controlling party.

If Apple controls and makes use of a system that contains all the requirements of the claim, Apple may be an infringer even though the parts of the system do not all operate in the same place or at the same time.

**[Note:** The Court sees no reason to deviate from the Northern District model jury instruction.**]**

United States District Court
Northern District of California

1          **D.     Means-Plus-Functions Claim**

2              I will now describe the separate rules that apply to "means-plus-function"

3    requirements that are  used  in one of the asserted claims. Claim  19 in  the '536 patent

4    contains "means-plus-function" requirements. A means-plus-function requirement only

5    covers the specific structure disclosed  in a patent specification for performing the

6    claimed function and the equivalents of the specific  structure that perform the claimed

7    function. A means-plus-function requirement does not cover  all possible structures that

8    could be used to perform the claimed function.

9              As an example, the term "means for processing data" might be understood to

10   encompass a  variety of different ways of making a calculation, including not only a

11   computer or calculator but  a pencil and paper or even the human brain. But because the

12   phrase is a means-plus-function  requirement, we interpret that phrase not to cover every

13   possible means for processing data, but  instead to cover the actual means disclosed in the

14   patent for processing data and other means that  are equivalent to it.

15             For purposes of this trial, I have interpreted each means-plus-function

16   requirement for you and  identified the structure in the patent specification that

17   corresponds to these means-plus-function  requirements.  Specifically, I have determined

18   that:

19             •    <u>Receiving Means</u>.  An antenna on a mobile phone labeled "MS" in Figure 1 and

20                  "RX" in Fig. 2 and Fig. 4, and as described in 2:7-8 and 8:43-45 of the '536

21                  specification, and statutory equivalents thereof is the structure that performs the

22                  "receiving a signal via a transmission channel in frames" function identified in

23                  the means-plus-function requirement of claim 19 for a "receiving means."

24             •    <u>Replacing Means</u>.  The "Bad parameter replacement" box 128 in Figure 4 as

25                  described in 9:20-24 of the '536 specification, and statutory equivalents thereof

26                  is the structure that performs the "replacing a bad frame at least partly with a

27                  preceding good frame" function identified in the means-plus-function

28                  requirement of claim 19 for a "replacing means."

In deciding if Core Wireless has proven that Apple's product includes structure covered by a means-plus-function requirement, you must first decide whether the product has  any structure that performs the function I just described to you. If not, the claim containing that  means-plus-function requirement is not infringed.

If you find that the Apple's accused product does have structure that performs the claimed function, you must then determine whether that structure is the same as or equivalent to  the structure I have identified in the specification. If they are the same or equivalent, the means-plus-function requirement is satisfied by that structure of the accused products. If all the other  requirements of the claim are satisfied, the accused products infringes the claim.

In order to prove that a structure in the accused products is equivalent to the structure in the '536 patent, Core Wireless must show that a person of ordinary skill in the field would have  considered that the differences between the structure described in the '536 patent and the  structure in the accused product are not substantial.  Core Wireless must also show that the structure was available on the date the '536 patent was granted.

## VIII.  Invalidity

I will now instruct you on the rules you must follow in deciding whether Apple has proven the asserted claims are invalid.

### A.    Burden of Proof

Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense.  To prove invalidity of any patent claim, Apple must persuade you that it is highly probable that the claim is invalid.

During this case, Apple has submitted prior art that was not considered by the United States Patent and Trademark Office ("PTO") during the prosecution of the patents-in-suit.  Apple contends that such prior art invalidates certain claims of the patents.  In deciding the issue of invalidity, you may take into account the fact that the prior art was not considered by the PTO when it issued the patents-in-suit.  Prior art that differs from the

United States District Court
Northern District of California

1  prior art considered by the PTO may carry more weight than the prior art that was

2  considered and may make Apple's burden of showing that it is highly probable that a

3  patent claim is invalid easier to sustain.

4      **[Note:**  The Court adopts the Northern District model patent rule.**]**

5  **B.    Anticipation**

6      A patent claim is invalid if the claimed invention is not new.  For the claim to be

7  invalid because it is not new, all of its requirements must have existed in a single device or

8  method that predates the claimed invention, or must have been described in a single

9  publication or patent that predates the claimed invention.  In patent law, these previous

10  devices, methods, publications or patents are called "prior art references."  If a patent

11  claim is not new, we say it is "anticipated" by a prior art reference.

12      The description in the written reference does not have to be in the same words as

13  the claim, but all of the requirements of the claim must be there, either stated or necessarily

14  implied, so that someone of ordinary skill in the field of the invention looking at that one

15  reference would be able to make and use the claimed invention.

16      Here is a list of the ways that Apple can show that a patent claim was not new:

17      – if the claimed invention was already publicly known or publicly used by others

18  in the  United States before the conception date of the asserted claims

19      – if the claimed invention was already patented or described in a printed

20  publication  anywhere in the world before the conception date of the asserted claims. A

21  reference is a  "printed publication" if it is accessible to those interested in the field, even if

22  it is difficult  to find;

23      – if the claimed invention was already made by someone else in the United States

24  before the conception date of the asserted claims, if that other person had not abandoned

25  the  invention or kept it secret; or

26      – if the claimed invention was already described in another issued U.S. patent or

27  published U.S. patent application that was based on a patent application filed before

28  the conception date of the asserted claims.

*United States District Court*
*Northern District of California*

1   Since it is in dispute, you must determine a date of conception for the asserted

2   claims. Conception is the mental part of an inventive act and is proven when  the

3   invention is shown in its complete form by drawings, disclosure to another or other forms

4   of  evidence presented at trial.

5   **[Note:** For purposes of this draft, the Court has included all of Apple's theories.

6   However, the Court will discuss in court Core Wireless' objection that Apple failed to

7   disclose some of these theories and revise the instructions as necessary.]

8   **C.    Statutory Bars**

9   A patent claim is invalid if the patent application was not filed within the time

10  required by law.  This is called a "statutory bar." For a patent claim to be  invalid by a

11  statutory bar, all of its  requirements must have been present in one prior art reference

12  dated more than one year before  the patent application was filed. Here is a list of ways

13  Apple can show that the  patent application was not timely filed:

14  – if the claimed invention was already patented or described in a printed

15  publication  anywhere in the world before the date that is one year before effective filing

16  date of  patent application. A reference is a "printed publication" if it is accessible to

17  those  interested in the field, even if it is difficult to find.

18  For a claim to be invalid because of a statutory bar, all of the claimed

19  requirements must have  been either (1) disclosed in a single prior art reference, (2)

20  implicitly disclosed in a reference to  one skilled in the field, or (3) must have been

21  present in the reference, whether or not that was  understood at the time. The disclosure

22  in a reference does not have to be in the same words as  the claim, but all the

23  requirements must be there, either described in enough detail or necessarily  implied,  to

24  enable  someone  of ordinary  skill in the  field of cellular communications looking  at the

25  reference to make and use the claimed invention.

26  **D.    Obviousness**

27  Not all innovations are patentable.  A patent claim is invalid if the claimed

28  invention would have been obvious to a person of ordinary skill in the field as of the date

United States District Court
Northern District of California

the inventors of the asserted patents conceived their inventions.  This means that even if all of the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the field of the invention who knew about all this prior art would have come up with the claimed invention.

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions.  First, you must decide the level of ordinary skill in the field that someone would have had as of the effective filing date of the claimed invention.  Second, you must decide the scope and content of the prior art.  Core Wireless and Apple disagree as to whether certain prior art references should be included in the prior  art you use to decide the validity of the asserted claims.

### 1.   Level of Ordinary Skill in the Art

In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

- the levels of education and experience of persons working in the field;
- the types of problems encountered in the field; and
- the sophistication of the technology.

Core Wireless contends that the level of ordinary skill in the field of both the patents would be [**Note:** insert Core Wireless' assertion].  Second, you must decide the scope and content of the prior art.  Apple contends that the level of ordinary skill in the field of both patents would be [**Note:** insert Apple's assertion].

### 2.   Scope and Content of the Prior Art

Second, you must decide the scope and content of the prior art.  In order to be considered as prior art patent, these references must be reasonably related to the claimed invention of that patent.  A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.

United States District Court
Northern District of California

### 3.   Difference Between Claimed Invention and Prior Art

Third, you must decide what differences, if any, existed between the claimed invention and the prior art.

### 4.   Secondary Considerations

Finally, you should consider any of the following factors that you find have been shown by the evidence:

1.   commercial success of a product due to the merits of the claimed invention;

2.   a long felt need for the solution provided by the claimed invention;

3.   unsuccessful attempts by others to find the solution provided by the claimed invention;

4.   copying of the claimed invention by others;

5.   unexpected and superior results from the claimed invention;

6.   acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention;

7.   other evidence tending to show nonobviousness;

8.   independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and

9.   other evidence tending to show obviousness.

The presence of any of these factors may be considered by you as an indication that the claimed invention would not have been obvious as of the date the inventors of the asserted patents conceived their inventions, and the presence of these factors may be considered by you as an indication that the claimed invention would have been obvious at such time. Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

### 5.   Obviousness Guidance

A patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art. In

United States District Court
Northern District of California

1   evaluating whether such a claim would have been obvious, you may consider whether

2   Core Wireless has identified a reason that would have prompted a person of ordinary skill

3   in the field to combine the elements or concepts from the prior art in the same way as in

4   the claimed invention.  There is no single way to define the line between true inventiveness

5   on the one hand (which is patentable) and the application of common sense and ordinary

6   skill to solve a problem on the other hand (which is not patentable).

7       For example, market forces or other design incentives may be what produced a

8   change, rather than true inventiveness.  You may consider whether the change was merely

9   the predictable result of using prior art elements according to their known functions, or

10  whether it was the result of true inventiveness.  You may also consider whether there is

11  some teaching or suggestion in the prior art to make the modification or combination of

12  elements claimed in the patent. Also, you may consider whether the innovation applies a

13  known technique that had been used to improve a similar device or method in a similar

14  way.  You may also consider whether the claimed invention would have been obvious to

15  try, meaning that the claimed innovation was one of a relatively small number of possible

16  approaches to the problem with a reasonable expectation of success by those skilled in the

17  art.

18      However, you must be careful not to determine obviousness using the benefit of

19  hindsight; many true inventions might seem obvious after the fact.  You should put

20  yourself in the position of a person of ordinary skill in the field as of the effective filing

21  date of the claimed inventions and you should not consider what is known today or what is

22  learned from the teaching of the patent.

23      **[Note:** The Court adopts the parties' instruction, but has broken it up into sub-parts

24  for ease of reading and clarity.**]**

25

26

27

28

United States District Court
Northern District of California

**IX.  Damages**

   **A.    Burden of Proof**

   I will instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win on any issue.  If you find that Apple infringed any valid claim of the asserted patents, you must then determine the amount of money damages to be  awarded to Core Wireless to compensate it for the infringement.

   The amount of those damages must be adequate to compensate Core Wireless for the infringement.  A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

   Core Wireless has the burden to persuade you of the amount of its damages.  You should award only those damages that Core Wireless more likely than not suffered.  While Core Wireless is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  Core Wireless is not entitled to damages that are remote or speculative.

   **B.    Reasonable Royalty Entitlement**

   Core Wireless seeks a reasonable royalty in the form of a one-time lump sum for all past and future infringement of its patents.  If you find that Core Wireless has established induced infringement, Core Wireless is entitled to at least a reasonable royalty to compensate it for that infringement.

   **C.    Reasonable Royalty- Definition**

   A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the  claimed invention. This right is called a "license." A reasonable royalty is the payment for the  license that would have resulted from a hypothetical negotiation between the patent holder and  the infringer taking place at the time when the infringing activity first began. In considering the  nature of this negotiation, you must assume that

the patent holder and the infringer would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case for the life of the patent.

### 1. Ongoing Royalty

One way to calculate a royalty is to determine what is called an "ongoing royalty." To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the infringer is to pay. You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation. For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200. If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of 0.01 times the base revenue of $200. By contrast, if you find the rate to be 5%, the royalty would be $10, or the rate of 0.05 times the base revenue of $200. These numbers are only examples, and are not intended to suggest the appropriate royalty rate.

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component. For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5.

### 2. Fixed Royalty

Instead of a percentage royalty, you may decide that the appropriate royalty that would have resulted from a hypothetical negotiation is a fixed number of dollars per unit sold. If you do, the royalty would be that fixed number of dollars times the number of

United States District Court
Northern District of California

units sold.

In this case, the parties have introduced evidence of licenses.  The royalty rate in one or more of those licenses may be considered  if it helps to establish the value that is attributable to the patented invention as distinct from the  value of other features of Apple's product.

The ultimate combination of royalty base and royalty rate must reflect the value attributable to  the infringing features of the product, and no more.  When the accused infringing products have  both patented and unpatented features, measuring this value requires you to identify and award  only the value of the patented features.

### 3.  Lump Sum Royalty

Another way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all  sales of the licensed product, both past and future. This differs from payment of an ongoing  royalty because, with an ongoing royalty, the licensee pays based on the volume of actual  licensed products it sells. When a one-time lump sum is paid, the infringer pays a single price  for a license covering both past and future infringing sales.

### D.  Reasonable Royalty - Relevant Factors

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

1.  The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2.  The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

3.  The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5. The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

7. The duration of the patent and the term of the license.

8. The established profitability of the product made under the patents, its commercial success, and its current popularity.

9. The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion and testimony of qualified experts.

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

**[Note:** The Court has added this instruction for consistency with the case law.  The Court will consider the parties' objections to its inclusion.  This instruction is based Federal Circuit Model Rule 6.7.]

### E.    Reasonable Royalty – Commitment to License on Reasonable and Nondiscriminatory Terms

In this case, by participating in a standard-setting organization, both Nokia (the prior owner of the patents) and Core Wireless promised to license its patents to all willing licensees on reasonable and nondiscriminatory terms.  Nokia and Core Wireless' promise to ETSI covering the patents-in-suit reads: "To the extent that the IPRs [intellectual property rights] disclosed in the attached IPR Information Statement Annex are or become,

1   and remain ESSENTIAL in respect of the ETSI Work Item, STANDARD and/or

2   TECHNICAL SPECIFICATION identified in the attached IPR Information Statement

3   Annex, [Core Wireless] and/or its AFFILIATES are (1) prepared to grant licenses under

4   these IPRs on terms and conditions which are in accordance with Clause 6.1 of the ETSI

5   IPR Policy (20 March 2013); and (2) will comply with Clause 6.1 of the ETSI IPR Policy."

6          You must take that promise into account in determining the reasonable royalty.

7          When a technology is incorporated into an industry standard, it is typically chosen

8   from among different options.  Once a standard is adopted, the technology is not

9   necessarily used by other companies because it is the best option; the technology is used

10  because its use is necessary to comply with the standard.  The royalty you award should

11  reflect the value of Core Wireless' technological contribution, not the value of its

12  widespread adoption due to standardization.

13         In addition, the value of the patented feature must be apportioned from the value of

14  any unpatented features included in the standard.

15         [**Note:** The Court adopts the Northern District instruction, and adds Core Wireless'

16  promise as the instruction suggests.  As the testimony develops, the Court will consider

17  modification of this instruction.]

18  **F.    Date of Commencement of Damages**

19         [**Note:** The Court defers deciding which parties' proposed instruction to give at this

20  time.**]**

21  **X.    Conduct of the Jury During Deliberations**

22  **A.    Use of Electronic Technology To Conduct Research on or Communicate
           About A Case**

23         During your deliberations, you must not communicate with or provide any

24  information to anyone by any means about this case.  You may not use any electronic

25  device or media, such as the telephone, a cell phone, smart phone, iPhone, Blackberry or

26  computer, the Internet, any Internet service, any text or instant messaging service, any

27  Internet chat room, blog, or website such as Facebook, MySpace, LinkedIn, YouTube or

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Twitter, to communicate to anyone any information about this case or to conduct any

2  research about this case until I accept your verdict. In other words, you cannot talk to

3  anyone on the phone, correspond with anyone, or electronically communicate with anyone

4  about this case.  You can only discuss the case in the jury room with your fellow jurors

5  during deliberations.  I expect you will inform me as soon as you become aware of another

6  juror's violation of these instructions.

7      You may not use these electronic means to investigate or communicate about the

8  case because it is important that you decide this case based solely on the evidence

9  presented in this courtroom.  Information on the internet or available through social media

10 might be wrong, incomplete, or inaccurate.  You are only permitted to discuss the case

11 with your fellow jurors during deliberations because they have seen and heard the same

12 evidence you have.  In our judicial system, it is important that you are not influenced by

13 anything or anyone outside of this courtroom.  Otherwise, your decision may be based on

14 information known only by you and not your fellow jurors or the parties in the case.  This

15 would unfairly and adversely impact the judicial process.

16     You will be given a computer that has access only to files containing admitted

17 evidence in this case.  You should not use the computer for any other purpose.

18     **[Note:** The Court has added the last sentence under the assumption that the parties

19 will provide spreadsheets and possibly other evidence to the jurors on a computer.  The

20 parties must specifically request this computer at the start of trial to ensure the appropriate

21 technical assistance is available.**]**

22 ## B.    Duty To Deliberate

23     When you begin your deliberations, you should elect one member of the jury as

24 your presiding juror.  That person will preside over the deliberations and speak for you

25 here in court.

26     You will then discuss the case with your fellow jurors to reach agreement if you can

27 do so.  Your verdict must be unanimous.

28     Each of you must decide the case for yourself, but you should do so only after you

United States District Court
Northern District of California

1  have considered all of the evidence, discussed it fully with the other jurors, and listened to

2  the views of your fellow jurors.

3        Do not hesitate to change your opinion if the discussion persuades you that you

4  should.  Do not come to a decision simply because other jurors think it is right.

5        It is important that you attempt to reach a unanimous verdict but, of course, only if

6  each of you can do so after having made your own conscientious decision.  Do not change

7  an honest belief about the weight and effect of the evidence simply to reach a verdict.

8      **C.**    **Conduct of the Jury**

9        Because you must base your verdict only on the evidence received in the case and

10  on these instructions, I remind you that you must not be exposed to any other information

11  about the case or to the issues it involves.  Except for discussing the case with your fellow

12  jurors during your deliberations:

13        Do not communicate with anyone in any way and do not let anyone else

14  communicate with you in any way about the merits of the case or anything to do with it.

15  This includes discussing the case (including the parties, evidence, witnesses or the

16  lawyers) in person, in writing, by phone or electronic means, via email, text messaging,

17  social media or any Internet chat room, blog, website or other feature.  This applies to

18  communicating with your family members, your employer, the media or press, and the

19  people involved in the trial.  If you are asked or approached in any way about your jury

20  service or anything about this case, you must respond that you have been ordered not to

21  discuss the matter and to report the contact to the court.

22        Do not read, watch, or listen to any news or media accounts or commentary about

23  the case or anything to do with it (including the parties, evidence, witnesses or the

24  lawyers); do not do any research, such as consulting dictionaries, searching the Internet or

25  using other reference materials; and do not make any investigation or in any other way try

26  to learn about the case on your own.

27        The law requires these restrictions to ensure the parties have a fair trial based on the

28  same evidence that each party has had an opportunity to address.  A juror who violates

these restrictions jeopardizes the fairness of these proceedings.  If any juror is exposed to any outside information, please notify the court immediately.

### D.   Communication with the Court

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Courtroom Deputy, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time. You are not to conclude from any time delays that the question is difficult to answer and you are not to speculate that the time delay gives any indication as to what the answer is. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

### E.   Return of Verdict

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

**IT IS SO ORDERED.**

Dated:  December 4, 2016

_____
NATHANAEL M. COUSINS
United States Magistrate Judge