UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORE WIRELESS LICENSING S.A.R.L., <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Case No. 15-cv-05008 NC <br><br> **APPENDIX TO PRELIMINARY JURY INSTRUCTIONS** |

The following documents accompany the preliminary jury instructions.

Case No. 15-cv-05008 NC

# APPENDIX A: STIPULATIONS OF FACT

The following facts are agreed to by the parties:

1. Core Wireless Licensing S.A.R.L. is a Luxembourg entity, wholly owned by Conversant Intellectual Property Management (Conversant). Conversant is based in Ottawa, Canada.

2. Apple is a company based in Cupertino, California.

3. The '151 patent, which is titled "Packet Radio Telephone Services," issued on November 5, 2002.

4. The U.S. patent application that led to the '151 patent was filed November 10, 1998. The foreign applications that led to the '151 patent were filed on November 11, 1997 and November 22, 1997.

5. The named inventor of the '151 patent is Jarkko Oksala

6. Core Wireless is asserting claim 14 of the '151 patent.

7. The products accused of infringing the '151 patent are Apple's iPhone 4S, 5, 5S, 5C, 6, 6 Plus, models and Apple's iPad 3, iPad with Retina display, iPad4, iPad Mini, iPad Mini Retina 2, iPad Mini 3, iPad Mini 4, iPad Air, iPad Air 2, models.

8. The '536 patent, titled "Signaling in a Digital Mobile Communications System," issued on October 14, 2003.

9. The U.S. patent application that led to the '536 patent was filed April 8, 1999. The PCT application that led to the '536 patent was filed September 16, 1997. The foreign application that led to the '536 patent was filed September 17, 1996.

10. The named inventor of the '536 patent is Jyri Suvanen.

11. Core Wireless is asserting claim 19 of the '536 patent.

12. The products accused of infringing the '536 patent are Apple's iPhone 4S, 5, 5S, 5C, 6, 6 Plus, 6S, models.

## APPENDIX B: CLAIM CONSTRUCTION

You should apply the following constructions to the claims of the '151 patent:

- The following phrase in the claim is limiting:

    "the radio telephone network comprising a base station subsystem and a plurality of mobile stations for communicating with the base station subsystem and in which radio signal transmission slots at a mobile station are synchronized to radio signal reception slots at the base station subsystem to account for a propagation delay between the mobile station and the base station subsystem, the reception slots corresponding to uplink and/or downlink user data packet switched transmission channels allocated dynamically by the base station subsystem"

    The phrase "base station subsystem" throughout the claims should be construed as "radio access network, which is a system of base station equipment (transceivers, controllers, etc.) which is responsible for communicating with mobile stations in a certain area.

- The term "receive a timing advance value once" means "receive a timing advance value one time for a multiframe structure."

- The term "for both the uplink and downlink channels" means "for transmissions in the uplink direction on both the uplink and downlink channels."

You should apply the following constructions to the claims of the '536 patent:

- The term "good state" means "state flagging that the frame contains error-free user information."

- The term "bad state" means "state flagging that the frame does not contain error-free user information."

- The term "bit pattern" means "sequence of bits conveying a signaling message not delineated by a code word."

For claim language where I have not provided you with any meaning, the claim language's plain and ordinary meaning to a person of ordinary skill in the art at the time of the invention applies

# APPENDIX C: GLOSSARY

**Some of the terms in this glossary will be defined in more detail in the instructions you are given at the end of the trial. The definitions in the instructions at the end of trial must be followed and must control your deliberations.**

**Abstract**: A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

**Amendment**: A patent applicant's change to one or more claims or to the specification either in response to an office action taken by a Patent Examiner or independently by the patent applicant during the patent application examination process.

**Anticipation**: A situation in which a prior art reference describes an earlier invention and, therefore, the claimed invention is not considered new and is not entitled to be patented.

**Assignment**: A transfer of patent rights to another called an "assignee" who upon transfer becomes the owner of the rights assigned.

**Claim**: Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph. In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e. similar to a land owner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed. Claims may be independent or dependent. An independent claim stands alone. A dependent claim does not stand alone and refers to one or more other claims. A dependent claim incorporates whatever the other referenced claim or claims say.

**Conception**: The complete mental part of the inventive act which must be capable of proof, as by drawings, disclosure to another, etc.

**Continuation Application**: A patent application filed during the examination process of an earlier application which has the same disclosure as the original application and does not include anything which would constitute new matter if inserted in the original application.

**Continuation-In-Part (C-I-P) Application**: A patent application filed during the application process of an earlier application which repeats some or all of the earlier application and adds matter not disclosed in the earlier application to support the addition of new patent claims.

**Drawings**: The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

**Elements**: The required parts of a device or the required steps of a method. A party infringes a patent if each and every requirement of a patent claim is satisfied.

**Embodiment**: A product or method that contains the claimed invention.

**Enablement**: A description of the invention that is sufficient to enable persons skilled in the field of the invention to make and use the invention. The specification of the patent must contain such an enabling description for the claimed invention.

**Examination**: Procedure before the U.S. Patent and Trademark Office whereby a Patent Examiner reviews the filed patent application to determine if the claimed invention is patentable.

**Filing Date**: Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

**Infringement**: Violation of a patent occurring when someone makes, uses, sells, offers for sale, or imports a patented invention, without permission of the patent holder, within the United States during the term of the patent. Direct infringement is making, using or selling the patented invention without permission.

**Limitation**: A required part of an invention set forth in a patent claim. A limitation is a requirement of the invention. The word "limitation" is often used interchangeably with the word "requirement," Or "element" (defined above).

**Nonobviousness**: One of the requirements for securing a patent. To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field of the invention at the time of the earlier of the filing date of the patent application or the date of invention.

**Office Action**: A written communication from the Patent Examiner to the patent applicant in the course of the application examination process.

**Patent**: A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, offering to sell, or selling an invention within the United States, or from importing it into the United States, during the term of the patent. When the patent expires, the right to make, use sell, offer to sell, or import the invention is dedicated to the public. The patent has three parts, which are a specification, drawings and claims. The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

**Patent and Trademark Office (PTO)**: An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks. It is responsible for examining all patent applications and issuing all patents in the United States.

**Prior Art**: Previously known subject matter in the field of a claimed invention for which a patent is being sought. It includes issued patents, publications, and knowledge deemed to be publicly available such as trade skills, trade practices and the like.

**Prosecution History**: The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent. The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

**Reads On**: A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

**Reduction to Practice**: The invention is "reduced to practice" when it is sufficiently developed to show that it would work for its intended purpose.

**Requirement**: A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation."

**Royalty**: A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use, sell, offer to sell, or import the claimed invention.

**Specification**: The specification is a required part of a patent application and an issued patent. It is a written description of the invention and of the manner and process of making and using the claimed invention.

Case No. 15-cv-05008 NC           6

1 **APPENDIX D: MEANS-PLUS-FUNCTION CLAIM CONSTRUCTION**

Claim 19 in the '536 patent contains "means-plus-function" requirements. A means-plus-function requirement only covers the specific structure disclosed in a patent specification for performing the claimed function and the equivalents of the specific structure that perform the claimed function. A means-plus-function requirement does not cover all possible structures that could be used to perform the claimed function.

As I did with other claim language, I have interpreted each means-plus-function requirement for you and identified the structure in the patent specification that corresponds to these means-plus-function requirements as follows:

- Receiving Means. An antenna on a mobile phone labeled "MS" in Figure 1 and "RX" in Fig. 2 and Fig. 4, and as described in 2:7-8 and 8:43-45 of the '536 specification, and statutory equivalents thereof is the structure that performs the "receiving a signal via a transmission channel in frames" function identified in the means-plus-function requirement of claim 19 for a "receiving means."
- Replacing Means. The "Bad parameter replacement" box 128 in Figure 4 as described in 9:20-24 of the '536 specification, and statutory equivalents thereof is the structure that performs the "replacing a bad frame at least partly with a preceding good frame" function identified in the means-plus-function requirement of claim 19 for a "replacing means."

You will receive more instruction on the law you must apply to a means-plus-function claim at the end of the trial.