1
2
3
4
5
6
7        UNITED STATES DISTRICT COURT
8        NORTHERN DISTRICT OF CALIFORNIA
9
10  CORE WIRELESS LICENSING
    S.A.R.L.,                           Case No. 15-cv-05008 NC
11                    Plaintiff,
                                        **FINAL JURY INSTRUCTIONS**
12        v.
13
    APPLE INC.,
14                    Defendant.
15
16
17  **I.    Introduction**
18         Members of the Jury: Now that you have heard all of the evidence, it is my duty to
19  instruct you as to the law of the case.
20         Each of you has received a copy of these instructions that you may take with you to
21  the jury room to consult during your deliberations.
22         You must not infer from these instructions or from anything I may say or do as
23  indicating that I have an opinion regarding the evidence or what your verdict should be.
24         It is your duty to find the facts from all the evidence in the case.  To those facts you
25  will apply the law as I give it to you.  You must follow the law as I give it to you whether
26  you agree with it or not.  And you must not be influenced by any personal likes or dislikes,
27  opinions, prejudices, or sympathy.  That means that you must decide the case solely on the
28  evidence before you.  You will recall that you took an oath to do so.

Case No. 15-cv-05008 NC

United States District Court
Northern District of California

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

## II.   Burden of Proof

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding.  When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not.  When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that you must be persuaded by the evidence that it is highly probable that the claim or defense is true.  This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

You should base your decision on all of the evidence, regardless of which party presented it.

## III.  Evidence

### A.    Evidence You May Consider

The evidence you are to consider in deciding what the facts are consists of:

(1) the sworn testimony of any witness;

(2) the exhibits which are received into evidence; and

(3) any facts to which the lawyers have agreed (stipulated facts).

In reaching your verdict, you may consider only the testimony, exhibits, and stipulations of fact received into evidence.

There is no distinction for testimony and exhibits that were presented confidentially under seal, such as the Qualcomm code.  All admitted evidence should be considered, whether or not it was submitted to the court in a confidential manner.

### B.    Things You May Not Consider

Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

United States District Court
Northern District of California

(1) Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

**C.    Taking Notes**

You may have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

**D.    Stipulations of Fact**

The parties have agreed to certain facts that have provided for you as Appendix A to the preliminary jury instructions.  You should therefore treat these facts as having been proved.

**E.    Charts and Summaries Not Received in Evidence**

Certain charts and summaries not received in evidence may be shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  You may hear these charts and summaries referred to as "demonstratives" or "demonstrative evidence."  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should

United States District Court
Northern District of California

1  disregard these charts and summaries and determine the facts from the underlying
2  evidence.

3      **F.    Types of Evidence**

4          Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact,
5  such as testimony by a witness about what that witness personally saw or heard or did.  For
6  example, direct evidence that it was raining would be a photo showing that it was raining
7  on a given day.  Circumstantial evidence is proof of one or more facts from which you
8  could find another fact.  For example, circumstantial evidence that it was raining would be
9  testimony of a witness who said they believed it was raining, not because they saw the
10  rain, but because they saw a person entering the building with a wet umbrella.  You should
11  consider both kinds of evidence.  The law makes no distinction between the weight to be
12  given to either direct or circumstantial evidence.  It is for you to decide how much weight
13  to give, if any, to any evidence.

14      **G.    Use of Interrogatories of a Party**

15          Evidence may be presented to you in the form of answers of one of the parties to
16  written interrogatories submitted by the other side.  These answers were given in writing
17  and under oath, before the actual trial, in response to questions that were submitted in
18  writing under established court procedures.  You should consider the answers, insofar as
19  possible, in the same way as if they were made from the witness stand.

20      **H.    Evidence for a Limited Purpose**

21          Some evidence may be admitted for a limited purpose only.

22          When I instruct you that an item of evidence has been admitted for a limited
23  purpose, you must consider it only for that limited purpose and for no other.

24      **I.    The Court's Ruling on Objections**

25          There are rules of evidence that control what can be received into evidence.  When
26  a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side
27  thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I
28  overruled the objection, the question was answered or the exhibit received.  If I sustained

United States District Court
Northern District of California

the objection, the question was not answered, and the exhibit was not received.  Whenever I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been or what the document might have said.  My rulings are not intended to influence your decision.  Your decisions must be based entirely on the testimony and documents received into evidence.

Sometimes I may have ordered that evidence be stricken from the record and that you disregard or ignore the evidence.  That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

**J.    Recesses**

From time to time during the trial, it may have been necessary for me to talk with the attorneys out of the hearing of the jury by calling a recess.  The purpose of these conferences was not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

I may not have always granted an attorney's request for a recess.  Do not consider my granting or denying a request for a recess as any indication of my opinion of the case or of what your verdict should be.

**IV.  Witnesses**

**A.    Evaluation of Witness Testimony**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

### B.     Impeachment Evidence

The evidence that a witness lied under oath or gave different or inconsistent testimony on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much, if any, weight to give to that witness's testimony.

### C.     Expert Witnesses

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.  The expert witnesses in this case were: Richard Wesel, Stephen Dell, Edward Knightly, Michael Buehrer, and Paul Meyer.

Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

### D.     Deposition Testimony

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded by written transcript and sometimes video recording.  When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

You should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

If testimony was read, rather than played back from a recording, do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

United States District Court
Northern District of California

1   You heard or viewed only a portion, or series of portions, of the depositions taken

2   by the parties in this case.  Do not make any inferences about the fact that you did not hear

3   or see the deposition in its entirety or that what you heard or saw has been edited.

4   **V.   Summary of Contentions**

5   I will first give you a summary of each side's contentions in this case.  I will then

6   tell you what  each side must prove to win on each of its contentions.

7   In this case, Core Wireless asserts United States Patent Numbers 6,477,151 and

8   6,633,536.  As the parties and I have been doing throughout this trial, in these final

9   instructions I will refer to these patents as the '151 and '536 patents.

10  Core Wireless asserts the following claims from the '151 and '536 patents, which I

11  will refer to as "the asserted claims":

12  Claim 14 of the '151 patent; and

13  Claim 19 of the '536 patent.

14  As I previously told you, Core Wireless seeks money damages from Apple for

15  allegedly infringing the asserted claims by making, using, selling, and offering for sale

16  products that Core Wireless argues are covered by the asserted claims.  The products that

17  are alleged to infringe claim 14 of the '151 patent are the 4S, 5, 5S, 5C, 6, 6 Plus, 6S, 6S

18  Plus, and SE models of Apple's iPhone and the iPad3, iPad 4, iPad Mini, iPad Air, iPad

19  Air 2, and iPad Pro models of Apple's iPad products.  The products that are alleged to

20  infringe Claim 19 of the '536 patent are the above listed iPhone products only, and not the

21  iPad products.

22  For each asserted patent, Apple denies that it has infringed the asserted claim of the

23  patent and argues that, in addition, the asserted claim is invalid.

24  Your job is to decide whether the asserted claims have been infringed and whether

25  any of the asserted claims are invalid.  If you decide that any claim of either patent has

26  been infringed and is not invalid, you will then need to decide any money damages to be

27  awarded to Core Wireless to compensate it for the infringement.

28

United States District Court
Northern District of California

## VI.   Interpretation of Claims

Before you decide whether Apple has infringed the claims of the '536 or '151 patents or whether the claims are invalid, you will need to understand the patent claims. As I mentioned, the patent claims are numbered sentences at the end of the patent that describes the boundaries of the patent's protection.  It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case.  You must accept those interpretations as correct.  My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity.  The decisions regarding infringement and invalidity are yours to make.

You should apply the constructions to the claims of the patents that I have provided for you in Appendix B and Appendix D to the preliminary jury instructions.

For claim language where I have not provided you with any meaning, the claim language's plain and ordinary meaning to a person of ordinary skill in the art at the time of the invention applies.

## VII. Infringement

I will now instruct you on the rules you must follow in deciding whether Core Wireless has proven that Apple has infringed one or more of the asserted claims.

### A.   Burden of Proof

To prove infringement of any claim, Core Wireless must persuade you that it is more likely than not that Apple has infringed that claim.

### B.   Direct Infringement

A patent claim defines what is covered by the patent.  A product directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process.  The first step is to decide the meaning of the patent claim.  I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims.  The

second step is to decide whether Apple has made, used, sold, or offered for sale within the United States a product covered by one of the asserted claims. If it has, it infringes. You, the jury, make this decision.

You must consider each of the asserted claims of the patents individually, and decide whether Apple infringes that claim.

Whether or not Apple knew its product infringed or even knew of the patent does not matter in determining direct infringement. Also, you have heard evidence about Apple's other licenses and other patents involved in the cellular standards at issue. In deciding the issue of infringement you may not compare the accused products to the standard or other patents for which Apple has a license. Rather, you must compare the accused products to the claims of the patents-in-suit when making your decision.

## C.    Literal Infringement

To decide whether a direct infringer's product literally infringes a claim of the '151 or '536 patents, you must compare that product with the patent claim and determine whether every requirement of the claim is included in that product. If so, Apple's product literally infringes that claim. If, however, Apple's product does not have every requirement in the patent claim, Apple's product does not literally infringe that claim. You must decide literal infringement for each asserted claim separately.

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim. An open claim is infringed as long as every requirement in the claim is present in a direct infringer's product or method. The fact that a direct infringer's product also includes other parts or steps will not avoid infringement, as long as it has every requirement in the patent claim.

## D.    Means-Plus-Functions Claim

I will now describe the separate rules that apply to "means-plus-function" requirements that are used in one of the asserted claims. Claim 19 in the '536 patent contains "means-plus-function" requirements. A means-plus-function requirement only covers the specific structure disclosed in a patent specification for performing the claimed

United States District Court
Northern District of California

1   function and the equivalents of the specific structure that perform the claimed function. A

2   means-plus-function requirement does not cover all possible structures that could be used

3   to perform the claimed function.

4         As an example, the term "means for processing data" might be understood to

5   encompass a variety of different ways of making a calculation, including not only a

6   computer or calculator but a pencil and paper or even the human brain.  But because the

7   phrase is a means-plus-function requirement, we interpret that phrase not to cover every

8   possible means for processing data, but instead to cover the actual means disclosed in the

9   patent for processing data and other means that are equivalent to it.

10        For purposes of this trial, I have interpreted each means-plus-function requirement

11   for you and identified the structure in the patent specification that corresponds to these

12   means-plus-function requirements. Specifically, I have determined that:

13        • Receiving Means. An antenna on a mobile phone labeled "MS" in Figure 1

14            and "RX" in Fig. 2 and Fig. 4, and as described in 2:7-8 and 8:43-45 of the

15            '536 specification, and statutory equivalents thereof is the structure that

16            performs the "receiving a signal via a transmission channel in frames"

17            function identified in the means-plus-function requirement of claim 19 for a

18            "receiving means."

19        • Replacing Means. The "Bad parameter replacement" box 128 in Figure 4 as

20            described in 9:20-24 of the '536 specification, and statutory equivalents

21            thereof is the structure that performs the "replacing a bad frame at least

22            partly with a preceding good frame" function identified in the means-plus-

23            function requirement of claim 19 for a "replacing means."

24        In deciding if Core Wireless has proven that Apple's products include structure

25   covered by a means-plus-function requirement, you must first decide whether the products

26   have any structure that performs the function I just described to you.  If not, the claim

27   containing that means-plus-function requirement is not infringed.

28        If you find that the Apple's accused products do have structure that performs the

Case No. 15-cv-05008 NC              10

United States District Court
Northern District of California

United States District Court
Northern District of California

1    claimed function, you must then determine whether that structure is the same as or

2    equivalent to the structure I have identified in the specification.  If they are the same or

3    equivalent, the means-plus-function requirement is satisfied by that structure of the

4    accused products.  If all the other requirements of the claim are satisfied, the accused

5    products infringe the claim.

6           In order to prove that a structure in the accused products is equivalent to the

7    structure in the '536 patent, Core Wireless must show that a person of ordinary skill in the

8    field would have considered that the differences between the structure described in the

9    '536 patent and the structure in the accused product are not substantial. Core Wireless

10   must also show that the structure was available on the date the '536 patent was granted.

11   **VIII.   Invalidity**

12          Apple contends that the asserted claims of the '151 and '536 patents are invalid.

13   For the '151 patent, Apple contends that claim 14 is invalid as anticipated and invalid as

14   obvious by the 1997 GPRS Paper (DX-202).  For the '536 patent, Apple contends that

15   claim 19 is invalid as anticipated by the IS-54 Publication (DX-102).  Core Wireless

16   denies that the asserted claims are invalid.

17          I will now instruct you on the rules you must follow in deciding whether Apple has

18   proven the asserted claims are invalid.

19   **A.     Burden of Proof**

20          Before discussing the specific rules, I want to remind you about the standard of

21   proof that applies to this defense.  To prove invalidity of any patent claim, Apple must

22   persuade you by clear and convincing evidence that the claim is invalid.

23          During this case, Apple has submitted prior art that was not considered by the

24   United States Patent and Trademark Office ("PTO") during the prosecution of the patents-

25   in-suit.  Apple contends that such prior art invalidates certain claims of the patents.  In

26   deciding the issue of invalidity, you may take into account the fact that the prior art was

27   not considered by the PTO when it issued the patents-in-suit.  Prior art that differs from the

28   prior art considered by the PTO may carry more weight than the prior art that was

considered and may make Apple's burden of showing by clear and convincing evidence that a patent claim is invalid easier to sustain.

**B.   Anticipation**

A patent claim is invalid if the claimed invention is not new.  For the claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single publication or patent that predates the claimed invention.  In patent law, these previous devices, methods, publications or patents are called "prior art references."  If a patent claim is not new, we say it is "anticipated" by a prior art reference.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of the invention looking at that one reference would be able to make and use the claimed invention.

Here is a list of the ways that Apple can show that a patent claim was not new:

- if the claimed invention was already publicly known or publicly used by others in the United States before the conception date of the asserted claims;

- if the claimed invention was already patented or described in a printed publication anywhere in the world before the conception date of the asserted claims. A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

- if the claimed invention was already described in a printed publication anywhere in the world more than one year before the U.S. filing date of the patent application. Again, a reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find.

**C.   Obviousness**

Not all innovations are patentable.  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field as of the date the inventors of the asserted patents conceived their inventions.  This means that even if all

of the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the field of the invention who knew about all this prior art would have come up with the claimed invention.

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions. First, you must decide the level of ordinary skill in the field that someone would have had as of the effective filing date of the claimed invention. Second, you must decide the scope and content of the prior art. Core Wireless and Apple disagree as to whether certain prior art references should be included in the prior art you use to decide the validity of the asserted claims.

### 1. Level of Ordinary Skill in the Art

First, you must consider the level of ordinary skill in the field that someone would have had as of the effective filing date of the claimed invention. In this case, the parties agree that the level of ordinary skill in the field of both the patents would be a person who has at least the equivalent of a bachelor's degree in electric engineering, telecommunication, computer engineering, computer science, or a related technical degree, as well as at least one to two years of post-degree experience in communications, signal processing, or related fields.

### 2. Scope and Content of the Prior Art

Second, you must decide the scope and content of the prior art. In order to be considered as prior art patent, these references must be reasonably related to the claimed invention of that patent. A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.

### 3. Difference Between Claimed Invention and Prior Art

Third, you must decide what differences, if any, existed between the claimed invention and the prior art.

United States District Court
Northern District of California

United States District Court
Northern District of California

### 4.    Secondary Considerations

Finally, you should consider any of the following factors that you find have been shown by the evidence:

1.  commercial success of a product due to the merits of the claimed invention;

2.  a long felt need for the solution provided by the claimed invention;

3.  unsuccessful attempts by others to find the solution provided by the claimed invention;

4.  copying of the claimed invention by others;

5.  unexpected and superior results from the claimed invention;

6.  acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention;

7.  other evidence tending to show nonobviousness;

8.  independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and

9.  other evidence tending to show obviousness.

The presence of any of these factors may be considered by you as an indication that the claimed invention would not have been obvious as of the date the inventors of the asserted patents conceived their inventions, and the presence of these factors may be considered by you as an indication that the claimed invention would have been obvious at such time. Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

### 5.    Obviousness Guidance

A patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art. In evaluating whether such a claim would have been obvious, you may consider whether Core Wireless has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in

United States District Court
Northern District of California

1   the claimed invention.  There is no single way to define the line between true inventiveness

2   on the one hand (which is patentable) and the application of common sense and ordinary

3   skill to solve a problem on the other hand (which is not patentable).

4        For example, market forces or other design incentives may be what produced a

5   change, rather than true inventiveness.  You may consider whether the change was merely

6   the predictable result of using prior art elements according to their known functions, or

7   whether it was the result of true inventiveness.  You may also consider whether there is

8   some teaching or suggestion in the prior art to make the modification or combination of

9   elements claimed in the patent. Also, you may consider whether the innovation applies a

10  known technique that had been used to improve a similar device or method in a similar

11  way.  You may also consider whether the claimed invention would have been obvious to

12  try, meaning that the claimed innovation was one of a relatively small number of possible

13  approaches to the problem with a reasonable expectation of success by those skilled in the

14  art.

15       However, you must be careful not to determine obviousness using the benefit of

16  hindsight; many true inventions might seem obvious after the fact.  You should put

17  yourself in the position of a person of ordinary skill in the field as of the effective filing

18  date of the claimed inventions and you should not consider what is known today or what is

19  learned from the teaching of the patent.

20  **IX.  Damages**

21      **A.    Burden of Proof**

22       I will instruct you about the measure of damages.  By instructing you on damages, I

23  am not suggesting which party should win on any issue.  If you find that Apple infringed

24  any valid claim of the asserted patents, you must then determine the amount of money

25  damages to be  awarded to Core Wireless to compensate it for the infringement.

26       The amount of those damages must be adequate to compensate Core Wireless for

27  the infringement.  A damages award should put the patent holder in approximately the

28  financial position it would have been in had the infringement not occurred, but in no event

1   may the damages award be less than a reasonable royalty.  You should keep in mind that

2   the damages you award are meant to compensate the patent holder and not to punish an

3   infringer.

4        Core Wireless has the burden to persuade you of the amount of its damages.  You

5   should award only those damages that Core Wireless more likely than not suffered.  While

6   Core Wireless is not required to prove its damages with mathematical precision, it must

7   prove them with reasonable certainty.  Core Wireless is not entitled to damages that are

8   remote or speculative.

9        **B.    Reasonable Royalty- Definition**

10       A royalty is a payment made to a patent holder in exchange for the right to make,

11  use or sell the  claimed invention. This right is called a "license." A reasonable royalty is

12  the payment for the  license that would have resulted from a hypothetical negotiation

13  between the patent holder and  the infringer taking place at the time when the infringing

14  activity first began. In considering the  nature of this negotiation, you must assume that

15  the patent holder and the infringer would have  acted reasonably and would have entered

16  into a license agreement. You must also assume that  both parties believed the patent

17  was valid and infringed. Your role is to determine what the  result of that negotiation

18  would have been.  The test for damages is what royalty would have  resulted from the

19  hypothetical negotiation and not simply what either party would have  preferred.

20       A royalty can be calculated in several different ways and it is for you to determine

21  which way is  the most appropriate based on the evidence you have heard.  It is up to

22  you, based on the evidence, to decide what type of royalty is appropriate in this case  for

23  the life of the patent.

24       **1. Ongoing Royalty**

25       One way to calculate a royalty is to determine what is called an "ongoing royalty."

26  To calculate an ongoing royalty, you must first determine the "base," that is, the product

27  on which the infringer is to pay.  You then need to multiply the revenue the defendant

28  obtained from that base by the "rate" or percentage that you find would have resulted from

United States District Court
Northern District of California

the hypothetical negotiation.  For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200.  If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of 0.01 times the base revenue of $200.  By contrast, if you find the rate to be 5%, the royalty would be $10, or the rate of 0.05 times the base revenue of $200.  These numbers are only examples, and are not intended to suggest the appropriate royalty rate.

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component.  For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5.

### 2. Fixed Royalty

Instead of a percentage royalty, you may decide that the appropriate royalty that would have resulted from a hypothetical negotiation is a fixed number of dollars per unit sold. If you do, the royalty would be that fixed number of dollars times the number of units sold.

In this case, the parties have introduced evidence of licenses. The royalty rate in one or more of those licenses may be considered if it helps to establish the value that is attributable to the patented invention as distinct from the value of other features of Apple's product.

The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more. When the accused infringing products have both patented and unpatented features, measuring this value requires you to identify and award only the value of the patented features.

### 3. Lump Sum Royalty

Another way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all  sales of the licensed product, both past and future. This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the volume of actual  licensed products it sells. When a one-time lump sum is paid, the infringer pays a single price  for a license covering both past

United States District Court
Northern District of California

1   and future infringing sales.

2   **C.   Reasonable Royalty - Relevant Factors**

3   In determining the reasonable royalty, you should consider all the facts known and

4   available to the parties at the time the infringement began.  Some of the kinds of factors

5   that you may consider in making your determination are:

6   1.  The royalties received by the patentee for the licensing of the patent-in-suit,

7   proving or tending to prove an established royalty.

8   2.  The rates paid by the licensee for the use of other patents comparable to the

9   patent-in-suit.

10  3.  The utility and advantages of the patented property over the old modes or

11  devices, if any, that had been used for working out similar results.

12  4.  The nature of the patented invention, the character of the commercial

13  embodiment of it as owned and produced by the licensor, and the benefits to

14  those who have used the invention.

15  5.  The extent to which the infringer has made use of the invention and any

16  evidence probative of the value of that use.

17  6.  The portion of the profit or of the selling price that may be customary in the

18  particular business or in comparable business to allow for the use of the

19  invention or analogous inventions.

20  7.  The portion of the realizable profits that should be credited to the invention

21  as distinguished from nonpatented elements, the manufacturing process,

22  business risks, or significant features or improvements added by the

23  infringer.

24  8.  The opinion and testimony of qualified experts.

25  9.  The amount that a licensor (such as the patentee) and a licensee (such as the

26  infringer) would have agreed upon (at the time the infringement began) if

27  both had been reasonably and voluntarily trying to reach an agreement; that

28  is, the amount which a prudent licensee—who desired, as a business

United States District Court
Northern District of California

proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

**D.    Reasonable Royalty – Commitment to License on Reasonable and Nondiscriminatory Terms**

In this case, by participating in a standard-setting organization, both Nokia (the prior owner of the patents) and Core Wireless promised to license its patents to all willing licensees on reasonable and nondiscriminatory terms.

You must take that promise into account in determining the reasonable royalty.

When a technology is incorporated into an industry standard, it is typically chosen from among different options.  Once a standard is adopted, the technology is not necessarily used by other companies because it is the best option; the technology is used because its use is necessary to comply with the standard.  The royalty you award should reflect the value of Core Wireless' technological contribution, not the value of its widespread adoption due to standardization.

In addition, the value of the patented feature must be apportioned from the value of any unpatented features included in the standard.

## X.   Conduct of the Jury During Deliberations

### A.   Use of Electronic Technology To Conduct Research on or Communicate About A Case

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, Blackberry or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, MySpace, LinkedIn, YouTube or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.  I expect you will inform me as soon as you become aware of another juror's violation of these instructions.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom.  Information on the internet or available through social media might be wrong, incomplete, or inaccurate.  You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have.  In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom.  Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties in the case.  This would unfairly and adversely impact the judicial process.

### B.   Duty To Deliberate

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can

United States District Court
Northern District of California

1   do so.  Your verdict must be unanimous.

2      Each of you must decide the case for yourself, but you should do so only after you

3   have considered all of the evidence, discussed it fully with the other jurors, and listened to

4   the views of your fellow jurors.

5      Do not hesitate to change your opinion if the discussion persuades you that you

6   should.  Do not come to a decision simply because other jurors think it is right.

7      It is important that you attempt to reach a unanimous verdict but, of course, only if

8   each of you can do so after having made your own conscientious decision.  Do not change

9   an honest belief about the weight and effect of the evidence simply to reach a verdict.

10     **C.   Conduct of the Jury**

11     Because you must base your verdict only on the evidence received in the case and

12  on these instructions, I remind you that you must not be exposed to any other information

13  about the case or to the issues it involves.  Except for discussing the case with your fellow

14  jurors during your deliberations, do not communicate with anyone in any way and do not

15  let anyone else communicate with you in any way about the merits of the case or anything

16  to do with it.

17     **D.   Communication with the Court**

18     If it becomes necessary during your deliberations to communicate with me, you

19  may send a note through the Courtroom Deputy, signed by your presiding juror or by one

20  or more members of the jury.  No member of the jury should ever attempt to communicate

21  with me except by a signed writing; I will communicate with any member of the jury on

22  anything concerning the case only in writing, or here in open court.  If you send out a

23  question, I will consult with the parties before answering it, which may take some time.

24  You are not to conclude from any time delays that the question is difficult to answer and

25  you are not to speculate that the time delay gives any indication as to what the answer is.

26  You may continue your deliberations while waiting for the answer to any question.

27  Remember that you are not to tell anyone—including me—how the jury stands,

28  numerically or otherwise, until after you have reached a unanimous verdict or have been

1    discharged.  Do not disclose any vote count in any note to the court.

2        **E.    Return of Verdict**

3        A verdict form has been prepared for you. After you have reached unanimous

4    agreement on a verdict, your presiding juror will fill in the form that has been given to you,

5    sign and date it, and advise the court that you are ready to return to the courtroom.

6

7        **IT IS SO ORDERED.**

8

9    Dated:  December 12, 2016

10   _____

     NATHANAEL M. COUSINS
     United States Magistrate Judge