1  Mark D. Selwyn (SBN 244180)
   mark.selwyn@wilmerhale.com
2  WILMER CUTLER PICKERING
       HALE AND DORR LLP
3  950 Page Mill Road
   Palo Alto, CA 94304
4  Telephone: (650) 858-6000
   Facsimile: (650) 858-6100
5
   Joseph J. Mueller (*pro hac vice*)
6  Cynthia D. Vreeland (*pro hac vice*)
   Richard W. O'Neill (*pro hac vice*)
7  joseph.mueller@wilmerhale.com
   cynthia.vreeland@wilmerhale.com
8  richard.oneill@wilmerhale.com
   WILMER CUTLER PICKERING
9      HALE AND DORR LLP
   60 State Street
10 Boston, MA 02109
   Telephone: (617) 526-6000
11 Facsimile: (617) 526-5000

12 *Attorneys for Defendant and
   Counterclaim-Plaintiff Apple Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| CONVERSANT WIRELESS LICENSING S.A.R.L., <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Case No. 5:15-cv-5008-NC <br><br> **APPLE INC.'S COMBINED OPPOSITION TO TELEFONAKTIEBOLAGET LM ERICSSON AND ERICSSON INC.'S MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF (DKT. 557) AND NOKIA TECHNOLOGIES OY'S MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF (DKT. 559)** <br><br> Date: May 8, 2019 <br> Time: 1:00 p.m. <br> Location: Courtroom 5, 4th Floor <br> Judge: Hon. Nathanael Cousins |

After many years of litigation, including fact and expert discovery, a jury trial, and a Federal Circuit appeal, all that is left in this case is a narrow issue: whether Nokia's misconduct resulted in any unjust benefit to either Nokia or Core Wireless, or alternatively whether it was egregious enough to justify an implied waiver finding regardless of any unjust benefits. Apple's unenforceability defense has been part of this case for more than three years, and the parties have fully litigated the issue. The factual record is now closed, and briefing is nearly complete. At the eleventh hour, Nokia and Ericsson both have filed motions seeking to participate on remand as amici. Those requests should be denied.

*First*, the Court has already found no good cause for the parties to expand the factual record. Yet Nokia's and Ericsson's briefs rely on new factual claims that find no support in the existing record. Because there is no good cause to expand the record to include these new—and untested—assertions (which in fundamental ways directly conflict with positions that Nokia and Ericsson have taken in other proceedings), both motions should be denied for this reason alone.

*Second*, Ericsson and Nokia seek to relitigate the law of the case established by the Federal Circuit—Ericsson calls the decision "incorrect"—based on the same unsuccessful arguments presented on appeal. Any remaining arguments merely repeat arguments that Core Wireless has already made in its remand brief. Because none of these already-rejected and/or repetitive arguments would assist the Court, the motions should be denied for this reason as well.

*Finally*, the purpose of amicus participation is to provide the fact-finder with the disinterested views of a third party. Nokia has hardly been disinterested in the outcome of this case given that it has held a financial stake in this litigation and other revenue that might be derived from the '151 patent. Nokia's motion should be denied for this additional reason.

Apple respectfully requests that the Court not accept Nokia and Ericsson's briefs.[1]

I.   **ARGUMENT**

   A.   **Legal Standard**

---

[1] Apple reserves the right to address the substance of Nokia's and Ericsson's briefs if the Court grants leave for them to be filed. This opposition focuses only on the issue of the procedural impropriety of the briefs.

A district court has broad discretion to disallow amicus briefs. *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982). Courts have denied motions for leave where, as here, the proposed amicus had a stake in the litigation, and the brief did "not provide the Court with any unique information or a unique perspective on the issues raised" beyond what the parties provided. *Merritt v. McKenney*, No. C 13-01391 JSW, 2013 WL 4552672, at *4 (N.D. Cal. Aug. 27, 2013).

The traditional role of an amicus is "an impartial friend of the court—not an adversary party in interest in the litigation." *United States v. Michigan*, 940 F.2d 143, 165 (6th Cir. 1991) (emphasis omitted); *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) ("The term 'amicus curiae' means friend of the court, not friend of the party.").

**B.   Ericsson And Nokia Improperly Seek To Present Facts Outside The Record.**

Ericsson and Nokia improperly seek to offer both new evidence and expert opinions. For example, Ericsson's proposed brief relies upon its own current interpretation of ETSI guidelines, Dkt. 557-1 at 5, an amicus brief filed by Kelce Wilson in the Federal Circuit, *id.* at 8-10, and a handful of academic articles and white papers, *id*. at 5, 9, 10 n.7, 11, none of which were part of the evidence in this case. Likewise, Nokia's proposed brief relies upon its self-serving view of the "norm of industry practice," Dkt. 559-1 at 3, 6-9, the same amicus brief filed by Mr. Wilson, *id.* at 7, and an academic article, *id.* These cherry-picked documents and opinions are without an evidentiary foundation, have not been tested through normal discovery procedures, and proposed amici's current arguments are flatly contradicted by their statements closer in time to the relevant events. Indeed, as discussed below, Nokia's and Ericsson's arguments are directly inconsistent with representations that Nokia and Ericsson have previously made—further confirming that this outside-the-record evidence is unreliable and should not be permitted. Additionally, as discussed below, the Federal Circuit had these arguments, including the Wilson Brief, before it when denying Core Wireless's motion for rehearing. Further, the Wilson Brief offers a far-too-late opinion that would not pass muster if introduced in the district court.

At the January 30, 2019 hearing, the Court found no good cause for the parties to expand the factual record in this matter, stating: "There was an opportunity for discovery. There was an opportunity before trial to develop the theories that were presented at trial, and I don't find good

1  cause to reopen that phase of the case." Hrg. Tr. 14:13-16.  If Nokia or Core Wireless—the
2  company that Nokia helped create and in which Nokia has a direct stake—wished to introduce
3  relevant facts from Nokia, they should have done so at trial through witness testimony or
4  documents.  Indeed, Nokia did participate in the development of the record.  Two Nokia
5  engineers knowledgeable about Nokia's standard-setting involvement testified at trial, at least
6  one of whom did so at the request of Nokia, and Core Wireless's expert on disclosure issues was
7  a Nokia employee whom Core Wireless chose not to call at trial.  *See, e.g.*, Tr. [Oksala] 233:1-
8  235:25; Tr. [Suvanen] 275:1-277:25; 286:10-25 (Nokia engineer testifying that "Nokia asked
9  [him] to become involved in this case"); Dkt. 390, Core Wireless's Third Amended Witness List
10 at 2, 5 (listing "Antti Toskala" as "potential rebuttal witness" to testify that "Nokia fulfilled any
11 disclosure obligation it may have had to ETSI").  Having failed to offer this evidence at trial,
12 Nokia cannot now expand the record through an improper "amicus" filing.  Nor can Ericsson—it
13 also was aware of this case during discovery, yet never sought to intervene.

14            **C.     Ericsson And Nokia Contradict The Federal Circuit's Binding Law.**

15         On August 16, 2018, the Federal Circuit issued a decision in this case that specifically
16 addressed many of the arguments now advanced by the proposed amici.  *See Core Wireless*
17 *Licensing S.A.R.L. v. Apple Inc.*, 899 F.3d 1356, 1366-68 (Fed. Cir. 2018).  On October 1, 2018,
18 Core Wireless sought rehearing and rehearing *en banc* of the panel's opinion, and in support of
19 that motion both Nokia and Kelce Wilson filed amicus briefs before the Federal Circuit.  Exs. 1
20 ("Wilson Brief") and 2 ("Nokia Brief") (CAFC 17-2102, Dkts. 66, 68).  These briefs advanced
21 the very same arguments advanced by Ericsson and Nokia here.  As one example, the Wilson
22 Brief, Nokia Brief, and both proposed briefs here make substantially the same arguments
23 regarding the role of norms and industry practice in the SSO context.  *Compare* Ex. 1 at 4-7 and
24 Ex. 2 at 6-9 *with* Dkt. 557-1 at 8-9 and Dkt. 559-1 at 6-9.  The Federal Circuit rejected these
25 arguments, explaining that the panel correctly applied the law, that detrimental reliance on non-
26 disclosure is not required for a finding of implied waiver, and that Dr. Walker's trial testimony
27 was uncontradicted.  Dkt. 534 at 2-3.
28         Nokia and Ericsson do not even attempt to hide their criticism of the decision.  Nokia

critiques, for example, the "limited available appellate record," 559-1 at 3, and Ericsson explicitly states that it "believes that ruling was incorrect," 557-1 at 2. Second-guessing the Federal Circuit's judgment is not this Court's role, and amicus submissions that contradict the law of the case are not helpful to the Court's remaining duty—i.e., to apply that law of the case to the issue on remand.

### D.  Nokia And Ericsson Contradict Their Own Prior Statements.

Nokia and Ericsson each claim to offer perspective as members of ETSI, and both licensors and licensees of SEPs. *See* Dkts. 557, 559. However, the information they provide is inconsistent with representations that they have previously made (at times closer to Nokia's misconduct with respect to the '151 patent), further confirming that this outside-the-record evidence should not be relied upon.

For example, Nokia argues in its proposed brief that "the focus at ETSI has ***always*** been on securing FRAND commitments (ensuring availability) and picking the best technical solutions," Dkt. 559-1 at 9, but argued exactly the opposite in a complaint against Qualcomm in 2006. There, Nokia stated that "ETSI requires its members to identify <u>all</u> patents they hold that may be essential to compliance with a proposed technology standard—referred to as 'essential patents'—<u>before</u> the standard is adopted. . . . The purpose of this disclosure requirement is obvious: to avoid a 'patent ambush' situation where a party that holds up industry participants for ***unexpected and unanticipated royalties*** for technology that is essential to the practice of the standard." Ex. 3, Complaint, ¶ 22 in Docket No. 2330-CS (Del. Ch., Aug. 9, 2006). *See also id.* at ¶ 26. Similarly, in what can be seen in the unredacted portions of a filing with the European Commission, Nokia alleged that Qualcomm's termination of a modem chip license agreement "after having induced SSOs to base . . . standards on Qualcomm's technology" breached "Qualcomm's duty to license on FRAND terms" based on multiple IPR policies. Ex. 4, European Commission Complaint, *FTC v. Qualcomm Inc.*, 5:17-cv-220-LHK, Dkt. 893-2, Ex. 25 at 46.

As another example, Ericsson likewise made contrary representations to the Federal Trade Commission in 2011. In its proposed brief Ericsson argues that disclosure is merely a "technical" requirement, Dkt. 557-1 at 8, and that "the purpose of disclosure is to ensure that

patents on technology included in the standard will be available on FRAND terms," *id.* at 5. Ericsson told the FTC the opposite, recognizing that the duty to pre-disclose IPR is separate from the duty to make a FRAND commitment, stating "[t]he current processes employed by SSOs, requiring their members to *pre-disclose* potentially essential patents and, most importantly, to commit to license such intellectual property on (F)RAND terms, have served the Information and Telecommunications Technology (ICT) industry well for many years." Dkt. 559-8, Koppelman Decl. Ex. 6, Ericsson's Response to FTC's Request for Comments (Standard Setting Workshop, Project No. P111204) at 2. Indeed, Ericsson acknowledged that its proposal to the ETSI Ad Hoc Working Group on IPR in 2005-2006 that SSO members should pre-agree to FRAND licensing for all essential IPR was "*not* adopted into the ETSI rules and *companies therefore have to rely on the declaration rules, in combination with other legal means (e.g., antitrust rules), to make sure hold-up situations do not occur.*" *Id.*

### E. Due To Nokia's Financial Interest In This Case, It Is Not A Proper Amicus.

Nokia has not been a disinterested third party and has had a significant financial interest in the outcome of the case. As explained in more detail in Apple's Unenforceability Motion, Core Wireless was a creation of Microsoft and Nokia designed to extract value from what had been Nokia's patent portfolio. Dkt. 547-4 at 19-22. Core Wireless specifically identified Nokia Corporation as an interested party. Dkt. 347, Pl.'s First Amended Cert. of Interested Entities or Persons. As Core Wireless executive John Lindgren explained at trial, Conversant is contractually "committed to give a large percentage of the royalties collected as [it] license[s] the patents" to "Nokia to pay for the portfolio." Tr. [Lindgren] 594:21-24. *Cf. id.* at 600:1-18 (describing Nokia patent trust's share of royalties on Conversant's patent portfolio); PX 7 (providing for higher royalty rates to Nokia once Core Wireless' gross revenues exceeded $1 billion). Nokia has had a significant financial interest in the enforceability of the '151 patent against Apple and is thus an improper amicus.

## II. CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court deny Ericsson's and Nokia's motions for leave to file amicus briefs. Dkts. 557, 559.

Dated: April 10, 2019

APPLE INC.

By: */s/ Joseph J. Mueller*

Mark D. Selwyn (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Joseph J. Mueller (*pro hac vice*)
Cynthia D. Vreeland (*pro hac vice*)
Richard W. O'Neill (*pro hac vice*)
joseph.mueller@wilmerhale.com
cynthia.vreeland@wilmerhale.com
richard.oneill@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

*Attorneys for Defendant and Counterclaim-Plaintiff Apple Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via the Court's CM/ECF system on April 10, 2019 on counsel of record. I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: April 10, 2019

*/s/ Joseph J. Mueller*

Joseph J. Mueller