1  Mark D. Selwyn (SBN 244180)
   mark.selwyn@wilmerhale.com
2  WILMER CUTLER PICKERING
     HALE AND DORR LLP
3  950 Page Mill Road
   Palo Alto, CA 94304
4  Telephone: (650) 858-6000
   Facsimile: (650) 858-6100
5
6  Joseph J. Mueller (*pro hac vice*)
   Cynthia D. Vreeland (*pro hac vice*)
   Richard W. O'Neill (*pro hac vice*)
7  joseph.mueller@wilmerhale.com
   cynthia.vreeland@wilmerhale.com
8  richard.oneill@wilmerhale.com
   WILMER CUTLER PICKERING
9     HALE AND DORR LLP
   60 State Street
10 Boston, MA 02109
   Telephone: (617) 526-6000
11 Facsimile: (617) 526-5000

12 *Attorneys for Defendant and*
   *Counterclaim-Plaintiff Apple Inc.*

13

14                **UNITED STATES DISTRICT COURT**

15              **NORTHERN DISTRICT OF CALIFORNIA**

16                    **SAN JOSE DIVISION**

17

| | |
|---|---|
| 18 CONVERSANT WIRELESS LICENSING S.A.R.L., | Case No. 5:15-cv-5008-NC |
| 19 | **APPLE INC.'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT OF** |
| 20 Plaintiff, | **UNENFORCEABILITY OF U.S. PATENT NO. 6,477,151** |
| 21 v. | |
| 22 APPLE INC., | Date:      May 1, 2019 |
| 23 | Time:      1:00 p.m. |
| | Location: Courtroom 5, 4th Floor |
| 24 Defendant. | Judge:     Hon. Nathanael Cousins |

25

26

27

28

## **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................................1

II.     ARGUMENT .................................................................................................................3

        A.      Core Wireless Cannot Absolve Nokia's Violation of ETSI's Disclosure
                Rules Based on Commitments to License the '151 Patent on FRAND
                Terms ................................................................................................................3

        B.      Core Wireless Cannot Absolve Nokia's Violation of ETSI's Disclosure
                Rules Based on Claims that the '151 Patent is Not Essential ...................7

        C.      Core Wireless's Remaining Arguments Against a Finding of
                Egregiousness Fail as a Matter of Fact and Law .....................................8

        D.      Core Wireless's Remaining Arguments Against a Finding of Unjust
                Benefit Fail as a Matter of Fact and Law...............................................12

        E.      Unenforceability Against the Standard is the Appropriate Remedy.....................15

III.    CONCLUSION.............................................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
  486 U.S. 492 (1988) ...................................................................................................4

5

6

*Bianco v. Globus Med., Inc.*,
  30 F. Supp. 3d 565 (E.D. Tex. 2014) (Bryson, J.) ....................................................5

7

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
  899 F.3d 1356 (Fed. Cir. 2018)............................................................................ *passim*

8

9

*Engebretsen v. Fairchild Aircraft Corp.*,
  21 F.3d 721 (6th Cir. 1994) .......................................................................................5

10

11

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014)................................................................................14

12

*Genband US LLC v. Metaswitch Networks Ltd.*,
  211 F. Supp. 3d 858 (E.D. Tex. 2016) .....................................................................12

13

14

*Hunt v. City of Portland*,
  599 Fed. Appx. 620 (9th Cir. 2013).............................................................................5

15

16

*Hynix Semiconductor v. Rambus Inc.*,
  645 F.3d 1336 (Fed. Cir. 2011).................................................................................12

17

*LoggerHead Tools, LLC v. Sears Holdings Corp.*,
  2016 WL 5112062 (N.D. Ill. Sept. 20, 2016) ............................................................9

18

19

*M.H. v. Cty. of Alameda*,
  2015 WL 54400 (N.D. Cal. Jan. 2, 2015) ..................................................................9

20

21

*Momenta Pharm., Inc. v. Amphastar Pharm., Inc.*,
  298 F. Supp. 3d 258 (D. Mass. 2018) ..................................................................11, 12

22

*Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*,
  984 F.2d 1182 (Fed. Cir. 1993).................................................................................10

23

24

*Qualcomm Inc. v. Broadcom Corp.*,
  548 F.3d 1004 (Fed. Cir. 2008).......................................................................... *passim*

25

26

*Rambus Inc v. Infineon Techs. Ag*,
  318 F.3d 1081 (Fed. Cir. 2003).................................................................................12

27

*Therasense v. Becton, Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011).................................................................................10

28

*United States v. Microsoft,*
    253 F.3d 34 (D.D.C. 2001) ........................................................................13

*Ulead Sys., Inc. v. Lex Computer Mgmt. Corp.,*
    351 F.3d 1139 (Fed. Cir. 2003)................................................................10

**Rules**

FRE Rule 702................................................................................................5

**Other Authorities**

3 Areeda & Hovenkamp, ANTITRUST LAW ¶ 651c ....................................13

# I.      INTRODUCTION

The Federal Circuit has given this Court a focused mandate on remand:  to find the '151 patent unenforceable if either (1) Nokia acted egregiously in failing to timely disclose its '151 patent family to ETSI or (2) Nokia and/or Core Wireless derived unjust benefits as a result of Nokia's standards misconduct.  Because the parties' opening briefs confirm Apple's position with respect to both egregiousness and unjust benefits, the patent should be deemed unenforceable against products supporting the GPRS standard—including the Apple accused products.

Apple's opening brief demonstrated (based on the existing trial record) that from the outset, Nokia and '151 inventor Mr. Oksala sought to transform a weak technological idea (rated by Nokia as just a 2 out of 5 on an internal scale of technical importance) into a far more significant one by getting it incorporated into the GPRS standard and patenting it.  To that end, Mr. Oksala explicitly stated in his invention report that "competitors [are] likely to use the invention" because "[i]t will be added to [GPRS] specification," and he even attached a completed ETSI change request form to achieve that result.  Then, over the next ten days, Nokia filed for a patent on Mr. Oksala's idea and submitted his change request to ETSI, just as planned—but ***without*** disclosing the existence of the '151 patent family until ***over four years*** after the standard was frozen.  Given this egregious violation of the disclosure obligations set forth in ETSI's IPR policy, the '151 patent should be deemed unenforceable.

Apple's opening brief further confirms (again based on the trial record) that Core Wireless and Nokia received numerous unjust benefits resulting from Nokia's breach of ETSI's disclosure rules.  By having its 2 out of 5-rated patent transformed into one practiced by anyone making handsets supporting the GPRS standard, Nokia vastly expanded the universe of potential licensees for the '151 patent, without giving ETSI members an opportunity to consider other non-patented alternatives—itself an unjust benefit.  The record further shows that Nokia and Core Wireless have repeatedly leveraged the improperly obtained standard-essential status of the '151 patent, including to (1) obtain licensing revenues, (2) bolster their positions in license negotiations and litigation, and (3) secure the millions of dollars in damages they stand to make in this case alone if the '151 patent is not found unenforceable.  Because all these gains were unjustly derived from

APPLE'S REPLY IN SUPPORT OF MOTION FOR
JUDGMENT RE UNENFORCEABILITY

Case No. 5:15-cv-5008-NC

1    Nokia's failure to disclose, the '151 patent is unenforceable on this ground too.

2         Core Wireless's opposition brief seeks to excuse Nokia's plainly egregious conduct—and

3    the many unjust benefits that followed—with a series of meritless arguments. *First*, Core Wireless

4    repeatedly claims that Nokia's eventual commitment to license the '151 patent on FRAND terms

5    renders its misconduct a mere "technical violation" that complied with the supposed real "aim" of

6    ETSI's IPR policy, and thus renders Nokia's delayed disclosure not egregious and any benefits not

7    unjust.   But the Federal Circuit addressed and rejected that argument in *Qualcomm Inc. v.*

8    *Broadcom Corp.*, 548 F.3d 1004, 1021 (Fed. Cir. 2008), and it should be rejected again here.

9    Qualcomm, like Core Wireless, claimed that its standards misconduct caused no harm because it

10   was willing to license on FRAND terms.  *Id.*  The Federal Circuit rejected the argument that a

11   licensing commitment absolves such standards misconduct, finding that "[f]orcing a party to

12   accept a license and pay whatever fee the licensor demands, or to undergo the uncertainty and cost

13   of litigation (which in this case was substantial), are *significant burdens*" on standard

14   implementers.  *Id.*[1]  On appeal in this case, the Federal Circuit applied the same logic, holding that

15   Nokia's nondisclosure of the '151 patent before June 1998 *violated* ETSI's IPR policy, and that

16   Nokia's later disclosure and FRAND commitment was "*not sufficient* to cure the earlier breach of

17   its duty."  *See Core Wireless Licensing S.A.R.L. v. Apple Inc.,* 899 F.3d 1356, 1368 (Fed. Cir.

18   2018).  Core Wireless cannot prevail by arguing contrary to binding precedent.

19        *Second*, Core Wireless also repeatedly claims that Nokia's late disclosure was not

20   egregious and did not result in unjust benefits because, according to Core Wireless, Nokia's

21   proposal was "rejected" and the patented approach made merely "optional."   But again, the

22   Federal Circuit has already disposed of these very arguments, both in *Qualcomm* and on appeal in

23   this case.  Indeed, as the Federal Circuit recognized in its opinion, Mr. Oksala testified and both

24   technical experts *agreed* that the '151 approach was incorporated into the standard and, while

25   optional for base stations, was *mandatory for all cell phones* to support.

26        *Third*, Core Wireless's remaining arguments on egregiousness depend on new and

27

28   _____
     [1] All emphases used herein are added unless otherwise noted.

APPLE'S REPLY IN SUPPORT OF MOTION FOR                Case No. 5:15-cv-5008-NC
JUDGMENT RE UNENFORCEABILITY

1    inadmissible "evidence" never offered at trial, which conflicts with the actual trial record and the

2    Federal Circuit's decision in any event.  Core Wireless also wrongly suggests that Dr. Walker

3    found no fault with Nokia's late disclosure.  To the contrary, as the Federal Circuit confirmed, Dr.

4    Walker's unrebutted expert testimony consistently maintained that Nokia breached its contractual

5    obligations by waiting four years to disclose the '151 patent—egregious acts warranting a finding

6    of unenforceability.  Core Wireless further contends that an "almost criminal level of misconduct"

7    is needed to prove egregiousness, but that is not the law.

8         ***Finally***, Core Wireless's remaining arguments on unjust benefit are similarly contrary to

9    the established law and record.  Core Wireless argues that Apple must prove that ETSI would have

10   adopted a different proposal over Nokia's proposal (under a "but-for" theory), but the Federal

11   Circuit rejected that argument too in *Qualcomm*, and Core Wireless presents no basis to depart

12   from that controlling precedent here.  Core Wireless also maintains that nondisclosure has no

13   effect on whether ETSI will adopt a member proposal—but Dr. Walker explained (and the Federal

14   Circuit agreed) the opposite is true.  Last, Core Wireless argues that Apple has failed to tether its

15   identified unjust benefits to the '151 patent—even though *every* benefit Core Wireless and Nokia

16   have received from the '151 patent is tied to its ill-gotten status as a standard-essential patent,

17   including the money Core Wireless seeks to obtain in this case.

18   **II.    ARGUMENT**

19        **A.    Core Wireless Cannot Absolve Nokia's Violation of ETSI's Disclosure Rules**
             **Based on Commitments to License the '151 Patent on FRAND Terms.**
20
21        Core Wireless premises its opposition on two primary arguments.  The first is its

22   continuing contention—based on evidence outside the trial record, and even outside the discovery

23   record—that Nokia's violation of ETSI's IPR policy could not have been egregious, regardless of

24   how willful the nondisclosure or how long the delay, because Nokia and Core Wireless both

25   committed to license the '151 patent on FRAND terms.  (Dkt. 554 ("Opp'n") at 1, 2, 4, 8, 13-16.)

26   That argument fails for multiple reasons.

27        ***First***, in its initial decision and again in its denial of Core Wireless's request for rehearing,

28   the Federal Circuit expressly held that:  (1) the "very purpose" of ETSI's disclosure requirement is

APPLE'S REPLY IN SUPPORT OF MOTION FOR                    Case No. 5:15-cv-5008-NC
JUDGMENT RE UNENFORCEABILITY

1    "to permit the standards-setting decisionmakers to make an informed choice about whether to

2    adopt a particular proposal"—*not*, as Core Wireless now claims, to ensure a FRAND commitment;

3    and (2) Nokia's late disclosure was "*clearly untimely* and *not sufficient to cure* the earlier breach

4    of its duty." *See Core Wireless,* 899 F.3d at 1367, 1368; Dkt. 534 [Denial of Re'hrg] at 4

5    ("Conversant's contention that a disclosure would be timely even if made years after the adoption

6    of the [standard] was unsupported in the record and contrary to the plain terms of the policy.").

7    Core Wireless cannot contradict these rulings.

8            *Second,* Core Wireless claims that Apple did not suffer any harm because Core Wireless's

9    and Nokia's licensing offers were "always FRAND," and thus the patented technology was always

10   "available."  (Opp'n at 2, 7.)  But even if Core Wireless's offers were FRAND—and they were

11   not—the Federal Circuit has expressly held that a patentholder cannot erase standards misconduct

12   by offering to license a late-disclosed patent on FRAND terms and promising not to seek an

13   injunction.  That is because "forcing a party to accept a license and pay whatever fee the licensor

14   demands, or to undergo the uncertainty and cost of litigation" alone imposes "*significant*

15   *burdens*" on implementers of the standard.  *Qualcomm*, 548 F.3d at 1021.  That is precisely the

16   case here, where Apple has had to defend itself against infringement claims for five years, through

17   discovery, trial, appeal, and now remand, based on supporting a patented feature that Nokia

18   improperly injected into the GPRS standard without the required disclosure.

19           Indeed, in *Allied Tube & Conduit Corp. v. Indian Head, Inc*., the Supreme Court

20   recognized that standard-setting participants "often have economic incentives to restrain

21   competition" and therefore the standard-setting process must not be "biased by members with

22   economic interests in stifling product competition." 486 U.S. 492, 500-501 (1988).  Yet, forgiving

23   nondisclosure of essential IPR *before* a standard is set (as Core Wireless suggests) would

24   *encourage* bias by allowing participants to unilaterally impose royalty obligations (FRAND or

25   otherwise) on implementers who have invested significant resources and have become "locked-in"

26   to the standard.  *See Qualcomm*, 548 F.3d at 1010.

27           *Third*, Core Wireless's legally flawed argument also rests on purported "evidence" that is

28   outside the record and is contrary to the actual evidence presented at trial.  For example, Core

APPLE'S REPLY IN SUPPORT OF MOTION FOR                                     Case No. 5:15-cv-5008-NC
JUDGMENT RE UNENFORCEABILITY

Wireless attempts to support its claim that a FRAND commitment absolves late disclosure based on repeated citations to an expert report from Richard Buttrick from an earlier case between the parties on different patents.  (Opp'n at 4, 8, 15, 19 (citing report eight times).)  But Mr. Buttrick did not testify at deposition or trial in this case, or even submit an expert report in this case, and in any event expert reports are *not* evidence—they are inadmissible hearsay.  *See Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728 (6th Cir. 1994) ("Rule 702 permits the admission of expert opinion *testimony* not opinions contained in documents prepared out of court." (emphasis in original)); *Hunt v. City of Portland*, 599 Fed. Appx. 620, 621 (9th Cir. 2013) (expert report "is hearsay to which no hearsay exception applies"); *Bianco v. Globus Med., Inc.*, 30 F. Supp. 3d 565, 570 (E.D. Tex. 2014) (Bryson, J.) (same).

And at his deposition in the parties' prior case, Mr. Buttrick admitted, contrary to his hearsay report, that a general undertaking to license a patent on FRAND terms does not forgive late disclosure—precisely because the ETSI IPR policy's disclosure requirement is intended to allow members to consider if proposals are covered by patents *before* deciding which proposals to adopt into the standard:

> ***The making of a general undertaking, ETSI has made it clear, does not supercede [sic] any obligations to disclose*** for the very reasons I've said: that it's important, even with the general undertaking in place, that parties can be aware of and evaluate what patents might be essential [to particular proposals].

(Ex. 1 [Buttrick Dep.] at 187:2-24.)

Similarly, Core Wireless repeatedly argues that late disclosures "are not a problem" based on an ETSI document cited by Mr. Buttrick that merely reports discussions from an "ad hoc" group about potential changes to the ETSI policy.  (Opp'n at 4, 14, 21 (citing Dkt. 554-9 at CORE_A-0225063).)  But Dr. Walker testified, and Mr. Buttrick conceded at his deposition, that late disclosures—even with a FRAND commitment—*are* a problem under the *official* ETSI IPR policy.  (Ex. 1 [Buttrick Dep.] at 187:15-24; Tr. [Walker] at 1429:6-1430:14.)  And the cited document itself states that implementers may be placed "in a difficult situation … *even if* licenses are ultimately available on ETSI IPR policy terms."   (Dkt. 554-9 at CORE_A-0225063.)  Moreover, other ETSI documents confirm—consistent with the IPR policy and Federal Circuit

law—that merely committing to license an essential patent on FRAND terms does *not* forgive a failure to timely disclose the patent.  (Dkt. 554-6 at CORE_A-0313365 (Core Wireless's own cited document confirming that "[u]se of the General IPR licensing declaration *does not* take away the obligation for members to declare essential patents to ETSI"); DX227.007 (presentation on ETSI IPR policy from ETSI's legal advisor confirming the "[i]mportance of obtaining knowledge of [the] IPR-landscape *before* lock-in of [the] standard"); DX106.003 (meeting summary explaining that "remov[ing] the obligation of prompt disclosure … could in fact encourage last minute IPR disclosures [which] could achieve the exact opposite result of what is intended")); *see Core Wireless*, 899 F.3d at 1367 (holding that the purpose of ETSI's IPR disclosure requirement is "to permit standards-setting decisionmakers to make an informed choice about whether to adopt a particular proposal").[2]

*Finally*, even if Core Wireless could rewrite ETSI's IPR policy to provide that a FRAND commitment forgives all late disclosures of patent rights—which it cannot—that new policy would be irrelevant here because, as Apple's expert testified at trial, Core Wireless's damages demand for the '151 patent was *not* FRAND.  (Tr. [Meyer] at 1139:6-1140:6.)  Core Wireless sought past damages of approximately $11.3 million, but the jury determined that a reasonable royalty for the '151 patent was less than a third of that, $3.4 million.  (Tr. [Dell] at 679:23-680:6; Dkt. 466 at 2.)  Having secured just *30%* of what it had demanded from Apple, Core Wireless can hardly claim that it offered the '151 patent to Apple on FRAND terms.  *See Qualcomm* 548 F.3d at

---

[2] Core Wireless's business partner over the course of this litigation, proposed *amicus* Nokia, also argues that "the focus at ETSI has *always* been on securing FRAND commitments (ensuring availability) and picking the best technical solutions."  (Dkt. 559-1 at 9.)  While Apple has opposed Nokia's motion for leave to file its *amicus* brief, it is telling that Nokia argued exactly the *opposite* in its own litigation against Qualcomm in 2006, confirming that the need to prevent later demands for an "unexpected and unanticipated" royalty—FRAND or not—is an "obvious" reason to require timely disclosure.  (Dkt. 561-4 [Nokia Compl.] at ¶¶ 22, 26 (accusing Qualcomm of violating the IPR policy because ETSI requires its members to identify all patents they hold "that may be essential to compliance with a proposed technology standard … **before** the standard is adopted" and "[t]he purpose of this disclosure requirement is obvious:  to avoid a 'patent ambush' situation where a party that holds up industry participants for *unexpected and unanticipated royalties* for technology that is essential to the practice of the standard" (underlined emphases in original)).

APPLE's REPLY IN SUPPORT OF MOTION FOR
JUDGMENT RE UNENFORCEABILITY

Case No. 5:15-cv-5008-NC

1  1021 ("forcing a party to accept a license and pay whatever fee the licensor demands, or to undergo

2  the uncertainty and cost of litigation [are] significant burdens").

**B.      Core Wireless Cannot Absolve Nokia's Violation of ETSI's Disclosure Rules Based on Claims that the '151 Patent is Not Essential.**

Core Wireless's second primary argument is that Nokia's extremely late disclosure did not

result in any unjust benefits, because the '151 patent supposedly is not essential to the GPRS

standard.  (*See* Opp'n at 6.)  That argument also fails for multiple reasons.

***First***, Core Wireless claims—without any evidentiary support—that Ericsson's adopted

proposal "did not require or even suggest using Mr. Oksala's invention."  (*Id*.)  But Mr. Oksala

testified exactly the ***opposite*** at trial—that his patent was incorporated into Ericsson's proposal and

adopted into the standard, and that he was "really proud" his invention was "utilized by the phones

everywhere."  (Tr. [Oksala] at 219:1-5, 246:25-247:9.)  Consistent with that testimony, the trial

record further confirms that Core Wireless and Nokia both treated the patent as essential for years

before this litigation.  Nokia and Core Wireless both filed declarations with ETSI specifically

declaring the '151 patent as essential (DX112 (Nokia); PX-591-1, PX-592-26 (Core Wireless).[3]

Nokia paid Mr. Oksala a large bonus, precisely because it believed the patent was essential.  (Tr.

[Oksala] 218:9-219:5.)  And in its complaint in this case, Core Wireless explicitly identified the

'151 patent as essential, accused Apple of infringing the '151 patent based on compliance with the

standard, and claimed that Apple must license the patent:

- "The '634, ***'151***, '536, '818, and '828 patents ('patents-in-suit') are among over 1,200 ***Standard-Essential Patents*** owned by Core Wireless." (Dkt. 1, Case No. 6:14-cv-00752 (E.D. Tex.) [Compl.] ¶ 15);

- "***Nokia declared before ETSI that the patents-in-suit are essential*** …" (*Id.* ¶ 18);

- "Core Wireless is informed and believes that ***Apple's Standard-Compliant Products comply with the applicable standards covered by the claims of the '151 patent and therefore infringe*** claims of the '151 patent." (*Id.* ¶ 76.)

---

[3] Core Wireless argues that Nokia pledged to license the '151 patent on FRAND terms "despite the fact that it was not ESSENTIAL" (Opp'n at 7), but Nokia indicated in its signed pledge its "***belie[f] that the IPRs may be considered ESSENTIAL*** to the Standards listed above."  (DX112.001.) Likewise, Core Wireless's signed pledge in 2013 stated its "present belief the IPRs disclosed in the attached IPR Information Statement Annex may be or may become ESSENTIAL[.]"  (PX592-1.)

7

APPLE'S REPLY IN SUPPORT OF MOTION FOR                                    Case No. 5:15-cv-5008-NC
JUDGMENT RE UNENFORCEABILITY

Although Apple disputed that its implementation of the standard infringed the '151 patent, the jury rejected that contention, and the Federal Circuit has now affirmed. *Core Wireless*, 899 F.3d at 1363); *see also Qualcomm*, 548 F.3d at 1019 ("We are unable to reconcile [Qualcomm's] *ex post* argument that the asserted patents do not meet the 'reasonably might be necessary' standard with its *ex ante* arguments regarding infringement.").

**Second**, Core Wireless repeatedly argues that the '151 patent is not essential because the adopted Ericsson proposal made Nokia's technology "optional." (Opp'n at 6, 7, 14, 15, 16, 17, 18, 20-21, 22.) But as Apple's expert explained at trial (in response to a juror question), the accused portion of the standard is "optional" only **for base stations**, which can choose between the three TAV procedures—and is **mandatory for mobile phones**, which must be ready to implement any of those procedures at any time. (Tr. [Knightly] 896:7-898:14 ("**If a phone disables one of these procedures, it could not pass the standardization test** … **It's mandatory to have all three procedures.**").) Core Wireless's expert agreed that from "the phone's perspective, it is **absolutely mandatory** that they perform all three [TAV procedures]." (Tr. [Wesel] 1271:17-20.) The Federal Circuit affirmed this understanding—making it law of the case on remand. *See Core Wireless*, 899 F.3d at 1363 (the iPhone must "work with a base station regardless of which mode or modes [the base station] is employing").

### C.   Core Wireless's Remaining Arguments Against a Finding of Egregiousness Fail as a Matter of Fact and Law.

In addition to the two primary arguments detailed above (the misplaced emphasis on a FRAND commitment and new, erroneous position that the patent is not essential), Core Wireless's remaining attempts to explain away Nokia's egregious misconduct should also be rejected.

**First**, Core Wireless claims that Nokia's nondisclosure was justified, and not egregious, because patent rights are "rarely if ever discussed" at ETSI meetings. (Opp'n at 2.) It further claims—based on Mr. Buttrick's hearsay expert report, citing a hearsay article—that "88% of all IPR is disclosed [late]." (*Id.* at 15.) But Dr. Walker—former ETSI Chairman of the Board, and the **only witness** to testify on these issues at trial—explained without rebuttal (and with approval from the Federal Circuit) that in fact the obligation to disclose relevant IPR was the **first** thing

discussed at *every* meeting, and "attaches at the time of the proposal." (Tr. [Walker] 1413:18-24). *See Core Wireless*, 899 F.3d at 1367-68. The article cited in Core Wireless's hearsay expert report says the same. (Dkt. 559-4 [Article] at 7 ("[I]t is my understanding that working group meetings … typically begin with the group's chair reminding attendees that potentially essential IPR should be disclosed as soon as practicable.").) And rather than endorsing Core Wireless's suggestion that late disclosures are "no problem," the article reaches the same conclusion as *Qualcomm*, *Core Wireless*, and *Allied Tube*: "Commentators … have largely been in agreement that failing to adequately disclose intellectual property rights (IPR) that might be essential to implement a standard *early on* in the standard development process is conduct that, at a minimum, should be discouraged and that in the extreme may constitute an antitrust violation." (*Id*. at 2.)[4]

**Second**, Core Wireless attempts to convert Dr. Walker's deposition testimony that he had "no opinion" on whether Nokia had "intentionally delayed" its disclosure into a supposed admission that Nokia did not act egregiously. (Opp'n at 11-12.) But in the cited testimony, Dr. Walker merely made clear that he was not offering an expert opinion about Nokia's state of mind: a classic fact issue. (Dkt. 554-12 [Walker Dep. Tr.] at 86:1-3.) *See, e.g.*, *M.H. v. Cty. of Alameda*, 2015 WL 54400, at *2 (N.D. Cal. Jan. 2, 2015) ("[E]xperts cannot testify as to Defendants' actual, subjective states of mind."); *LoggerHead Tools, LLC v. Sears Holdings Corp*., 2016 WL 5112062, at *2 (N.D. Ill. Sept. 20, 2016) (same). Dr. Walker never admitted that Nokia had acted reasonably; rather, he consistently testified that Nokia violated its clear disclosure obligations.[5]

---

[4] Mr. Buttrick's cited hearsay article also entirely ignores the critical distinction between "timeliness of a disclosure in the general case"—which "is measured from the point of awareness by a Member that an IPR is essential to a standard"—and timeliness "[i]n the specific case"—in which "timeliness may additionally be measured from the Member's submission of a contribution." (DX106.005); *see also Core Wireless*, 899 F.3d at 1367 (confirming disclosure obligation in the "specific case" as explained by Dr. Walker and under the second sentence of Section 4.1 of the ETSI IPR policy). By failing to distinguish between parties, like Nokia, that make a proposal and those that do not (and thus are subject to the general disclosure obligations), the article says nothing about whether Nokia's particular misconduct was or was not egregious.

[5] Contrary to Core Wireless's claim, Dr. Walker never conceded that "even he violated the ETSI duty of disclosure under his interpretation of Clause 4.1." (Opp'n at 17.) When Core Wireless showed Dr. Walker his deposition testimony on this point, he clarified that "[t]here's a lot of statements before this, none of which were very fine"—a point that Core Wireless's counsel conceded was "[t]rue." (Tr. [Walker] at 1433:18-1434:10.)

1    **Third**, Core Wireless's attempt at dismissing Mr. Oksala's '151 invention disclosure report

2    only confirms Nokia's egregious behavior.  The report documents both Nokia's plan for getting its

3    technology incorporated into the standard (via an attached Change Request) and its intended effect

4    of increasing the "Value of the Invention" for Nokia's competitors **because** of its incorporation

5    into the standard.  (DX115.003.)  Core Wireless points out that Nokia initially viewed the

6    invention's value as "relatively low," and rated it a "2 = modest" because it was "easy to design

7    around or modest potential for standard specification."  (Opp'n at 13 (citing DX115.003).)  But

8    that proves Apple's point:  by getting the invention into the standard, Nokia transformed a patent

9    that was "easy to design around" and with "relatively low" value into one that could be asserted

10   against any implementer of the standard.    As Core Wireless's CEO confirmed, a

11   standards-essential patent is **particularly** valuable because it "**cannot be 'designed around'** and

12   **must be licensed** by anyone using the standard."  (PX-561-21.)

13   **Fourth**, unable to prevail under existing law, Core Wireless attempts to change it based on

14   assertions that egregiousness under *Therasense v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed.

15   Cir. 2011), requires an "almost criminal level of misconduct," such as "perjury," "manufacture and

16   suppression of evidence," or "bribery."  (Opp'n at 1, 10.)  But that is not the law.  *Therasense* notes

17   that egregiousness is "flexible enough to capture varying manifestations of egregious and abuse

18   conduct."  649 F.3d at 1293.  And the Federal Circuit has long observed (in the context of

19   inequitable conduct) that an applicant who conceals information uniquely in its possession from

20   the Patent Office has acted "particularly egregious[ly]."  *Paragon Podiatry Lab., Inc. v. KLM

21   Labs., Inc.*, 984 F.2d 1182, 1193 (Fed. Cir. 1993).  The same result applies here where, for years,

22   only Nokia knew that it had patent rights on technology that was proposed for and ultimately

23   incorporated into the GPRS standard.  That "particularly egregious" nondisclosure justifies a

24   finding of unenforceability.

25   Indeed, as *Therasense* also notes, direct evidence of deceptive intent is "rare," nor is it not

26   required; rather, intent is usually inferred from indirect and circumstantial evidence regarding a

27   patentee's overall conduct.  *See Therasense*, 649 F.3d at 1290; *Ulead Sys., Inc. v. Lex Computer

28   *Mgmt. Corp.*, 351 F.3d 1139, 1146 (Fed. Cir. 2003).  Here, the evidence is not only circumstantial

but also ***direct***.  Nokia's own invention report specifically links the invention to the standard, and further confirms via the attached change request Nokia's plan for getting the invention incorporated into the GPRS specification.  (DX115.003.)  Mr. Oksala also directly confirmed at trial that he specifically proposed the '151 invention as an idea for the GPRS standard, and that he knew that Nokia was proposing his idea to ETSI.  (Tr. [Oksala] at 216:2-217:4, 221:18-23, 234:4-24.)

Core Wireless also tries unsuccessfully to distinguish the *Qualcomm* and *Momenta* cases cited in Apple's opening brief.  For example, Core Wireless argues that *Qualcomm* is inapplicable because the patent in that case was essential, because Qualcomm had never given a FRAND commitment, and because the patentee (Qualcomm) had engaged in an intentional plan to shield the existence of the patent from the standards body.  (Opp'n at 18.)  Core Wireless is wrong:  the patent in *Qualcomm* was found ***not*** infringed by the accused standard, Qualcomm ***did*** commit to license the patent, and Qualcomm specifically argued (and the Federal Circuit rejected) that both these points barred finding the patent unenforceable.  *Qualcomm*, 548 F.3d at 1021.  Regardless, as detailed above, the record in this case confirms that the '151 patent ***is*** essential, that Nokia's and Core Wireless's promise to license the patent on FRAND terms does ***not*** excuse Nokia's excessively late disclosure, and that Nokia kept the '151 patent secret from ETSI for years, despite a plan to get the patented invention into the standard from the very outset.[6]

Similarly, Core Wireless argues that *Momenta Pharm., Inc. v. Amphastar Pharm., Inc.*, 298 F. Supp. 3d 258, 267 (D. Mass. 2018), is distinguishable because the relevant proposal was adopted and the patent became essential to practice the standard, and because there was no promise to license the patents on FRAND terms.  (Opp'n at 18-19.)  In *Momenta*, however, the patent

---

[6] Like Nokia here, Qualcomm "knew that the asserted patents 'reasonably might be necessary' to practice the [] standard," but intentionally did not disclose them.  *Qualcomm*, 548 F.3d at 1020. Like Mr. Oksala's invention report here, emails between Qualcomm employees "suggest[ed] 'extending' Qualcomm's patents in order to cover the standard being developed," which the Federal Circuit cited as evidence of standards misconduct.  *Id.* at 1027.  And like Core Wireless did here, after Qualcomm shielded its patents, it "filed a patent infringement lawsuit … alleging infringement primarily, if not solely, based on [standards] compliance."  *Id.*  These facts rendered Qualcomm's patents unenforceable, and the same result follows here.  *Id.* at 1026.

---

APPLE'S REPLY IN SUPPORT OF MOTION FOR                    Case No. 5:15-cv-5008-NC
JUDGMENT RE UNENFORCEABILITY

owner was not the party proposing that its technology be incorporated, which was incorporated as only an optional part of the standard.  *Momenta*, 298 F. Supp. 3d 267-269.  And again, it has already been determined that Mr. Oksala's '151 proposal was adopted into the standard and made essential, and for the same reasons noted above, the existence or non-existence of a FRAND commitment is irrelevant to whether Nokia engaged in egregious behavior based on its adjudicated breach of its disclosure obligations.  Thus, there is no basis to distinguish *Momenta*.

Core Wireless also cites *Hynix Semiconductor v. Rambus Inc.*'s statement that implied waiver is based on conduct which is "so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished."  (Opp'n at 19 (citing *Hynix*, 645 F.3d 1336, 1348 (Fed. Cir. 2011)).)  But the Federal Circuit confirmed (twice) on appeal that such conduct—which Core Wireless wrongly claims is missing here—is "shown when the patentee had a duty of disclosure to the standard setting organization and breached that duty."  *Core Wireless,* 899 F.3d at 1365, 1367 ("[T]here is no requirement under the implied waiver doctrine that a third party must interpret the patentee's conduct as constituting a waiver of its rights to enforce the patent; such analysis is more relevant to equitable estoppel."); (Dkt. 534 [Denial of Re'hrg] at 3.)[7]

**Finally,** Core Wireless argues that Nokia's conduct could not have been egregious because Nokia's proposal was not essential, but only "optional."  That argument fails for the same reasons set forth above—as the Federal Circuit confirmed, the proposal was not optional.  It also fails as a matter of law given that *Qualcomm* and *Momenta* both found implied waiver concerning patents that were either "optional" or found "non-essential" to the standard.  *See Qualcomm*, 548 F.3d at 1021; *Momenta*, 298 F. Supp. 3d at 263, 268-69.

### D.    Core Wireless's Remaining Arguments Against a Finding of Unjust Benefit Fail as a Matter of Fact and Law.

The record and law also do not support Core Wireless's remaining attempts to avoid the

---

[7] Citing *Rambus Inc. v. Infineon Techs. Ag* and *Genband US LLC v. Metaswitch Networks Ltd.*, Core Wireless contends that "other cases with similar facts resulted in a finding of no enforceability."  (Opp'n at 19.)  But neither case found that the patentee breached its duty to disclose.  *See Rambus*, 318 F.3d 1081, 1104-1105 (Fed. Cir. 2003); *Genband*, 211 F. Supp. 3d 858, 898 (E.D. Tex. 2016), *vacated and remanded sub nom. Genband US LLC v. Metaswitch Networks Corp.*, 861 F.3d 1378 (Fed. Cir. 2017).  These cases plainly did not rest on "similar facts."

unjust benefits that it and Nokia have derived from standard-essential status of the '151 patent.

**First**, Core Wireless attempts to impose an artificial evidentiary hurdle by arguing that Apple must prove that ETSI would not have adopted Nokia's proposal "but for" its non-disclosure. But the Federal Circuit in *Qualcomm* rightly rejected the same effort "to benefit from [] intentional nondisclosure of the asserted patents" by requiring proof that implementers acted differently than they would have had the patents been disclosed (i.e., "detrimental reliance").  548 F.3d at 1021 ("[I]t would be improper to allow [a patent owner] to rely on the effect of its misconduct to shield it from the application of the equitable defense of implied waiver.").[8]

Here, Apple showed there were multiple options on the table, including no standard at all. The law of the case has established that Nokia's misconduct prevented those options from being considered with knowledge of Nokia's patent application.  *Core Wireless*, 899 F.3d at 1367 (such nondisclosure "undermine[s] the very purpose of the disclosure," which is "to permit the standards-setting decisionmakers to make an informed choice about whether to adopt a particular proposal"); *see Qualcomm*, 548 F.3d at 1010 (holding that, due to Qualcomm's nondisclosure, the standards body "los[t] the opportunity to mitigate, if not to avoid, [Qualcomm's] IPR in the development of the [] standard").  Nokia thus benefitted unjustly by having its patented '151 technology incorporated into the GPRS standard—which drastically expanded the universe of potential licensees—without giving ETSI an opportunity to consider other alternatives.  *See Core Wireless*, 899 F.3d at 1367 (purpose of disclosure is to permit "an informed choice about whether to adopt a particular proposal").[9]

---

[8] This holding accords with the principle that wrongdoers are not permitted to benefit from their own wrongdoing making it impossible to recreate a "but-for" world.  *See, e.g.*, *United States v. Microsoft*, 253 F.3d 34, 79 (D.D.C. 2001) ("[T]he underlying proof problem is the same—neither plaintiffs nor the court can confidently reconstruct a product's hypothetical technological development in a world absent the defendant's exclusionary conduct.  To some degree, 'the defendant is made to suffer the uncertain consequences of its own undesirable conduct.'" (citing 3 Areeda & Hovenkamp, ANTITRUST LAW ¶ 651c, at 78)).

[9] Contrary to Core Wireless's assertion, the standard-setting process is not limited to selection of the best technical solution.  (Opp'n at 4.)  As the Federal Circuit has observed, incorporated technology is "typically chosen from among different options," but "[o]nce incorporated and widely adopted, that technology is not always used because it is the best or the only option; it is

APPLE's REPLY IN SUPPORT OF MOTION FOR
JUDGMENT RE UNENFORCEABILITY

Case No. 5:15-cv-5008-NC

1       ***Second***, Core Wireless relatedly claims that "there is significant evidence demonstrating

2  that … disclosure or non-disclosure of IPR has no effect on which proposals are adopted by ETSI."

3  (Opp'n at 21.)  But the Federal Circuit held that the very purpose of the disclosure requirement is

4  to inform the "choice about whether to adopt a particular proposal."  *Core Wireless*, 899 F.3d at

5  1367.  Indeed, the only evidence presented at trial supports this holding.  Dr. Walker testified

6  without rebuttal that, when considering technically equivalent solutions, ETSI members are more

7  likely to select the alternative not covered by IPR.  (Tr. [Walker] 1420:2-14.)

8       ***Third***, Core Wireless now argues that a FRAND commitment for the '151 patent is a

9  "burden" for Core Wireless, not a benefit.  (Opp'n at 23.)  But Core Wireless's CEO and President

10  Mr. Lindgren confirmed exactly the opposite.  (*See, e.g.*, Mot. at 19-23.)  Mr. Lindgren boasted

11  that these patents were particularly valuable because "[s]tandards-essential patents ***cannot be***

12  ***'designed around'*** and ***must be licensed*** by anyone using the standard."  (PX-561-21.)  By

13  convincing ETSI to incorporate the patent into the standard, Nokia transformed a patent which it

14  believed was "easy to design around" (Opp'n at 13) to one that could not be, and "must be

15  licensed" regardless of the royalty rate.  That benefit was both substantial and clearly unjust.

16       ***Finally,*** Core Wireless claims that Nokia's and Core Wireless's licensing of the '151

17  patent as part of a whole portfolio is irrelevant.  (Opp'n at 23-25.)  But as Apple's opening brief

18  explained, Nokia and Core Wireless have focused heavily in their negotiations on

19  proportionality—such that, every time that Nokia or Core Wireless could add an essential patent to

20  their portfolio, they increased their leverage in negotiating licenses for that patent and their

21  portfolio overall.  (Mot. at 16-17, 23-24.)  Moreover, Core Wireless specifically selected the '151

22  patent as one of the patents (out of the approximately 2,000 Nokia patents it now owns) to assert

23  against Apple and LG—confirming Core Wireless considers the patents among its most

24  significant.  Core Wireless also offers no response to the undisputed fact that, unless the '151

25  patent is deemed unenforceable, Apple will be forced to pay Core Wireless (and its business

26  partner Nokia) millions in damages, simply because Apple developed its iPhones to support the

27

28  used because its use is necessary to comply with the standard."  *Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201, 1233 (Fed. Cir. 2014).

APPLE'S REPLY IN SUPPORT OF MOTION FOR
JUDGMENT RE UNENFORCEABILITY

Case No. 5:15-cv-5008-NC

1   GPRS standard—based on a feature that Nokia proposed for incorporation into the standard,

2   without timely disclosure.  This significant unjust benefit is directly tied to Nokia's misconduct.[10]

3          **E.**    **Unenforceability Against the Standard is the Appropriate Remedy.**

4        Finally, Core Wireless attempts to characterize Apple's position throughout its brief as

5   seeking an "atomic bomb"—suggesting that the only reasonable remedy for Nokia's egregious

6   misconduct is no remedy at all.  The Federal Circuit addressed this issue in *Qualcomm*, where the

7   district court had ordered a remedy that "was not limited in relation to Qualcomm's misconduct in

8   the SSO context."  *Qualcomm*, 548 F.3d at 1026.  Because there was no connection between the

9   asserted patents and products not related to the standard, the Federal Circuit held that the

10  appropriate remedy was not unenforceability against the entire world—i.e., the "atomic bomb"

11  discussed in *Therasense*—but unenforceability of the asserted patent families against current and

12  future products that support the standard.  *Id*.

13       The same result should apply here.  Nokia's breach was at least as egregious as the

14  misconduct cited in *Qualcomm* and *Momenta*, and ***every*** benefit Nokia and Core Wireless have

15  ever received from the '151 patent has come because the patent was supposedly standard-essential.

16  The fair remedy is to bar the patent from being asserted against the GPRS standard.

17  **III.**   **CONCLUSION**

18       For the reasons above, Apple respectfully requests that the Court find that the '151 patent is

19  unenforceable against products that support the GPRS standard, including the accused Apple

20  products.

21

22

23

24

25

---

26  [10] Core Wireless suggests that deposition testimony from Apple's 30(b)(6) witness shows that

27  Apple has not been harmed by Nokia's misconduct.  (Opp'n at 8.)  But that cited testimony came from a different case not involving the '151 patent, and merely stated that Apple's witness couldn't

28  "speak to the specifics" because, due to the restrictions of the protective order, he did not "have access to the facts of what Nokia did or didn't do."  (*See* Dkt. 553-10 [Risher Depo.] at 263:15-21.)

Dated:  April 12, 2019

By: _/s/ Joseph J. Mueller_

Mark D. Selwyn (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Joseph J. Mueller (*pro hac vice*)
Cynthia D. Vreeland (*pro hac vice*)
Richard W. O'Neill (*pro hac vice*)
joseph.mueller@wilmerhale.com
cynthia.vreeland@wilmerhale.com
richard.oneill@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

*Attorneys for Defendant and
Counterclaim-Plaintiff Apple Inc.*

APPLE'S REPLY IN SUPPORT OF MOTION FOR
JUDGMENT RE UNENFORCEABILITY

Case No. 5:15-cv-5008-NC

1

## **CERTIFICATE OF SERVICE**

2        I hereby certify that a true and correct copy of the foregoing document has been served via

3  ECF on April 12, 2019 on counsel of record for Conversant Wireless Licensing S.A.R.L.  I certify

4  under penalty of perjury under the laws of the United States that the foregoing is true and correct.

5

6  Dated: April 12, 2019

7                                  */s/ Joseph J. Mueller*
                                   Joseph J. Mueller

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLE's REPLY IN SUPPORT OF MOTION FOR                        Case No. 5:15-cv-5008-NC
JUDGMENT RE UNENFORCEABILITY